IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHARON BLACK,               ) | CV. NO. 07-00299 DAE-LEK |
|                             ) | |
| Plaintiff,          ) | |
|                             ) | |
| vs.                         ) | |
|                             ) | |
| BOISSE CORREA; CITY AND     ) | |
| COUNTY OF HONOLULU-         ) | |
| HONOLULU POLICE             ) | |
| DEPARTMENT; GLEN            ) | |
| KAJIYAMA; STEPHEN           ) | |
| WATARAI; KEVIN LIMA;        ) | |
| CARLTON NISHIMURA; OWEN     ) | |
| HARADA; WILLIAM AXT; CITY   ) | |
| AND COUNTY OF HONOLULU-     ) | |
| MEDICAL EXAMINERS OFFICE;   ) | |
| KANTHI DE ALWIS; WILLIAM    ) | |
| W. GOODHUE; GAIL SUZUKI;    ) | |
| ALICIA KAMAHELE; CITY AND   ) | |
| COUNTY OF HONOLULU-         ) | |
| HUMAN RESOURCES             ) | |
| DEPARTMENT; DENISE          ) | |
| TSUKAYAMA; INSTITUTE FOR    ) | |
| HUMAN SERVICES; LYNN        ) | |
| MAUNAKEA; CITY AND          ) | |
| COUNTY OF HONOLULU-         ) | |
| PROSECUTING ATTORNEY        ) | |
| DEPT.; CHRIS VAN MARTER;    ) | |
| HAWAII GOVERNMENT           ) | |
| EMPLOYEES ASSOCIATION;      ) | |
| LEE MATSUI; MUFI            ) | |
| HANNEMANN; DOES 1-20,       ) | |
|                             ) | |
| Defendants.         ) | |
| _____ ) | |

AMENDED ORDER (1) GRANTING IN PART AND DENYING IN PART
CITY DEFENDANTS' MOTION TO DISMISS AND/OR TO STRIKE; (2)
GRANTING THE SUBSTANTIVE JOINDER MOTION; (3) GRANTING
HAWAII GOVERNMENT EMPLOYEES ASSOCIATION DEFENDANTS'
MOTION TO DISMISS; (4) AND GRANTING IN PART AND DENYING IN
PART CORREA DEFENDANTS' MOTION TO DISMISS AND/OR TO
STRIKE[1]

On September 17, 2007, the Court heard Defendants City and County

of Honolulu-Honolulu Police Department, City and County of Honolulu-Medical

Examiners Office, City and County of Honolulu-Human Resources Department,

Denise Tsukayama, City and County of Honolulu-Prosecuting Attorney Dept., and

Mufi Hannemann's Motion to Dismiss (collectively, "City Defendants' Motion" or

"City Defendants"); Defendants Kanthi De Alwis, William W. Goodhue, Gail

Suzuki, and Alicia Kamahele's (collectively, "Joinder Parties") Substantive Joinder

to Defendants City and County of Honolulu's Motion ("Substantive Joinder

Motion"); Hawaii Government Employees Association and Lee Matsui's Motion

to Dismiss (collectively, "HGEA Defendants' Motion" or "HGEA Defendants");

and Boisse Correa, Glen Kajiyama, and Carlton Nishimura's Motion to Dismiss

---

[1]     The Court files the instant amended order, sua sponte, to clarify its
position concerning retaliation claims under Hawaii Revised Statutes ("Haw. Rev.
Stat.") § 378-62 and to replace the order filed on September 20, 2007. See
discussion supra C.7.  The result of the decision does not change; the rest of the
order remains unmodified.

(collectively, "Correa Defendants' Motion" or "Correa Defendants").[2]  Mark

Beatty, Esq., appeared at the hearing on behalf of Plaintiff; John Moran and Marie

Manuele Gavigan, Esq., appeared at the hearing on behalf of City and Correa

Defendants; Charles Price, Esq., appeared at the hearing on behalf of HGEA

Defendants; and April Luria, Esq., appeared at the hearing on behalf of IHS and

Maunakea, though a motion was not filed on their behalf.  After reviewing the

motions and the supporting and opposing memoranda, the Court GRANTS IN

PART AND DENIES IN PART the City Defendants' Motion; GRANTS the

Substantive Joinder Motion; GRANTS IN PART AND DENIES IN PART Correa

Defendants' Motion; and GRANTS HGEA's Motion.

<u>BACKGROUND</u>

On June 1, 2007, Plaintiff Sharon Black filed a Complaint, alleging 22

causes of action.  Despite the multitude of complaints, all allegations could be

condensed into two legal theories: negligence and retaliation.  The causes of action

follow: (1) Negligence-Information Security Policy against the City and County of

---

[2]      The Court, at times, will refer to Defendants individually by their last
name or by the name of the entity.  (At times, the parties spell Suzuki's last name
with a "s" instead of a "z."  To remain consistent with the caption, the Court will
spell her name with a "z.")  Defendants Watarai, Lima, Harada, and Axt have not
filed a motion to dismiss.  Neither has the Institute for Human Services ("IHS"),
Maunakea, and Van Marter. Accordingly, the instant Order applies only to the
Defendants that are parties to the motions.

Honolulu-Medical Examiner's Office ("MEO") and its employees and/or agents, De Alwis, Goodhue, Suzuki, and Kamahele; (2) Negligence-Supervision by City and County of Honolulu-Honolulu Police Department ("HPD") and its agents and/or employees, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt; (3) Negligent Hiring, Training and Supervision by HPD, Hannemann, and their agents; (4) Negligent Training and Supervision by MEO, Hannemann, and their agents; (5) Breach of Contract-Failure to Investigate and Represent by Hawaii Government Employees Association ("HGEA") and its employee, Matsui; (6) Negligent Infliction of Emotional Distress by HPD, MEO, HGEA, Hannemann, and their agents, Correa, Kajiyama, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Matsui; (7) Defamation by Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter; (8) Conspiracy by Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, Van Marter, City and County of Honolulu-Human Resources Department ("HRD"), and Tsukayama; (9) Interference with a Business Relationship by IHS, Maunakea, HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt; (10) Retaliatory Breach of Employment Contract by HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt; (11) Retaliatory Breach of Settlement

4

Agreement by HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt; HRD; and Tsukayama; (12) Sexual Harassment in Violation of Public Policy, Haw. Rev. Stat. § 378-2, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)(2002), and Fourteenth Amendment Due Process by HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt; (13) Retaliation in Violation of Public Policy, Haw. Rev. Stat. § 378-62, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)(2002), Fourteenth Amendment Due Process, and 42 U.S.C. §§ 1981, 1983, 1985, and 1986 by HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt; (14) 42 U.S.C. § 1983 Violation of Plaintiff's First Amendment Rights to Petition the Government for a Redress of Grievances by HRD and Tsukayama; (15) 42 U.S.C. § 1983 Violation of Plaintiff's First and Fourteenth Amendment Rights to File a Law Suit by HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt; (16) 42 U.S.C. § 1983 Violation of Plaintiff's First Amendment Right to Association by MEO, De Alwis, Goodhue, Suzuki, and Kamahele; (17) 42 U.S.C. § 1983 Violation of Plaintiff's Fourth Amendment Right to Be Free From Arrest Without Probable Cause by HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter; (18) 42 U.S.C. § 1983 Violation of Plaintiff's Fourth Amendment Right to Be Free

From Prosecution Without Probable Cause-Tort of Malicious Prosecution by HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter; (19) 42 U.S.C. § 1983 Violation of Plaintiff's Equal Protection Rights by HPD and its agents, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter; (20) Intentional Infliction of Emotional Distress by all Defendants; (21) Tort of Outrage-Punitive Damages against all Defendants; and (22) Injunctive Relief against Hannemann, HPD, MEO, and City and County of Honolulu-Prosecuting Attorney Department ("PAD").  Plaintiff seeks back wages and benefits, with interest, estimated at $1,100 or more for each two-week pay period from September 2005 to present; reinstatement, instatement, promotion, or front pay in lieu of job changes; general, compensatory, exemplary/punitive damages; attorney's fees and costs; injunctive relief in the form of enjoining the City and its agents and/or employees from continuing with the complained-of acts and policies; declaratory relief to remedy the harm, in part, to Plaintiff's reputation; and all other relief as the Court deems just.

Plaintiff's Complaint is based on the following factual allegations. Since around 1985, Plaintiff has been a civilian employee of the HPD, and she has been a member of the HGEA to which she is required to pay union dues.

6

(<u>Complaint</u> ¶¶ 8, 42-43.)  In 1992, Plaintiff was hired as a project coordinator, which included the duty of researching mental health issues.  (<u>Id.</u> ¶¶ 44, 46.)  In 1997, Plaintiff filed a sexual harassment lawsuit involving her employment with HPD.  One of the defendants named in that lawsuit was Defendant Correa, the Chief of Police of the HPD.  (<u>Id.</u> at ¶¶ 36-38.)  The lawsuit resulted in a settlement in Plaintiff's favor in November 2001, including a cash payment of $612,500.00 with an agreement entitled "Settlement Release and Indemnification Agreement" (hereinafter, "Settlement Agreement")  (<u>Id.</u> ¶ 37.)  The Settlement Agreement contained various three year obligations that expired in November 2004 and obligations that continue today.  (<u>Id.</u> ¶ 39.)

The Complaint is based on actions that allegedly commenced in October 2004 when Correa assigned Lima, a Major of the HPD, to supervise Plaintiff.[3]  When Lima arrived, he allegedly investigated Plaintiff's prior lawsuit and, in November 2004, he allegedly told her,"I'm not scared of you because of the lawsuit like the other commanders are scared of you."  (<u>Id.</u> ¶ 50-51.)  According to Plaintiff, Lima then made changes to Plaintiff's day to day job duties, including changes to her pay and her record and work keeping requirements.  (<u>Id.</u> ¶¶ 52-53.)

---

[3]    Prior to that, Plaintiff had worked under the supervision of "Major Tucker."  (<u>Id.</u> ¶ 48.)

In or around April 2005, Lima transferred Plaintiff to the supervision of Harada, a Lieutenant of the HPD, who was under the supervision of Nishimura, a Captain of the HPD, who, in turn, was under the supervision of Lima.  (<u>Id.</u> ¶¶ 54-57.)  Axt, a Sergeant of the HPD, also was involved in Plaintiff's supervision and the decisions regarding her pay.  (<u>Id.</u> ¶ 59.)   Based on that chain of command, Lima appears to have retained at least some control over Plaintiff's supervision during the time in question.[4]

Since 1992, Plaintiff's duties, including researching mental health issues, had not changed.  (<u>Id.</u> ¶¶ 46-47.)  As her duties still included researching mental health issues, in May 2005, Harada assigned Plaintiff to investigate why officers had to wait for an extended period of time at Queens Hospital.  (<u>Id.</u> ¶ 60.) Around that time, Plaintiff claims that "[i]t was public knowledge that a high number of people committed suicides in the first half of 2005," which concerned Plaintiff.  (<u>Id.</u> ¶ 64.)  Plaintiff also claims that she discovered that the people that police officers escorted to Queens Hospital often were suicidal; that they were released from the hospital shortly after the police officers placed them in the hospital's care; and that, upon release, some of those people committed suicide.

---

[4]      Nishimura allegedly told Plaintiff, however, that she had no clear chain of command and must answer to anyone in uniform.  (<u>Id.</u> ¶ 57.)

(Id. ¶¶ 61-63.)  After committing suicide, the peoples' bodies wound up at MEO; thus, the MEO was a source of information linking the suicides to the people that the police officers' escorted to the hospital.  (Id. ¶¶ 67-68.)

Plaintiff had past experience conducting research at MEO and permission to conduct research there.[5]  (Id. ¶¶ 69-70.)  Still, before Plaintiff was assigned to do the research, Plaintiff called MEO in April 2005 for permission to conduct research at MEO, after which De Alwis, the Chief Medical Examiner of MEO, and Kamahele, his secretary, asked Plaintiff to put her request in an email, which she did.  (Id. ¶ 74.)  Kamahele then emailed Plaintiff at both her home and work email, granting her permission to do research and providing her with information about the suicides.  (Id. ¶¶ 75-76.)

Plaintiff commenced her research in June 2005, which continued into August 2005.  (Id. ¶ 77.)  During that time, according to Plaintiff, she did not receive any information about MEO's information security policies, formal orientations concerning the security policies, information that the computers contained public and secure information, or information pertaining to changes in

---

[5]     Earlier, in 1994, Chief Nakamura had sought permission, in the form of a letter to Dr. Alvin Omori, for Plaintiff to do research at MEO, which Dr. Omori apparently confirmed in open court in or around February 2007 during the subsequent criminal trial.  (Id. ¶¶ 71-72.)

policies since Plaintiff last had conducted research there.  (Id. ¶¶ 78-79.)  MEO staff also did not require her to submit any letters from her supervisors, a copy of a court order granting her permission to conduct the research, and Plaintiff apparently could not sign into any MEO computer without Kamahele's assistance (i.e., to enter a password).  (Id. ¶¶ 81-86.)  During that time, Plaintiff allegedly informed and gave drafts of her reports to Axt, Harada, Nishimura, Lima, and others at HPD about her research activities without complaint.   Axt, Harada, Nishimura, and Lima, however, made statements during the subsequent criminal investigation into Plaintiff's activities at MEO, stating that they told Plaintiff that she was prohibited from conducting research at MEO and that De Alwis, Goodhue and Suzuki, both medical examiners of the MEO, and Kamahele made the information security policies known to her, among other things.  (Id. ¶¶ 112-17.)

At one point, Kamahele told Plaintiff that she could not print from a particular computer, but she was allowed to access and to print information from other computers, which she did in full view of MEO staff.  (Id. ¶¶ 85, 89-90, 91.) MEO staff even assisted Plaintiff when printing without informing her that printing was not permitted; for instance, they assisted with changing the printer ink cartridge and performing maintenance.  (Id. ¶¶ 93-94.)  She also was allowed to

hand copy any information from a MEO computer and to remove information from the MEO.  (Id. ¶ 88.)

Plaintiff did not learn about the illegality or impropriety of her activities until August 4, 2005 when Kamahele accused her of printing without permission.  Following that accusation, Plaintiff offered to return the printed documents immediately, but Kamahele told her that she could return them the next morning.  (Id. ¶ 95.)  Plaintiff returned the printed documents the next day, but she did not return her handwritten notes, as she was not asked to do so.  She still has those notes in her possession.  (Id. ¶¶ 98-99, 101.)  MEO, through De Alwis, did not complain of Plaintiff's printing until around August 24, 2005, when he informed Kajiyama, the Deputy Chief of Police of the HPD.  (Id. ¶¶ 102-03.)  That prompted an investigation into Plaintiff's activities, during which time Plaintiff asked to be placed on administrative leave.  (Id. ¶¶ 107-08.)  On September 1, 2005, Plaintiff took sick and vacation leave.  (Id. ¶ 111.)

Criminal charges subsequently were filed against Plaintiff, which culminated in a hung jury in January 2007 (8-4 in Plaintiff's favor).  (Id. ¶¶ 118, 121.)  HPD continues to pursue administrative charges against Plaintiff.  (Id. ¶ 123.)  Plaintiff is under the impression that HPD is pursuing the same charges as those brought in the criminal case, but HPD claims that alternate charges are being

11

pursued.  (Id. ¶¶ 124-25.)  Plaintiff has yet to receive any information on actionable

administrative charges against her.  (Id. ¶ 127.)

On July 11, 2007, City Defendants filed their Motion to Dismiss,

which was followed by the Substantive Joinder Motion a week later.  On July 23,

2007, the HGEA Defendants filed their Motion to Dismiss, and, two days later, the

Correa Defendants followed suit.  Plaintiff opposed all motions, to which

Defendants replied.  The only Defendants who have not filed a motion to dismiss

are:  Watarai, Lima, Harada, and Axt, all of whom are agents and/or employees of

HPD; IHS and Maunakea, an employee of IHS; and Van Marter, a deputy

prosecutor for the City.

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")

12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a

claim upon which relief can be granted.  Review is limited to the contents of the

complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir.

1994).  Allegations of fact in the complaint must be taken as true and construed in

the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith

Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  A complaint need not include

detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v.

Twombly, 127 S. Ct. 1955, 1965 (2007).   In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 1966.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence.  In other words, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face.  See id. at 1974.  "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."  McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

Pursuant to Fed. R. Civ. P. 12(f), upon a motion made before responding to a pleading, a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  A court's decision to strike matters from pleadings is within its discretion, and the court's decision will be reviewed for an abuse of that discretion.  See Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1070 (9th Cir. 2002).  If the court dismisses a complaint or strikes matters from the allegations, the court may grant leave to amend if "justice so requires" pursuant to Fed. R. Civ. P. 15(a).

DISCUSSION

Despite the number of causes of action alleged, the well pled version of Plaintiff's Complaint would contain two main allegations: negligence and

retaliation, both of which are made under a variety of legal theories.  Consequently, the Court will strike any claims that are redundant and, of course, dismiss any claims upon which relief cannot be granted.

I.  City and Correa Defendants' Motions to Dismiss and/or to Strike and Substantive Joinder Motion

City Defendants argue that they are not proper parties to this lawsuit; Mayor Mufi Hannemann should be dismissed for failure to state a claim against him; and Plaintiff's causes of action either must be dismissed or stricken from the Complaint.  The Joinder Parties, that is, De Alwis, Goodhue, Suzuki, and Kamahele, seek to incorporate the arguments set forth in the City Defendants' Motion, while adding some additional arguments.  De Alwis, Goodhue, Suzuki, and Kamahele are employees and/or agents of MEO, a City Defendant.  Plaintiff has not opposed the joinder, though it was filed, as the parties concede, outside of the two day time limitation imposed under Local Rule 7.9.

Local Rule 7.9 stated, "[e]xcept with leave of court based on good cause, any substantive joinder in a motion or opposition must be filed and served within two business days of the filing of the motion or opposition joined in." (Emphasis added.)  City Defendants filed their Motion to Dismiss on July 11, 2007, and the Substantive Joinder Motion was filed on July 18, 2007, one week

later.   The Joinder Parties argue that, although untimely, they filed the Substantive

Joinder Motion within the time permitted for them to respond to Plaintiff's

Complaint.   The Court notes that Local Rule 7.9 is a mandatory rule, i.e., "must"

be filed, giving the Court discretionary power only when a party requests leave of

court for good cause.   The Joinder Parties did not request leave at any time.

Consequently, the Court will not consider the substantive arguments raised in the

Substantive Joinder Motion.

        Nevertheless, according to Local Rule 7.9, unlike a substantive

joinder motion, a "joinder of simple agreement may be filed at any time."   As

Plaintiff has not opposed the joinder, the Court will treat the Substantive Joinder

Motion as a joinder of simple agreement, thus considering the City Defendants'

arguments in relation to the Joinder Parties without considering further argument

by them.   Accordingly, whenever the Court dismisses counts against the City

Defendants, the Court, too, dismisses the counts, where applicable, against De

Alwis, Goodhue, Suzuki, and Kamahele as the Joinder Parties, and likewise where

applicable.

        A.  City Defendants as Proper Parties

        City Defendants argue that HPD, MEO, HRD, and PAD are not

proper parties because they are not sui juris and, thus, they should be dismissed.

15

See generally McCoy v. Corbett, 35 Haw. 743 (1940).  This Court has analyzed

claims against municipalities, such as the City and County of Honolulu, and their

respective police departments, such as HPD, under the rubric of municipal liability,

determining that such claims constitute claims against the City because the

departments are not separate legal entities.  See Pourny v. Maui Police Department,

County of Maui, 127 F. Supp. 2d 1129, 1143 (D. Haw. 2000) (treating the Maui

Police Department and the County of Maui as one party); Tokuhama v. City and

County of Honolulu, et al., 751 F. Supp. 1385, 1387-88, 1391-94 (D. Haw. 1989)

(reviewing the City and County of Honolulu's liability under § 1983 for the alleged

unconstitutionality of HPD's policies and customs); Meyer v. City and County of

Honolulu, 729 P.2d 388, 390 n.1 (Haw. Ct. App. 1986), rev'd in part on other

grounds, 731 P.2d 149 (Haw. 1986) (stating "the HPD is a department placed

under the supervision of the managing director of the City and County of Honolulu

(City)" and it is not an "independent legal entity"); see also Headwaters Forest

Defense v. County of Humboldt, et al., 276 F.3d 1125, 1127 (9th Cir. 2002)

(treating police departments as part of their respective county or city).  Moreover,

the Hawaii Supreme Court has held that different departments of the City and

County of Honolulu are not separate legal entities apart from the municipality.  See

City and County of Honolulu v. Toyama, 598 P.2d 168, 172 (1979).  Other

16

jurisdictions have reached similar conclusions, treating a city's police department as part of the municipality.  See, e.g., Shelby v. City of Atlanta, et al., 578 F. Supp. 1368, 1370 (N.D. Ga. 1984); Baker v. Willett, et al., 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999).

Plaintiff concedes that "the City and County of Honolulu is one legal entity," intending to treat the four departments as one legal entity: the City and County of Honolulu.  As the contents of Plaintiff's Complaint reflect that intent, the Court will treat Plaintiff's claims against the four departments, HPD, MEO, HRD, and PAD, as claims against the City.  See Meyer, 729 P.2d at 390 n.1.  The Court will refer, however, to the departments individually when appropriate for clarification.

B.  Dismissal of Mayor Hannemann

City Defendants move to dismiss Mayor Hannemann because, if individual liability of a managing official were to lie with anyone, that liability would lie with the managing director, who the City employs.  Additionally, City Defendants argue that, because an official capacity suit against an individual is the same as one against the official's employer, any claims against the managing director would be redundant because, really, those claims are against the City.

17

Plaintiff contends that Wayne Hashiro, the Director of the Managing Director Office, is an unnamed Doe Defendant who is responsible for the alleged acts.

Article VI, Chapters 1 and 6, of the Revised Charter of the City & County of Honolulu 1973 (2000 ed.) ("Revised Charter") provides that the managing director, as the principal administrative aide to the mayor, shall supervise all heads of all executive departments and agencies of the city, except the department of the corporation counsel, the mayor's office staff, the board of water supply and any other semi-autonomous agency.  See Sections 4-102 and 6-102 of the Revised Charter; see also Meyer, 729 P.2d at 507 n.1 (noting that "under article VI, chapters 1 and 6, of the Revised Charter of the City & County of Honolulu (1984 ed.), the HPD is a department placed under the supervision of the managing director of the City and County of Honolulu (City)") (emphasis added).  As none of the four departments at issue, HPD, MEO, HRD, and PAD, fall within one of the exceptions to the managing director's supervisory power, and there are no allegations against an office or an entity falling under the mayor's direct control, the Court DISMISSES all counts against Mayor Hannemann for failure to state a claim for relief against him.

As for the managing director, a suit against the managing director in his official capacity really is a suit against the City, as the real party in interest.

18

Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 n. 55 (1978)); see also Cooke-Seals v. District of Columbia, 973 F. Supp. 184, 187 (D.D.C. 1997).  Because the real party in interest is the entity, not the official, damages may be sought against the entity only.  See id.; see also Hafer v. Melo, 502 U.S. 21, 25 (1991) (determining that a suit against a state official sued in his or her official capacity is a suit against the state); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (same).  That said, the managing director arguably may be sued in his official capacity for injunctive relief, if a proper basis is formed against him.  Cf. Will, 491 U.S. 71 n. 10 (noting that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State") (citation and internal quotation marks omitted) (emphasis added).

        On the other hand, when the official is being sued in a personal capacity, personal liability may be imposed for actions taken under color of state law.  See Kentucky, 473 U.S. at 165.  As is true in many cases, the Complaint does not plainly indicate whether the managing director is being sued in his or her

official or individual capacity, as it does not mention the managing director at all.

See Kentucky, 473 U.S. at 167 n.14.  Plaintiff states that "each Defendant who is a

government official is being sued in both their private and official capacities," but

the managing director is not named and the Complaint does not clarify how the

managing director would be liable in his personal capacity.  (Complaint ¶ 35.)

Although Plaintiff states in her opposition that the managing director is an

unnamed Doe Defendant, she still fails to allege any facts that would support

claims of personal liability against the managing director.  All claims of personal

liability, based on the contents of the Complaint, attach to the agents and/or

employees of HPD, MEO, HGEA, and IHS, not to the supervisory official of the

City based on a chain of command.  As such, the Court will address all allegations

against the individual departments, as claims against the City and it will not

consider claims for damages against the managing director.  The Court, therefore,

DISMISSES all claims of personal liability against the managing director.  The

Court will, however, entertain the claim for injunctive relief against the managing

director, if applicable, as such a claim for prospective relief would not be a claim

against the City.

C.  Dismissal and/or Striking of Counts and/or Allegations

City and Correa Defendants seek dismissal of all claims against them. The Court will address each claim in turn as it applies to those parties against whom the claim is directed.

1.  Negligence claims (Counts 1-4, 6)

Plaintiff alleges negligence in the form of general negligence, failure to train and/or to supervise, and negligent infliction of emotional distress against various City Defendants and their employees and/or agents, including Correa Defendants, under Counts 1-4 and 6.  A municipality is "subject to the state's tort laws in the same manner as any other private tortfeasor may be liable for state law torts that its agents committed."  Kahale v. City and County of Honolulu, 90 P.3d 233, 241 (Haw. 2004); see also Lauer v. Young Men's Christian Ass'n of Honolulu, 557 P.2d 1334, 1341 (Haw. 1976) (holding that a municipality may be liable "on the same principles which impose liability on a non-municipal principal for the tortious conduct of its agents").  Under a respondeat superior theory of liability, an employer, including the City, may be held liable for the negligent acts of its employees if the acts occur within the scope of the employees' employment, even if the foreseeable effects of the acts occur outside the scope of employment. See Wong-Leong v. Hawaiian Indep. Refinery, Inc., 879 P.2d 538, 543-44 (Haw.

21

1994).  The State of Hawaii even recognizes a respondeat superior theory that holds a municipality liable for the tortious acts of its agents that are committed with "malice" within the scope of the agents' employment.  See Lane v. Yamamoto, 628 P.2d 634, 636 (Haw. Ct. App. 1981).  Thus, even if a public official acts with malice, the City still may be held liable if the act was completed within the scope of his or her employment.  A municipality cannot be held liable, however, for punitive damages.  See id. at 1342.

        To establish negligence, Plaintiff must demonstrate a duty, breach of that duty, legal causation, and actual injury and, for respondeat superior to apply, that the act occurred within the scope of the employee's employment.  See id.; Doe Parents No. 1 v. State Dep't of Educ., 58 P.3d 545, 579 (Haw. 2002).  A public officer, such as the director of an agency, acting within his official capacity also may be held individually liable for damages for acts committed within his employment if he commits the tort with malice or maliciously exercises his official discretion.[6]  See Kajiya v. Dep't of Water Supply, 629 P.2d 635, 640 (Haw. Ct. App. 1981).  If the public official was acting within his individual capacity, he may be held liable for committing the tort, with or without a showing of malice.  See id.

_____

        [6]    The Court did not apply this rule to the managing director because Plaintiff did not allege any facts that would prove that the managing director acted with malice or acted in any other tortious way.

Additionally, under certain circumstances, a failure to train may create municipal liability.  See City of Canton, Ohio v. Harris, 489 U.S. 378, 380 (1989).  A failure to train can provide a basis for municipal liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officials] come in contact."  Id. at 388-89.  The question is twofold: (1) whether the training program, if one in fact existed, is adequate; and if not, (2) "whether such inadequate training can justifiably be said to represent 'city policy.'"  Id. at 390.

Moreover, Plaintiff may recover for negligent infliction of emotional distress ("NIED") "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  Doe Parents No. 1, 58 P.3d at 580 (citation and internal quotation marks omitted).  An NIED claim that fails to allege physical injury as damage "is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles."  Id. (citation and internal quotation marks omitted).  To maintain a NIED claim, the Hawaii Supreme Court, thus, has held that a person must allege "that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself

or someone else," otherwise the person may maintain a negligence claim only.  Id. at 580-81.

With those standards in mind, Plaintiff alleges, under Count 1, that the City had a duty to furnish information concerning MEO's security policy or policies and to safeguard confidential information, as well as to train MEO's staff in that respect and to educate non-MEO staff persons who are conducting research. She also alleges, under Count 2, that HPD had a duty to supervise its agents and/or employees in such research activities and, in turn, that the agents and/or employees presumably had a duty to supervise her.  She further alleges, under Counts 3 and 4, that HPD and MEO had a duty to educate and to train their agents and/or employees about security policies and changes in those policies and to educate them about the constitutional rights of employees in regard to retaliation and other constitutional rights.   As a proximate cause of the City Defendants and the agents and/or employees' breach of those duties, Plaintiff allegedly suffered injuries in the form of retaliation, including changes to her work duties and her position, loss of back wages and benefits, future pay and earning capacity, loss of reputation, and emotional distress, among others.

City Defendants claim that they did not owe Plaintiff a duty because they owe a duty to the general public and not to individuals, citing Ruf v. Honolulu

24

Police Dep't, 972 P.2d 1081, 1088 n.5 (Haw. 1999) for the "public duty doctrine."

Under the public duty doctrine, "a municipality and its agents are deemed to act for

the benefit of the general public rather than a specific individual." Id. That rule,

however, generally is applied in the context of the early release of prisoners by

police officers or other such agents and/or employees who then go on to commit

crimes. See id.. It is not a general principle applied across the board to describe

the duty of municipalities and their agents. Defendants have presented no law that

would suggest that a municipality and its agents do not, under any circumstances,

owe a duty to individuals. Indeed, such a statement of law would cut against the

general rule accepted in Hawaii that a municipality is "subject to the state's tort

laws in the same manner as any other private tortfeasor may be liable for state law

torts that its agents committed." Kahale, 90 P.3d at 241.

Here, when viewing the allegations in the Complaint and construing

them in a light most favorable to Plaintiff, Plaintiff has raised sufficient facts that,

if proven through evidence obtained during discovery, may demonstrate breach of

a duty to safeguard confidential information, to communicate security policies and

confidential information to its staff and to the public, and to train and to educate

supervisors of their roles and of their employees' constitutional and statutory

rights. MEO's agents and/or employees may have had a duty to inform Plaintiff of

MEO's security policies to the extent that they were aware of them or should have been aware of them through proper training, and HPD's agents and/or employees may have had a duty to supervise Plaintiff's research.  Although contested, viewing the facts in the light most favorable to Plaintiff, she did not receive any information about MEO's information security policies, formal orientations concerning the security policies, information that the computers contained public and secure information, or information pertaining to changes in policies since Plaintiff last had conducted research there.  Moreover, MEO staff did not require her to submit any letters from her supervisors or a copy of a court order granting her permission to conduct the research, and Kamahele apparently was aware of Plaintiff's research as Plaintiff needed his help when accessing MEO's computers.  Axt, Harada, Nishimura, Lima, and others at HPD also apparently were aware of her research, as she claims that she informed and gave drafts of her reports to them without complaint.

        In viewing the evidence in a light most favorable to Plaintiff, the only guidance that Plaintiff may have received took the form of a one time statement from Kamahele, informing Plaintiff that she could not print from a particular computer.  Still, she was allowed to access and to print information from other MEO computers in full view of MEO staff and with their help.  In addition,

26

Plaintiff was not accused of doing anything illegal or improper until August 4, 2005, when she was accused of printing without permission, after which she returned the printed documents (though not her handwritten documents as she was not asked to do that at that time).   Moreover, from the Complaint and with no argument to the contrary, HPD and MEO's agents and/or employees allegedly committed the negligent acts within the scope of their employment.  (Complaint ¶ 34.)  Accordingly, City Defendants could be held liable for the negligent acts of their agents and/or employees in failing to safeguard confidential information, to communicate MEO's security policies and confidential information to its staff and the public, and to train, educate, and to sensitize the agents and/or employees of their role as supervisors and of their employees' constitutional and statutory rights.  Correa Defendants also may be liable for the negligent supervision of Plaintiff.

As for negligent supervision, the arguments are not all together clear.  The confusion lies in who is responsible for what.  Basically, HPD and MEO are accused of negligence in the supervision and training of their employees and/or agents (namely, in Counts 3 and 4), some of whom are (or were) Plaintiff's supervisors, and, in turn, HPD's supervisors and/or employees are being accused

of negligence in their supervision of Plaintiff (namely, in Count 2).[7]  As such,

Plaintiff is holding both the City and the agents and/or employees, namely, the

supervisors, liable for the acts of negligent supervision.  City and Correa

Defendants argue, however, that they cannot be held liable because the acts of the

agents and/or employees, including the supervisors, occurred within the scope of

employment.  See Pulawa v. GTE Hawaiian Tel, 143 P.3d 1205, 1220 (Haw.

2006); Dairy Road Partners v. Island Ins. Co., Ltd., 992 P.2d 93, 122 (Haw. 2000).

They argue that negligent supervision may be found only when the employee acts

outside the scope of his or her employment.  See Dairy Road Partners, 992 P.2d at

122.  That rule as applied in this context does not make a great deal of sense.

Generally, the concept of negligent supervision or negligent control is applied

when an employee, who is not a supervisor, commits an act that is not within the

scope of the employee's employment while under the supervisor's control.  See

Wong-Leong, 879 P.2d at 549 (citing Restatement (Second) of Torts § 317

(1965)).  Because the supervisor has a duty to exercise reasonable care to control

his or her agent's actions, the supervisor may be found negligently liable even if

the acts occurred outside of the scope of employment.

---

[7]      HPD and MEO can be liable for the acts of their agents and/or
employees only; they cannot be liable on their own as departmental entities.

Here, the Court is dealing with negligence mostly in the supervisors'

acts, which occurred within the scope of employment, not negligence in the acts of

non-supervisor employees for which the supervisor could be held directly

responsible for the failure to control those acts.  Under the theory of respondeat

superior, the City Defendants may be held liable, through the acts of their agents

and/or employees, for the negligent supervision of other agents and/or employees

that occurred within the scope of employment.  Under a general theory of

negligence, the remaining Defendants may be held individually liable if their acts

were committed in their personal, rather than in their official capacity, or if the acts

were committed in their official capacity with malice or a malicious exercise of

official discretion.  By contrast, if the negligent acts of supervision had occurred

outside of the scope of employment, the employer may be held liable under a

negligent failure to control theory.  The Hawaii Supreme Court's decision in

Wong-Leong exemplifies this distinction.  In Wong-Leong, the Hawaii Supreme

Court found that a trier of fact reasonably could find an employer liable for

negligent acts that an employee arguably committed within the scope of the

employee's employment, that is, consuming alcohol in the picnic area of the

employer's premises during a party celebrating the employee's recent promotion

and killing four people in a car crash on his way home, thus precluding summary

29

judgment.  See id. at 541-42, 549.  In the alternative, the Court found that, even if a trier of fact found that the employee was not acting within the scope of his employment, the employer still could be held directly liable for negligent failure to control, thus precluding summary judgment.  See 879 P.2d at 542, 549, 551. Consequently, on the same set of facts, the Hawaii Supreme Court found that the employer could be held liable under either a respondeat superior theory or negligent failure to control theory, depending on the finder of fact's finding concerning whether the employee acted within or outside the scope of employment.

Here, as the negligent acts of supervision occurred within the scope of employment, Plaintiff may sustain a cause of action under the theory of respondeat superior against the City for MEO and HPD's (through the acts of certain agents and/or employees) negligent failure to supervise the acts of the employees and/or agents in the appropriate chain of command.  As for the other Defendants, there are no factual allegations that would support a claim of personal liability for negligent supervision against Defendants Correa and Kajiyama and the Joinder Parties, namely, Defendants De Alwis, Goodhue, Suzuki, and Kamahele.  (Still, there are factual allegations that would support the Joinder Parties negligent failures in other respects under Count 1 concerning the failure to communicate MEO's security

30

policy or policies and to safeguard confidential information.)  The only Defendant, in his individual capacity, who is included within the instant motions to dismiss against whom Plaintiff may maintain a negligent supervision claim is Defendant Nishimura.[8]

        As for the NIED claims, as Plaintiff has failed "to establish a predicate physical injury to a person as a guarantee of the trustworthiness of [her] [NIED] claim," the Court finds that Plaintiff cannot maintain a cause of action against any Defendant for NIED.  Doe Parents No. 1, 58 P.3d at 580-81.  Plaintiff alleges emotional injury and injury to property in the form of loss of pay and other such losses, but, under Hawaii Supreme Court precedent, she also must allege an injury to a person, either herself or someone else, otherwise her claim is merely one of negligence.  See id.  She may be able to sustain an intentional infliction of emotional distress claim ("IIED") and she can sustain a negligence claim, but her NIED claim must fail.

        Accordingly, to summarize the negligence claims, the Court DENIES City Defendants' Motion to Dismiss as to Counts 1, 2, 3, and 4; DENIES Correa Defendants' Motion as to Count 2 (where applicable to Nishimura) but GRANTS

_____

        [8]      A claim of negligent supervision still remains, however, against the remaining Defendants, including Watarai, Lima, and Harada.

Correa Defendants' Motion as to Count 3 (as there are no claims of personal liability involved); and GRANTS City Defendants' and Correa Defendants' Motions as to Count 6.  The negligence claims that remain apply against the City and to those individuals against whom Plaintiff has alleged sufficient facts of personal liability only.  As no negligence claims may be sustained against Defendants Correa and Kajiyama (who are not included within Count 1 and may not be liable for negligent supervision under Count 2), all negligence claims against Defendants Correa and Kajiyama are DISMISSED.

## 2. Defamation (Count 7)

Plaintiff alleges defamation against Correa Defendants and the Joinder Parties, among others.  Specifically, the allegations include malicious statements by Kamahele pertaining to Plaintiff's observance of information security policies and to her ability to do her job.  She further alleges that Correa Defendants and the remaining Joinder Parties knew or should have known that the statements were clearly erroneous and that they repeated those statements within the MEO and HPD, in the presence of other employees, and to Van Marter during the investigation into her criminal behavior, which, in turn, leaked out into the public.  Correa Defendants argue that they are entitled to qualified immunity as public officials.

"Qualified immunity protects state and local officials from suit as long as their conduct did not 'violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" Arakawa v. Sakata, 133 F. Supp. 2d 1223, 1230 (D. Haw. 2001) (citation and internal quotation marks omitted).  For qualified immunity to apply, however, district courts must consider "(1) whether the plaintiff has identified a specific federal statutory or constitutional right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable officer could have believed his or her conduct was lawful." Id. (citation and internal quotation marks omitted) (emphasis added). Defamation is a state tort, as Correa Defendants recognize; it is not a federal statutory or constitutional right, such as a violation pursuant to 42 U.S.C. § 1983, which is the statute under which qualified immunity generally is raised.   See, e.g., Spoklie v. Montana, 411 F.3d 1051, 1060 (9th Cir. 2005).  Thus, qualified immunity does not apply here to protect the named Defendants.

To hold a public official liable for tortious injuries that he or she caused in his or her official capacity, malice must be proven.  See Kajiya, 629 P.2d at 640; Medeiros v. Kondo, 522 P.2d 1269, 1271-72 (Haw. 1974) ("We feel strongly that if an official, in exercising his authority is motivated by malice, and

not by an otherwise proper purpose, then he should not escape liability for the injuries he causes.").  As previously set forth, malice is only a requirement when the official was acting within his or her official capacity; if the public official was acting in his or her individual capacity, then malice need not be shown.  <u>See</u> <u>Kajiya</u>, 629 P.2d at 640.  "Unless the issue is removed from the case by uncontested affidavits and depositions, the existence or absence of malice is a question for the jury."  <u>Id.</u>  Again, Plaintiff alleges that the agents and/or employees committed the acts in both their personal and their official capacities, which may be fleshed out later.

One of the Joinder Parties, Kamahele, is the party alleged to have been directly responsible for the initiation of the defamatory statements.  The others followed suit, mostly for the purpose of the investigation.  Correa Defendants use that purpose to their advantage, arguing that Plaintiff has failed to allege that any statements were made for a purpose other than the investigation.  That is not accurate, according to the Complaint, as Plaintiff alleges that the statements were spread throughout the MEO, the HPD, and the general public.  By whom those statements were spread is not clear at this point.  If Correa Defendants and the Joinder Parties, among the rest, took part in that dissemination, malice could be inferred in relation to the allegations made against the Defendants in their

34

official capacity.  Malice even could be inferred if Plaintiff were able to show that the relevant Defendants made untruthful statements as part of the investigation for malicious purposes.  As malice is a question of fact for the jury and as Plaintiff has alleged sufficient facts to withstand a motion to dismiss, the Court DENIES Correa Defendants' Motion to Dismiss as to Count 7.  (To the extent that the Joinder Parties sought to dismiss that count as well, it, too, is denied to them.)

### 3.  Conspiracy (Count 8)

Plaintiff alleges conspiracy against HRD and Tsukayama, an equal opportunity officer of the HRD, who has not yet been discussed and who is included in City Defendants' Motion, and the Correa Defendants, among others, for conspiring to violate her civil rights.  To survive a motion to dismiss for a conspiracy to deprive Plaintiff of her constitutional or statutory rights, the Complaint must include "nonconclusory allegations containing evidence of unlawful intent[.]" Harris v. Roderick, 126 F.3d 1189, 1195 (9th Cir. 1997).  Vague or conclusory allegations will not satisfy this heightened pleading standard.  See id.; Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action."  Collyer v. Darling, 98 F.3d 211, 229 (6th Cir. 1996) (citation omitted).  Three elements are required to prove a conspiracy: (1) a

single plan, (2) the coconspirators shared in the general conspiratorial objective, and (3) the conspirators committed an overt act in furtherance of the conspiracy, causing injury to the complainant.  See id.  Plaintiff makes one conclusory allegation: Defendants "coordinated and fabricated in unison, in concert and complicity false testimony during the investigative stage."  (Complaint ¶ 302.) Plaintiff does not elaborate on this claim in her opposition; she merely regurgitates that line.  Without more, the Court cannot find that Plaintiff has pled sufficient facts, under the heightened pleading standard, to support a claim of conspiracy. Accordingly, the Court GRANTS City Defendants and Correa Defendants' Motions to Dismiss as to Count 8.

4.  Interference with a Business Relationship (Count 9)

Plaintiff alleges interference with a business relationship against HPD and its agents, including Correa Defendants, among others, though IHS and Maunakea appear to be the primary parties against which this claim is brought, neither of which filed motions to dismiss.  The crux of this claim is that IHS and Maunakea caused Plaintiff to lose her privileges of using the cooking facilities at IHS.  Plaintiff claims that she used those facilities to cook food to feed the homeless as a separate activity outside of work, of which HPD was aware.  That

privilege was revoked based on derogatory information that HPD's agents

allegedly told IHS about Plaintiff.

The tort of interference with business relations derives from the

Restatement (Second) of Torts § 766B, which provides:

> One who intentionally and improperly interferes with
> another's prospective contractual relation . . . is subject to
> liability to the other for the pecuniary harm resulting
> from loss of the benefits of the relation, whether the
> interference consists of
>
> (a) inducing or otherwise causing a third person not to
> enter into or continue the prospective relation or
>
> (b) <u>preventing the other from</u> acquiring or <u>continuing the
> prospective relation</u>.

(Emphasis added.)  The Hawaii Supreme Court has stated that the primary purpose

of the tort of contractual interference is "the protection of legitimate and

identifiable business expectancies," with an emphasis on promoting competition.

<u>Hawaii Medical Ass'n v. Hawaii Medical Serv. Ass'n</u>, 148 P.3d 1179, 1217 (Haw.

2006) (citation omitted).  The four elements, simply put, are: (1) the existence of a

valid business relationship, prospective advantage or expectancy that is sufficiently

definite, (2) knowledge of such a relationship, (3) intent to interfere with that

relationship, (4) legal causation between the interference and the injury, and (5)

actual damages.  <u>See id.</u> at 1218.  A key component is an actual relationship or

prospective relationship with specific factual allegations verifying the existence of such a relationship between the plaintiff and a third party.  See id.

City and Correa Defendants claim that the relevant relationship that Plaintiff must prove is that between Plaintiff and the homeless people that she feeds.  The Court disagrees, finding that the relevant relationship is that between Plaintiff and IHS because she is complaining about HPD's interference with her continuing relationship with IHS to use its facilities (and/or her expectation of such a relationship).  That said, Plaintiff alleges no facts of an actual relationship or a prospective or expected relationship with IHS that is sufficiently definite with which HPD's agents interfered.  She makes no reference to an agreement, express or implied, that Plaintiff had with IHS to use their facilities and to continue to use their facilities indefinitely.  Furthermore, Plaintiff used IHS's facilities for personal use, not work-related use; thus, there is no reason to believe that such a relationship was created through an employment agreement or otherwise.  HPD and IHS may have had knowledge of Plaintiff's use and they may not have objected to it, but that is not enough to establish the tort of interference of a business relationship. Plaintiff can argue the revocation of those privileges as damages that she suffered as a result of, for instance, retaliation, but her factual allegations simply do not

support the instant tort alleged.  The Court, therefore, GRANTS City Defendants

and Correa Defendants' Motions to Dismiss as to Count 9.

> 5. Retaliatory Breach of Employment
> Contract (Count 10)-- Breach of Covenant
> of Good Faith and Fair Dealing

Plaintiff alleges retaliatory breach of employment contract against

HPD and its agents, including Correa Defendants, among others.   Specifically, she

argues that she had an employment contract with HPD, HPD had an obligation to

deal with her in good faith, and they breached that obligation when they retaliated

against her through changes to her pay and benefits.  City Defendants and Correa

Defendants argue that, because Plaintiff is an employee of the City and a member

of HGEA, she does not have an employment agreement with the City.  Thus, the

only relevant contract is that between HGEA and the City.  Plaintiff does not

respond.

Plaintiff states that, when hired in or around 1992, she had a contract

describing her duties, but she does not state whether that contract was with HGEA

or HPD, even though she was an employee of HPD.  (Complaint ¶¶ 44-45.)

Notably, Plaintiff also brings a breach of contract claim against HGEA,

presumably according to a collective bargaining agreement.  Plaintiff does not

allege any further facts of a contractual employment relationship with HPD, but, as

this is a motion to dismiss and all factual allegations must be viewed in the light most favorable to Plaintiff, the Court recognizes that further support for such an agreement may be uncovered during discovery.

Notwithstanding the potential for an employment relationship between HPD and Plaintiff, Plaintiff may not maintain a cause of action for breach of the covenant of good faith and fair dealing in the employment context on the facts of this case.  In Francis v. Lee Enter., Inc, the Hawaii Supreme Court stated its reluctance to support tort claims for breach of good faith or fair dealing in the context of employment contracts because that tort generally is reserved for contracts in the insurance context.  See 971 P.2d 707, 710-12 (Haw. 1999).  In doing so, the Hawaii Supreme Court cited cases that hold that a tort for breach of an implied covenant of good faith and fair dealing may not be maintained in regard to employment contracts.  See, e.g., Foley v. Interactive Data Corp., 765 P.2d 373, 374 (Cal. 1988).  In Francis, the court also noted, "[a]lthough [it] d[id] not address the question here, the reasoning of the cases cited supra and our own decision in Best Place suggests that, even if [the plaintiff] attempted to state a claim for bad faith breach of his employment contract, it is not likely that he could do so."  971 P.2d at 711 n.2 (citing Best Place, Inc. v. Penn Am. Ins. Co., 920 P.2d 334, 346 (Haw. 1996).  Although this Court has found that such a tort may exist outside of

40

the insurance context, it has not taken issue with the Hawaii Supreme Court's

refusal to extend the tort to at-will, employee-employer relationships; it merely

refused to extend that rule further.  See Pachuta v. Unumprovident Corp., 242 F.

Supp. 2d 752, 761 (D. Haw. 2002).  Here, even if an employment agreement

existed between HPD and Plaintiff, Plaintiff has alleged no facts that would

suggest that the relationship formed something other than an at-will employment

situation.  Based on Hawaii Supreme Court precedent, the factual allegations

contained in Plaintiff's Complaint, and the absence of any argument otherwise,

Plaintiff has failed to state a claim upon which relief can be granted.   The Court

does not decide today whether a claim for breach of the covenant of good faith and

fair dealing ever may be made in the employment context, but it merely finds that

the instant case does not warrant an extension of that cause of action to the

employment context here.  As such, the Court GRANTS City Defendants and

Correa Defendants' Motions to Dismiss as to Count 10.

### 6.  Retaliatory Breach of Settlement Agreement (Count 11)

Plaintiff alleges retaliatory breach of the Settlement Agreement

against HPD, including Correa Defendants and Tsukayama, and HRD, among

others.  City and Correa Defendants argue that the Court lacks jurisdiction over any

arguments related to the Settlement Agreement because the Court that oversaw the

41

agreement retains jurisdiction, without providing any law in support.

Alternatively, they argue that, because Plaintiff admits that terms (or, at least, most

of the terms) of the Settlement Agreement ended in 2004, and the actions at issue

occurred in 2005, Plaintiff has failed to state a claim.

Without deciding whether the Court has jurisdiction over matters

pertaining to the Settlement Agreement, the Court strikes this allegation, within its

discretion, from Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(f) because it is

redundant of her retaliation claim under Count 13 pursuant to civil rights statutes

and the United States Constitution.  See Neighbors of Cuddy Mountain, 303 F.3d

at 1070.  The Court finds that the latter sources of law are the proper vehicle

through which to argue retaliation.  The Court, therefore, STRIKES Count 11 from

Plaintiff's Complaint.

### 7. Civil Rights Claims (Counts 12 and 13)

City Defendants argue that the claims, namely, sexual harassment and

retaliation, under Counts 12 and 13 should be stricken as redundant, immaterial,

impertinent or scandalous, while Correa Defendants argue that they cannot be held

individually liable for such claims.  Under those counts, Plaintiff alleges sexual

harassment and retaliation in violation Haw. Rev. Stat. §§ 378-2, 378-62, Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)(2002), and Fourteenth

Amendment Due Process, as well as 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against HPD and Correa Defendants, among others.

To start, the Court will not strike those claims because they are not redundant and they may have a bearing on the litigation.  See Wailua Assocs. v. Aetna Cas. & Sur. Co., 27 F. Supp. 2d 1211, 1216 (D. Haw. 1998).  Nonetheless, the contents of Plaintiff's Complaint do not support a charge of sexual harassment, but only one of retaliation.  Indeed, under her sexual harassment allegations, she really is arguing a claim of retaliation "for exercising her rights to testify in a court of law from past sexual harassment."  (Complaint ¶ 355.)  Thus, the Court will review her civil rights claims on the ground of retaliation only under Count 13, while dismissing Count 12 for failure to state a claim.

Haw. Rev. Stat. § 378-62 provides:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States. . . .

43

Title VII provides similar protection against discrimination for opposing any unlawful employment practice.  See 42 U.S.C. § 2000e-3(a).  "To establish a prima facie case of retaliation, the plaintiff must prove that (1) she engaged in a protected activity; (2) she was subjected to adverse employment action; and (3) a causal link exists between her participation in the protected activity and the adverse employment action."  Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1049-50 (D. Haw. 2000); see also Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998); Burlington Northern and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415-17 (2006) (broadening the type of actions that may be considered materially adverse from an objective standpoint, including reassignment).

Correa Defendants argue that, as individuals, they cannot be held personally liable for the retaliatory acts against Plaintiff.  They are correct insofar as Title VII is concerned.  The Ninth Circuit and this Court have conclusively determined that Title VII does not impose individual liability on employees, supervisory or otherwise, which this Court has recognized.  See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9th Cir. 1993); Sherez v. State of Hawaii Dep't of Educ., 396 F. Supp. 2d 1138, 1148 (D. Haw. 2005); Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1048 (D. Haw. 2000) ("Individual

employees of employers, including supervisors and managers, are not personally liable as 'employers' under Title VII.").

Still, there remains a retaliation claim under Haw. Rev. Stat. § 378-62. Plaintiff argues that she can maintain a cause of action against Defendants in their individual capacity, as agents of HPD, under Haw. Rev. Stat. § 378-62, citing Sherez v. State of Hawaii Dep't of Educ., 396 F. Supp. 2d 1138, 1148 (D. Haw. 2005) in support. Defendants argue otherwise, citing Mukaida v. State, 159 F. Supp. 2d 1211, 1226-27 (D. Haw. 2001). In Sherez, Judge J. Michael Seabright juxtaposed Haw. Rev. Stat. ch. 378 with Title VII, noting that, unlike Title VII, Haw. Rev. Stat. ch. 378 "imposes liability on employers with one or more employees"; thus, indicating an intent to keep open a channel of liability against those with limited resources (or, in other words, not to protect those with limited resources, such as individuals). Compare id. at 1146-48, with Miller, 991 F.2d at 587 (determining that Congress's intent under Title VII was to limit liability to those with limited resources based on its application to employers with 15 or more employees), and Haltek v. Village of Park Forest, 864 F. Supp. 802, 805 (N.D. Ill. 1994) (same). Judge Seabright also found that Haw. Rev. Stat. ch. 378's imposition of "aider and abetter liability on individuals" indicated that the statute was intended to apply to individuals. See id. Based on that, the Court concluded

45

that "chapter 378 imposes individual liability on agents of employers."  Id. at 1148.

In Mukaida, which was decided before Sherez, Judge Susan Oki Mollway took a

different approach.  In Mukaida, Judge Mollway focused on the statutory language

under Section 378-2 and the definition of "employer" under Section 378-1 to find

that, if called upon to determine the question, Hawaii appellate courts likely would

find that Chapter 378 does not impose individual liability "unless an individual

actually employs someone[.]"  159 F. Supp. 2d at 1227.  She, nonetheless,

distinguished claims of individual liability under Section 378-2(3), which imposes

liability on "any person" that aids or abets another in discriminatory practices,

finding that claims of individual liability may be brought pursuant to Section 378-

2(3).  See id. at 1240.

Since Mukaida and Sherez, Judge Mollway has conclusively

determined that Haw. Rev. Stat. § 378-2(2) does not impose individual liability

against those who discriminate, relying on the definition of "employer" provided

under Haw. Rev. Stat. § 378-1.  See Maizner v. Hawaii, Dept. of Educ., 405 F.

Supp. 2d 1225, 1232-39 (D. Haw. 2005).  Still, claims of individual liability under

Section 378-2(3) may be maintained.  See id. at 1239.  This judge agreed with

Judge Mollway insofar as claims pursuant to Haw. Rev. Stat. §§ 378-2(2) and 378-

2(3) were concerned, finding that the definition of "employer" under Haw. Rev.

Stat. § 378-1 does not permit claims of individual liability against agents of employers.  See Lavarias v. O'Kakoa, CV. No. 06-00481, 2006 WL 3422256, at *2 (D. Haw. Nov. 28, 2006); White v. Pacific Media Group, 322 F. Supp. 2d 1101, 1114 (D. Haw. 2004) (concurring with Judge Mollway in the Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261 (D. Haw. 2003) decision, finding "that the legislature intended to include employees as personally liable pursuant to § 378-2(3), and not personally liable for a violation of the statute in general").

Since then, Judge Alan C. Kay has come out with decisions on the matter in Hale v. Hawaii Publications, Inc., 468 F. Supp. 2d 1210 (D. Haw. 2006) and U.S. ex rel. Lockyer v. Hawaii Pacific Health, 490 F. Supp. 2d 1062 (D. Haw. 2007).  In Hale, Judge Kay conducted an independent review of the legislative history, finding that "[a]fter combing through the entire legislative history of this statute, the Court finds no indication that the Hawaii legislature ever intended to exclude individual agents from the definition of the term 'employer.'"  468 F. Supp. 2d at 1228.  Of particular interest, Judge Kay noted that the original definition of "employer" found under Act 44 of the 1964 Hawaii Session Laws, 1964 Haw. Sess. Laws 44 § 2A ("Act 44"), defined an employer as "any person having one or more persons in his employment, and includes any person acting as an agent of an employer, directly or indirectly" without an intent to narrow that

definition upon amendment in 1981.  Id. (emphasis added).  After reviewing the legislative history and the pertinent case law, Judge Kay concluded "that an individual without employees may be liable for discriminatory conduct pursuant to [Haw. Rev. Stat.] § 378-2(1) or retaliatory conduct pursuant to [Haw. Rev. Stat.] § 378-2(2) as an agent of his employer."  Id. at 1229.

Subsequently, in U.S. ex rel. Lockyer, Judge Kay applied his reasoning from Hale to find that individuals may be personally liable for retaliation under Hawaii's Whistleblower Protection Act, Haw. Rev. Stat. § 378-62, which is the statute at hand.  490 F. Supp. 2d at 1087-88.  In doing so, Judge Kay viewed the definition under Section 378-1 as "nearly identical" to that under Section 378-62.  Under Section 378-61 of the Whistleblower statute, an employer is defined as "a person who has one or more employees.  Employer includes an agent of an employer or of the State or a political subdivision of the State," whereas under Section 378-1, an employer is defined as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."   Contrary to Judge Kay's finding in U.S. ex rel. Lockyer, this judge finds significant the separation of the sentences in the definition of "employer" under Section 378-61, as distinguished from Section 378-1.

By separating the two sentences in the definition of "employer" under Section 378-61, that definition more closely mirrors the original definition of the term as noted in the legislative history, both of which suggest an "either/or" scenario.  See U.S. ex rel. Lockyer, 490 F. Supp. 2d at 1088 n.24.  The use of the conjunction "and" in the original definition suggests that, at least before the 1981 amendment took effect, the Hawaii legislature sought to impose additional liability on agents of employers, not liability on agents who employ one or more persons only.  This judge reads the definition under Section 378-61 in the same way.  That is, the Hawaii legislature's decision to draft a definition under Section 378-61 that includes a separate and independent sentence that stands alone without reference to "the" employer in the first sentence indicates an intent to impose individual liability, under Section 378-62, on persons with one or more employees or agents of an employer.   If the Hawaii legislature intended otherwise, the Court does not see why the legislature would define "employer" as including an "agent of an employer," rather than merely stating "an agent" or "an agent of the employer," while separating the sentences.  Consequently, the Court finds that the two distinct sentences employed in the definition under Section 378-61 suggests an intent to maintain a broader definition of "employer" under Section 378-61, similar to that in the original definition and different than that under Section 378-2, permitting

49

individual liability against agents who engage in retaliatory activity, regardless of whether the agents employ one or more employees.

At first glance, that view might appear inconsistent with this judge's reasoning in <u>Lavarias</u> and <u>White</u>.  But, those decisions can be easily reconciled with the instant decision.  When defining the term "employer" under Section 378-1 and Section 378-61, the Hawaii legislature chose to provide two distinct definitions, modifying the original, pre-1981 definition to create a slightly different definition under Section 378-1, while retaining a definition under Section 378-61 that is substantially the same as the original pre-1981 definition.  Although the legislature used the term "includes" under both definitions, which Judge Mollway might find significant, the way in which each definition is drafted suggests a different interpretation under each.  Granted, the Hawaii legislature could have been more clear under both definitions; for instance, the legislature could have drafted the second sentence of the definition under Section 378-61 to read:  an employer 'also includes' or 'also may be' an agent of an employer. Notwithstanding the ambiguous drafting, the Court finds that the Hawaii legislature's decision to include two different definitions under Chapter 378, that is, under Part I (Discriminatory Practices) versus Part V (Whistleblowers' Protection Act), when the legislature easily could have used the same definition

50

under both sections, is indicative of the Hawaii legislature's intent to create a broader definition under the Whistleblowers' Protection Act, in harmony with the original definition, versus a narrower definition under the Discriminatory Practices section.

One might question why the Hawaii legislature would choose to draft the definition under Section 378-61 broader than that under Section 378-1.  The Court can identify at least two reasons to explain why the Hawaii legislature may have chosen such a course.  First, unlike under Section 378-62, Section 378-2 specifically includes a subsection permitting individual liability for aiders and abetters, thus providing an avenue through which individuals may be found personally liable for discriminatory practices.  Section 378-62 does not carve out such an explicit exception.  Consequently, while individual liability clearly may be found under the language of Section 378-2, through subsection (3) dealing with aiders and abettors, the same cannot be said under the plain language of Section 378-62, making it more crucial to draft a broader definition under Section 378-62 than under Section 378-2 to permit claims of individual liability against persons who engage in retaliatory activity.  Second, retaliation claims are unique in that they do not fit neatly into other claims for relief, such as discrimination claims under 42 U.S.C. § 1981.  Although Section 1981 claims for retaliation may be

argued since the Supreme Court's decision in <u>Jackson v. Birmingham Bd. of Ed.</u>, such claims still would be limited to race-based claims, providing a more narrow form of relief.  <u>See</u> 544 U.S. 167, 173-74 (2005) (determining that retaliation and discrimination are not separate wrongs under Title IX; rather, retaliation is an act of intentional discrimination); <u>see also</u> <u>Humphries v. CBOCS West, Inc.</u>, 474 F.3d 387 (7th Cir. 2007) (finding that Section 1981 applies to claims of retaliation); <u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S. 273, 295-296 (1976) (explaining that Section 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race").  For instance, if a female were terminated for filing a claim against an employer, the most obvious vehicle through which to seek relief against the individuals who retaliated against her would be Hawaii's Whistleblower statute, not 42 U.S.C. § 1981.  The plaintiff may be able to bring a claim for intentional infliction of emotional distress, or other such claims, but that claim might not be as easy to prove as a claim for retaliation (even though, depending on the retaliation and the subsequent emotional distress that followed, the plaintiff may not have a difficult time proving 'outrageousness').  In sum, a plaintiff may be able to bring claims for personal liability against the person who retaliated against her through other avenues, but those claims may not adequately afford the plaintiff relief

because they may be more difficult to prove or because the plaintiff may not be a covered person (or the claim, simply, may not be the type of claim included within the purpose of the statute).  With that in mind, the Hawaii legislature may have realized that, without drafting a broader definition of "employer" under Section 378-61 to include agents of employers, a plaintiff may not be able to obtain adequate relief against the individuals who retaliated against him or her, unlike under Section 378-2 where aider and abettor liability is plainly imposed against individual persons.[9]

Here, Plaintiff was previously engaged in a sexual harassment lawsuit that resulted in a settlement in her favor.  She alleges that she suffered adverse employment actions in the form of the criminal investigation against her and subsequent changes to her work duties and responsibilities and her pay and that HPD and its agents and/or employees initiated those activities based on her previous decision to protect her civil rights.  The factual allegation that Lima was aware of Plaintiff's former sexual harassment lawsuit, as evidenced by his

---

[9]     The Court notes that, with this decision, it does not reconsider its decisions in Lavarias and White, as it need not, because the instant decision is decided pursuant to Section 378-62, which encompasses the broader definition of "employer" under Section 378-61, whereas the other decisions were decided under Section 378-2, which encompasses the more narrow definition under Section 378-1.

comment that he was not scared of her, may demonstrate personal and/or

department-wide resentment toward her based on that lawsuit.  Significantly, Lima

remained at the top of her chain of command even when she was transferred to the

supervision of Harada, who was under the supervision of Nishimura who, in turn,

was under Lima's supervision.  Correa, who was involved in the previous lawsuit,

also was the person responsible for assigning Plaintiff to Lima's supervision in the

first place.  Axt played a role in Plaintiff's supervision as well.  All of those

supervisors may have been aware of Plaintiff's prior lawsuit, through Lima,

Correa, or elsewhere, which may have affected their decision not to warn Plaintiff

that her activities at MEO may have been illegal or improper if they were aware of

the illegality or should have been aware of it.  That knowledge also may have

prompted them to testify against her during the subsequent criminal investigation.

Those activities resulted in the criminal investigation against Plaintiff, leading to

her subsequent administrative leave.  Based on all of the factual allegations in her

Complaint, she has stated a claim of retaliation against HPD and its agents and/or

employees.  HPD may be liable under Title VII and chapter 378, and the Correa

Defendants may be individually liable under Section 378-62.  Thus, the Court finds

that Plaintiff has stated a claim upon which relief could be granted for individual

liability against Correa Defendants under chapter 378-62 (Count 13), but not Title

VII, whereas HPD may be liable under both Title VII and chapter 378 for retaliation (Count 13).

Plaintiff also argues that her Fourteenth Amendment substantive and procedural due process rights were violated, without stating how they were violated.  Again, Plaintiff appears to focus on the injuries that she suffered as a result of the charges brought against her for retaliation based on her earlier sexual harassment lawsuit.  Her factual allegations lend themselves to a Fourteenth Amendment procedural due process claim, forming the basis for her 42 U.S.C. § 1983 claim, but not to a substantive due process claim.  Given that Plaintiff has not cited, nor has the Court found, binding Ninth Circuit precedent that Plaintiff has a substantive due process right in her public employment, which is required to circumvent qualified immunity, the Court will not entertain her substantive due process claims on the factual allegations made in this case, whatever they might be. See Spoklie v. Montana, 411 F.3d 1051, 1060 (9th Cir. 2005); Lum v. Jensen, 876 F.2d 1385, 1387-89 (9th Cir. 1989) (finding that, at the time of the plaintiff's termination, there was no clearly established substantive due process right to continued public employment).

The Court will, however, entertain Plaintiff's procedural due process claims pursuant to Section 1983 and the Fourteenth Amendment if she has alleged

sufficient factual allegations that she was deprived of a "clearly established" property interest in her job without good cause, notice, or an opportunity to be heard or a liberty interest in clearing her good name.  See, e.g., Cox v. Roskelley, 359 F.3d 1105, 1110 (9th Cir. 2004) (finding a constitutional right to a name-clearing hearing); Huskey v. City of San Jose, 204 F.3d 893, 898, 900 (9th Cir. 2000) (analyzing a Section 1983 due process claim for deprivation of a property interest in employment); Miller v. Williams, 590 F.2d 317, 320 (9th Cir. 1979) (analyzing a Section 1983 due process claim for the absence of a predetermination hearing before termination).  That right must be clearly established, otherwise HPD's agents and/or employees, including Correa Defendants, will be immune from civil liability under § 1983 and the Fourteenth Amendment.  See Spoklie, 411 F.3d at 1060 (determining that as long as the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," he or she will be immune from civil liability under § 1983 under qualified immunity).  "In determining whether officials are entitled to qualified immunity, officials are charged with knowledge of constitutional developments at the time of the alleged constitutional violation, including all available case law."  Lum, 876 F.2d at 1387.  None of the parties provide any argument on qualified immunity in regard to the Fourth Amendment violation.

56

Plaintiff presents no argument or factual allegations of a clearly established right to cause, notice, or a hearing before she left employment.   Furthermore, according to Plaintiff's Complaint, it does not appear that she has been terminated from her position.  During the investigation, she sought administrative leave, taking sick and vacation leave in September 2005, but the record does not indicate that she has been terminated.  Although she still appears to be on that leave, as her prayer for relief seeks damages for her pay period from September 2005 to present and she seeks reinstatement, there is no indication in the record of termination without notice or a hearing.

Plaintiff may be alleging constructive discharge, which would require an inquiry into "whether a reasonable person in [her] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions."  Huskey, 204 F.3d at 900.  Even if she could establish that, however, that would not fulfill a Fourth Amendment claim, as she still has failed to make factual allegations that she has been deprived of a clearly established property interest in her job.  She also has not established that she has been deprived of a liberty interest in clearing her good name.  Indeed, Plaintiff arguably was given the opportunity to clear her good name and to have her side heard during the criminal investigation and criminal trial, depending on the fairness of the proceedings.

Notwithstanding, Plaintiff's Complaint is wholly deficient of facts (and her brief is deficient of law) that would suggest that she has been deprived of due process under the law.  As the crux of Plaintiff's Complaint is based on retaliation (and negligence), and her factual allegations support that claim only, the Court DISMISSES Plaintiff's causes of action pursuant to the Fourteenth Amendment.

The Court likewise will not entertain Plaintiff's complaints pursuant to 42 U.S.C. §§ 1981 (equal rights under the law), 1985 (conspiracy to interfere with civil rights), and 1986 (neglect to prevent the conspiracy under Section 1985) because she has failed to allege any facts that would support those claims. Accordingly, the Court DENIES City and Correa Defendants' Motions as to Count 13 as that claim pertains to allegations against the City made pursuant to Title VII and Haw. Rev. Stat. § 378-62 and against Correa Defendants made pursuant to Haw. Rev. Stat. § 378-62; GRANTS City and Correa Defendants' Motions as to Count 12; and GRANTS City and Correa Defendants' Motions as to Count 13 as that claim pertains to allegations made pursuant to the Fourteenth Amendment and 42 U.S.C. §§ 1981, 1985, and 1986.

8.  Section 1983 Claims (Counts 14-19)

Plaintiff alleges a slew of Section 1983 claims involving the right to petition the Government for redress of grievances, First and Fourteenth

Amendment rights to file suit, a First Amendment right to associate, a Fourth

Amendment right to be free from arrest without probable cause, a Fourth

Amendment right to be free from prosecution without probable cause, and equal

protection of rights under the law.

Those claims may attach to the City Defendants' agents and/or

employees in their individual capacity.  Nonetheless, the Court is mindful that the

City, itself, may not be held liable under § 1983 for the acts of its agents solely

because the agents who allegedly committed the torts were employees of the

municipality during the events in question.  See Pourny v. Maui Police Dep't,

County of Maui, 127 F. Supp. 2d 1129, 1143 (D. Haw. 2000); see also Sunn v.

City & County of Honolulu, 852 F. Supp. 903, 908 (D. Haw. 1994) ("A

municipality cannot be held liable merely for employing a tortfeasor.").  Rather,

the named Defendants may be held liable only where the alleged unconstitutional

acts implement or execute a municipal policy, ordinance, decision, regulation, or

custom.  See Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 690-

91 (1978).  For liability to attach, this Court must find that such acts were "(1) the

direct result of inadequate [] training or supervision; (2) the product of an officially

adopted policy statement, ordinance, regulation, or decision; or (3) illustrative of a

custom which is so permanent and well settled to constitute a custom or usage with

the force of law." Sunn, 852 F. Supp. at 909; see also City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989) (confirming that the failure to train may form the basis of a claim for municipal liability). "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). The word custom recognizes situations where the practices of officials are permanent and well settled. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-68 (1970).

City Defendants argue that the claims presented are redundant and, thus, the Court should strike them. Correa Defendants address Counts 17 (freedom from arrest) and 18 (malicious prosecution) only. For the sake of brevity (and in light of the deficient arguments and factual allegations for the majority of these claims), the Court will briefly address each of Plaintiff's claims.

Count 14 is based on a claim that her complaint of misconduct, apparently filed around September 2005, against HPD was dismissed without a sufficient investigation. That First Amendment extends to all governmental departments and to the courts. See Cal. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 612 (1972). Still, Plaintiff's claim is based on a "failure to take Plaintiff's complaint seriously," resulting in a half-hearted investigation into her complaint, which was the result of inadequate training. (Complaint ¶ 401.)

As such, Count 14 is redundant of Counts 3 and 4 for failure to train the City's

agents and/or employees on their constitutional rights and how to address those

rights.   The Court, therefore, STRIKES Count 14.

Count 15 involves Plaintiff's constitutional rights to file a lawsuit,

which includes allegations that, based on Plaintiff's filing of her previous lawsuit,

Defendant Correa orchestrated a retaliatory scheme of events against her, thus

seemingly interfering with her constitutional protection to file suit.  Although

retaliation under the First Amendment is a viable claim when someone is retaliated

against for speaking out in the workforce on a protected ground, see, e.g., Huskey,

204 F.3d at 899, Plaintiff's factual allegations do not present such a case and her

claims are redundant of those under Count 13.  The Court, therefore, STRIKES

Count 15.

Count 16 involves Plaintiff's right to associate with a friend named

"Susan Siu," who is an investigator at MEO, and has been put on administrative

leave with various accusations against her for reasons unknown to the Court.

Plaintiff alleges that De Alwis negatively perceived Plaintiff's association with Ms.

Siu, thus falsely accusing and retaliating against Plaintiff based on that association.

Retaliation for association under the First Amendment is a viable cause of action.

See generally Strahan v. Kirkland, 287 F.3d 821 (9th Cir. 2002) (finding a failure

to demonstrate that the plaintiff's association with a motorcycle club was a

motivating factor in the sheriff's decision to discipline him).  Although this claim

initially may seem  redundant of Count 13, Plaintiff did not allege retaliation by

MEO and its agents and/or employees under Count 13, as she does under Count 16

based on her association with Ms. Siu.  If Plaintiff can establish that her association

with Ms. Siu was a motivating factor in De Alwis's decision to report her to

Kajiyama, among other actions by MEO agents and/or employees, then Plaintiff

may be able to maintain such a claim against MEO's agents and/or employees.

Although not argued, the relevant agents and/or employees would not be immune

under qualified immunity because the right to be free from retaliation based on

association under the First Amendment is so clearly established that a reasonable

officer could not believe that such negative association would be lawful.  See

Arakawa, 133 F. Supp. 2d at 1230.  Still, Plaintiff has alleged no facts of an official

policy or custom in relation to this claim for which the City may be held liable.

The Court, therefore, DENIES City Defendants' Motion as to Count 16 for the

individual employees and/or agents involved, namely, the Joinder Parties (De

Alwis, Goodhue, Suzuki, and Kamahele) but GRANTS it for the City.

Count 17 involves Plaintiff's constitutional right to be free from arrest

without probable cause, but, according to Plaintiff's Complaint, an arrest warrant

was issued against her in December 2006 and a grand jury subsequently

determined that probable cause existed.  Of course, a grand jury's determination

does not per se mean that the arrest was made with probable cause; for instance, if

the grand jury's decision was based on false information from police officers, then

the existence of probable cause at the time of the arrest may be negated.  Based on

the underlying facts of this case, however, HPD and its employees and/or agents

reasonably could have determined that probable cause existed to arrest Plaintiff

based on the allegations of her act of "illegally" printing confidential documents

(whether or not she actually was at fault), which information De Alwis, as MEO's

agent, provided to HPD.  Plaintiff's claims are more properly addressed under her

negligence and retaliation causes of action, as she admits to conducting the

research and printing the material (which formed the basis of the criminal charges)

but claims that her actions were based on an absence of security policies and

confidential information provided to her by MEO, a failure to supervise by HPD,

and a failure to train by HPD and MEO, among others.  She, furthermore, claims

that the resulting investigation really was an act of retaliation stemming from her

previous lawsuit.  The real issue, therefore, does not surround the absence of

probable cause, but rather surrounds MEO and HPD's (and their agents and/or

employees) failures in their duties and their motivations for those failures, which

63

led to the initiation of the investigation and the subsequent criminal lawsuit based on probable cause for Plaintiff's criminal activity.  Thus, the Court GRANTS City and Correa Defendants' Motions as to Count 17.

Count 18 involves a Fourth Amendment claim to be free from malicious prosecution.  A malicious prosecution claim requires proof that (1) the prior proceeding was terminated in the plaintiff's favor, (2) the prior proceedings were initiated without probable cause, and (3) the prior proceedings were initiated with malice.  See Myers v. Cohen, 688 P.2d 1145, 1148 (Haw. 1984).  Plaintiff must prove all three elements to succeed.  See Smith v. Hurd, 699 F. Supp. 1433, 1435 (D. Haw. 1988).  Thus, a determination that probable cause existed serves as a defense to a claim of malicious prosecution.  See Reed v. City and County of Honolulu, 873 P.2d 98, 109 (Haw. 1994).  As the Court finds that the record contains sufficient factual allegations to support a finding of probable cause, the second prong is negated, thus prompting dismissal of this count.  The Court, therefore, GRANTS City and Correa Defendants' Motions as to Count 18.

Count 19 involves an alleged violation of Plaintiff's equal protection rights, in which Plaintiff alleges that she was singled out for retaliation in that other HPD employees are not criminally and administratively charged for carrying out assigned duties.  Again, the Court views the factual allegations contained in this

64

count as redundant of those in her charge of retaliation, as she is arguing that she was singled out for retaliation, presumably based on her previous lawsuit.  As such, the Court STRIKES Count 19 as redundant of the charges in Count 13.

### 9.  IIED Claim (Count 20)

Plaintiff makes a claim of IIED against all Defendants.  Under Hawaii law, an IIED claim requires proof of four elements: "(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, (3) that the act caused (4) extreme emotional distress to another."  Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (Quoting Hac v. Univ. of Haw., 73 P.3d46, 60-61 (Haw. 2003)).  Hawaii state courts have defined "outrageous" as conduct "without just cause or excuse and beyond all bounds of decency" and "extreme emotional distress" as mental suffering, mental anguish, nervous shock, and other "highly unpleasant mental reactions."  Enoka, 128 P.3d at 872.  Without reiterating all of the factual allegations, the Court finds that Plaintiff has alleged sufficient factual allegations that, if proven, could satisfy a claim of IIED.  If Defendants intentionally retaliated against her for filing a previous sexual harassment lawsuit and initiated criminal proceedings against her, including an administrative investigation that still has not culminated in charges against her, and acted maliciously in defaming her inside and outside of the workplace, without just

65

cause or excuse, Plaintiff may be able to prove her claim.  Thus, the Court

DENIES City and Correa Defendants' Motions as to Count 20.

### 10.  Punitive Damages Claim (Count 21)

The Court first notes that a municipality cannot be held liable for

punitive damages; thus, any claims of punitive damages must be dismissed as to

the City Defendants' departments.  As for the remaining Defendants who have

filed motions, punitive damages do not exist as an independent cause of action,

although a number of plaintiffs argue them as such.  Under Hawaii law, a claim for

punitive damages "is not an independent tort, but is purely incidental to a separate

cause of action."  Ross v. Stouffer Hotel Co. (Hawaii) Ltd., 879 P.2d 1037, 1049

(Haw. 1994).  Thus, the Court STRIKES Count 21 as an independent cause of

action, while noting that punitive damages may be sought as a remedy if proven.

### 11.  Injunctive Relief Claim (Count 22)

Plaintiff seeks injunctive relief against City Defendants to enjoin

HPD, MEO, and PAD from continuing with their negligent and retaliatory conduct

related to the complained-of policies.   As this cause of action may be had if

proven, the Court will not dismiss it now.

## II.  HGEA Defendants' Motion to Dismiss

The only claims against HGEA Defendants are Count 5 for Failure to Investigate and Represent; Count 6 for NIED; Count 20 for IIED; and Count 21 for the Tort of Outrage-Punitive Damages.  As the Court dismissed Count 6 for failure to state a claim and struck Count 21 because it is not an independent cause of action, the Court does the same here.  Insofar as the IIED claim relates to HGEA, the Court addresses that claim separately, as it is based on different factual allegations than those that formed the foundation for Plaintiff's claims against City and Correa Defendants.

### A.  Breach of Duty of Fair Representation

Plaintiff alleges that HGEA Defendants had a duty to represent Plaintiff during all grievances against her, including the criminal investigation and administrative charges.  HGEA Defendants argue that Plaintiff declined representation when the administrative charges were pursued, they had no duty to represent her against criminal charges, and, in any case, Plaintiff's claims are barred by the statute of limitations pursuant to Haw. Rev. Stat. § 378-51.  Haw. Rev. Stat. § 378-51 provides that a plaintiff must file a complaint against a union within 90 days after the cause of action accrues.  HGEA Defendants further argue

that, under Haw. Rev. Stat. § 89-14, the Hawaii Labor Relations Board has

exclusive jurisdiction over prohibited practice claims.

Plaintiff concedes those points, stating that HGEA Defendants are

correct but that the Court should disregard the Hawaii statutes because they violate

the United States Constitution.  The Court will not entertain new arguments raised

for the first time in Plaintiff's opposition.  See Kaiser v. First Hawaiian Bank, 30 F.

Supp. 2d 1255, 1261 n.3 (D. Haw. 1997); Grayson v. O'Neill, 308 F.3d 808, 817

(7th Cir. 2002) (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir.

1996)).  Even if the Court were to entertain such arguments, Plaintiff has stated no

reason for the Court to find that those statutes violate the United States

Constitution.  Accordingly, the Court GRANTS HGEA's Motion as to Count 5.

B.  IIED

As Plaintiff's claim under Count 5 is dismissed, Plaintiff has failed to

state factual allegations that would rise to the level of extreme or outrageous

conduct on the part of HGEA Defendants for, in essence, a failure to investigate.

The Court, thus, DISMISSES Count 20 as to HGEA Defendants, along with all

other counts.

CONCLUSION

For the reasons stated above, the Court

(1) DENIES City Defendants and Correa Defendants' Motions, where applicable, as to Counts 2 and 20;

(2) further DENIES City Defendants' Motion as to Counts 1, 3, 4, and 13 (for violations of Haw. Rev. Stat. § 378-62 and Title VII only), Count 16 (for the Joinder Parties only), and Count 22; and DENIES Correa Defendants' Motion as to Counts 7 and 13 (for violations of Haw. Rev. Stat. § 378-62 only);

(3) GRANTS City Defendants and Correa Defendants' Motions as to Count 13 as that claim pertains to allegations made pursuant to the Fourteenth Amendment and 42 U.S.C. §§ 1981, 1985, and 1986;

(4) GRANTS City Defendants and Correa Defendants' Motions as to Counts 6, 8, 9, 10, 12, 14, 17, and 18;

(5) GRANTS HGEA's Motion as to all counts against it, namely, Counts 5, 6, 20, and 21;

(6) STRIKES Counts 11, 14, 15, 19, and 21 from Plaintiff's Complaint as redundant of either Counts 3 and 4 or Count 13; and

(7) DISMISSES all counts against Mayor Hannemann (and to the extent applicable, the unnamed managing director, except for claims of injunctive relief).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 30, 2007.



_____
David Alan Ezra
United States District Judge

Sharon Black vs. Boisse Correa, et al.,Civil No. 07-00299 DAE-LEK;
AMENDED ORDER (1) GRANTING IN PART AND DENYING IN PART
CITY DEFENDANTS' MOTION TO DISMISS AND/OR TO STRIKE; (2)
GRANTING THE SUBSTANTIVE JOINDER MOTION; (3) GRANTING
HAWAII GOVERNMENT EMPLOYEES ASSOCIATION DEFENDANTS'
MOTION TO DISMISS; (4) AND GRANTING IN PART AND DENYING IN
PART CORREA DEFENDANTS' MOTION TO DISMISS AND/OR TO STRIKE