IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHARON BLACK,       ) | CIVIL NO. 07-00299 DAE-LEK |
|                        ) | |

SHARON BLACK,                    )     CIVIL NO. 07-00299 DAE-LEK
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
BOISSE CORREA; CITY AND          )
COUNTY OF HONOLULU, GLEN         )
KAJIYAMA; STEPHEN WATARAI;)
KEVIN LIMA; CARLTON              )
NISHIMURA; OWEN HARADA;          )
WILLIAM AXT; KANTHI DE           )
ALWIS; WILLIAM W. GOODHUE; )
GAIL SUZUKI; ALICIA              )
KAMAHELE; DENISE                 )
TSUKAYAMA; CHRIS VAN             )
MARTER; WAYNE HASHIRO;           )
DOES 1-20,                       )
                                 )
          Defendants.            )
_____)

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On August 11, 2008, the Court heard Defendants' Motion.  Mark S.

Beatty, Esq., appeared at the hearing on behalf of Plaintiff; Rebecca E. Quinn,

Deputy Corporation Counsel, appeared at the hearing on behalf of Defendants.

After reviewing the motion and the supporting and opposing memoranda, the Court

GRANTS IN PART AND DENIES IN PART Defendants' Motion.

All Defendants' motion is granted with respect to Plaintiffs' NIED claim, conspiracy claim, and First Amendment claim.  As Plaintiff acknowledges that she does not have evidence against Defendants William Axt or Gail Suzuki, their motion for summary judgment is GRANTED with respect to all of Plaintiffs' claims against them.  Defendant Van Marter's motion is GRANTED with respect to all claims against him.  Defendants Lima, Watarai, Nishimura, and Harada's motion for summary judgment on Plaintiff's claim under Hawaii Revised Statute section 378-62 is GRANTED.  Defendants De Alwis, Goodhue, Kamahele, Tsukayama, Hashiro, Harada, the MEO, and Lima's motion for summary judgment on the IIED claim is GRANTED.  All other claims against the remaining Defendants survive summary judgment, as set forth below.

<u>BACKGROUND</u>

In 1992, Plaintiff began working for the Honolulu Police Department ("HPD") as an outreach worker to assist the department in dealing with homeless and mentally ill persons who came into contact with the police.  Plaintiff's role included, among other duties, working closely with area hospitals to get officers released from the hospital at a faster rate after taking individuals to the hospital for treatment, and acting as the patient's advocate.

2

In 1994, Plaintiff began researching suicide cases at the Honolulu Medical Examiner's Office ("MEO").  Plaintiff testified that then Police Chief Nakamura had given her permission to conduct such research.  Defendant HPD Officer Kevin Lima became Plaintiff's supervising coordinator in 2004.  Defendant Lima ordered Plaintiff to keep detailed overtime logs and maintain mileage logs for her City-issued vehicle.  Defendant Lima also met with Plaintiff frequently and managed many details of Plaintiff's duties.

In July 2005, approximately one and one-half years since she last conducted research at the MEO, Plaintiff returned to the MEO to continue her research.  Defendant Chief Medical Examiner at the MEO Dr. Kanthi De Alwis gave Plaintiff permission to continue her research into suicide cases.  Defendant Alicia Kamahele, secretary at the MEO, showed Plaintiff a new room that she could use and a different computer system.  Plaintiff was told how to get access to the information she needed and was allowed to remain in the room to conduct her research.  Defendant Kamahele ran a report for Plaintiff regarding suicides, which included the names of the decedent.  Kamahele gave Plaintiff instructions regarding printing.  Plaintiff alleges that she was only told that she should not print to a specific printer, but that she was not made aware of a prohibition on printing the reports in general.  Defendant Kamahele testified that when Plaintiff asked

3

about making copies of reports, Kamahele told her that she would have to get authorization from Dr. De Alwis, and that Plaintiff understood.

Plaintiff printed out some reports at the MEO.  On August 4, 2005, Defendant Kamahele was informed that Plaintiff had printed out reports. Defendant Kamahele asked Plaintiff to return the reports, which she did the following day.  When questioned about her printing, Plaintiff explained that she had understood only that she was not to use one particular workstation for copying or printing records and that because she did research from two different workstations, she thought she was allowed to use the other workstation.

The MEO reported to Defendant HPD Deputy Chief Glen Kajiyama that Plaintiff had printed reports without authorization.  HPD Defendants assert that they had no knowledge that Plaintiff was conducting suicide research at the MEO.  HPD Defendants assert that Plaintiff's then supervisor, Defendant Lima, had only directed her to prepare a report on the amount of time officers were made to wait at hospitals before persons they had brought there would be admitted.  HPD Defendants state that they never ordered Plaintiff to conduct suicide research.

Plaintiff, however, has presented evidence that she had authority to do research in general and that her job duties in that respect were never changed. Plaintiff also provided a job description, which includes duties to prepare reports

4

and statistics evaluating the effectiveness of the outreach services she provided.

Plaintiff provided a memo written by her in 1996 to HPD wherein she discusses, as

the liason between HPD and hospitals with respect to the homeless and mentally

ill, her concerns regarding various patients who had been brought to the hospital by

HPD, were released by the hospital shortly after being admitted, and then

committed suicide shortly after being released from the hospital.  In addition,

Plaintiff provided an email from Defendant Lt. Owen Harada to her, dated June 22,

2005, asking that she prepare a report illustrating any misconduct by the hospitals

with regard to admitting patients brought in by HPD officers.  He asked that the

report include names of patients.  Plaintiff provided a memo from her to Defendant

HPD Lt. Harada written on July 11, 2005, in which she provides a report as he

requested about misconduct at the hospitals with regard to admitting patients, and

states that she has been researching the suicide issues at the MEO.  Plaintiff

provided another memo dated August 12, 2005, to HPD, which again discusses her

suicide research.  Plaintiff explains that she discovered that the people that police

officers escorted to a hospital often were suicidal; that they were released from the

hospital shortly after the police officers placed them in the hospital's care; and that,

upon release, some of those people committed suicide.  After committing suicide,

the peoples' bodies wound up at MEO; thus, the MEO was a source of information linking the suicides to the people that the police officers escorted to the hospital.

Approximately three weeks after Plaintiff returned the printed reports to the MEO, on August 25, 2005, Defendant Boisse Correa, Chief of Police, ordered Plaintiff to immediately surrender her HPD issued equipment, to not exercise any authority on behalf of the HPD, and that due to an ongoing criminal investigation against her, she was not allowed into restricted HPD areas. Plaintiff was placed on leave without pay pending the investigation. The restriction on access to HPD was lifted on August 29, 2005. Plaintiff was also allowed to return to work in a limited duty capacity on that date pending the investigation. At some point, Plaintiff complained to Defendant Equal Opportunity Officer Denise Tsukayama.

Plaintiff provided a memo dated August 29, 2005, wherein Defendant Chief Correa discussed the criminal investigation of Plaintiff based upon the report of alleged unauthorized printing at the MEO. HPD Lt. Carvalho of internal affairs was put in charge of conducting an investigation into Plaintiff's printing of reports at the MEO. Defendant Chief Correa made the final decision to bring both administrative charges against Plaintiff for violation of internal policies and criminal charges against Plaintiff. Defendants Kajiyama, HPD Officer Steven

6

Watarai, and Captain Carlton Nishimura were consulted either as part of Plaintiff's chain of command, or regarding the final decision to bring the charges.

The following criminal charges were brought against Plaintiff in the Circuit Court of the First Circuit of the State of Hawaii:  unauthorized computer access in the second degree for having printed information from the MEO computer (Count I), theft in the fourth degree for unauthorized control over the documents she printed (Count II), and tampering with a government record for an alleged refusal to return some of the original documents (Count III).  The maximum penalty for a conviction of Count 1 would be five years imprisonment.  A jury trial took place and culminated in a hung jury in January 2007 (8 to 4 in favor of not guilty on Counts I and II, and 7 to 5 in favor of not guilty on Count III).  Thereafter, on April 20, 2007, the State court granted Plaintiff's motion to dismiss the indictment with prejudice.  The criminal case was prosecuted by Defendant Chris Van Marter.  The administrative charges against Plaintiff are still pending.

Earlier, in 1997, Plaintiff had filed a sexual harassment lawsuit involving her employment with HPD.  One of the defendants named in that lawsuit was Defendant Correa.  The lawsuit resulted in a settlement in Plaintiff's favor in November 2001, including a large cash payment.  The settlement agreement

contained various three-year obligations that expired in November 2004, approximately ten months before Defendants brought the criminal charges against Plaintiff.

On November 9, 2007, Plaintiff filed the First Amended Complaint ("FAC") in this case.  On November 10, 2007, Plaintiff filed her first Errata to the FAC.  In the FAC, Plaintiff brought claims for negligence (Counts 1-3), negligent infliction of emotional distress ("NIED") (Count 4), defamation (Count 5), conspiracy (Count 6), retaliation in violation of public policy, Hawaii Revised Statute Section 378-62 and Title VII, First and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 (Count 7), First Amendment right to association violation (Count 8), Fourth Amendment right to be free from prosecution without probable cause - tort of malicious prosecution (Count 9), and intentional infliction of emotional distress ("IIED") (Count 10).

On June 18, 2008, Defendants filed the instant motion for summary judgment, seeking judgment in their favor for all Defendants on all of Plaintiff's claims.  (Doc. # 106.)  Plaintiff filed her opposition on July 24, 2008, and Defendants filed a reply on July 31, 2008.

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

9

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.     Negligence Claims Counts 1 through 3

Plaintiff has brought a negligence claim, Count 1, against Defendants De Alwis, William Goodhue, Suzuki ,and Kamahele based on MEO's alleged failure to have an information security policy to safeguard confidential information and to communicate those policies to its staff.  Each of the individual Defendants work at the MEO.

Plaintiff brought a negligent supervision claim against HPD, and Defendants Lima, Officer Carlton Nishimura, Harada, and Axt in Count 2.  Count 3 alleged a negligent hiring and training claim against HPD, Wayne Hashiro, and the MEO.

Under Hawaii law, the elements of a cause of action for negligence are:

11

> 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; 2. A failure on the [defendant's] part to conform to the standard required: a breach of the duty; 3. A reasonably close causal connection between the conduct and the resulting injury and 4. Actual loss or damage resulting to the interests of another.

Knodle v. Waikiki Gateway Hotel, Inc., 742 P.2d 377, 385 (Haw. 1987) (citation omitted). Doe Parents No. 1 v. State Dep't of Educ., 58 P.3d 545, 579 (Haw. 2002).  A public officer, such as the director of an agency, acting within his official capacity also may be held individually liable for damages for acts committed within his employment if he commits the tort with malice or maliciously exercises his official discretion.  See Kajiya v. Dep't of Water Supply, 629 P.2d 635, 640 (Haw. Ct. App. 1981).  If the public official was acting within his individual capacity, he may be held liable for committing the tort, with or without a showing of malice.  See id.

Defendants assert that they are entitled to summary judgment with respect to Count 1 because  Defendant Kamahele told Plaintiff that she had to get Defendant De Alwis's approval before making copies of the MEO reports and Plaintiff knew that she was not allowed to print reports, and therefore, they did not breach their duty.

12

This Court disagrees and finds that Plaintiff has provided enough evidence to create a genuine issue of fact on Count 1. Indeed, Plaintiff has shown that there was no written policy regarding confidentiality of information, she was given full access to the information and allowed to make and keep handwritten notes, she arguably reasonably believed that she just was not allowed to print from a specific printer, and she immediately returned the reports when informed that she was not supposed to have them and apologized.[1] Plaintiff has also provided evidence that De Alwis, Goodhue, and Kamahele may have had the duty to implement and communicate the privacy security policies.

Plaintiff, however, has not pointed this Court to any evidence regarding Defendant Gail Suzuki's role with respect to Count 1. Accordingly, this Court DENIES Defendants De Alwis, Goodhue, and Kamahele's motion for summary judgment on Count 1. This Court GRANTS Defendant Suzuki's motion for summary judgment on Count 1.

With respect to Count 2 and Count 3, Defendants assert that the HPD Defendants did not breach any duty because they did not even know that Plaintiff was conducting research at the MEO and therefore, cannot be responsible for what

---

[1] This Court notes that Defendants did not make arguments regarding malice with respect to this specific claim. As Defendants did not move on such issue, this Court makes no determination on that issue.

Plaintiff was told about the MEO policies.  Although this Court agrees that HPD

Defendants did not have a duty with regard to MEO's policies and therefore cannot

be held liable for a failure to supervise or train with respect to MEO's privacy

policies, Plaintiff has created an issue of fact of whether HPD Defendants knew, or

should have known that she was conducting research at the MEO, and whether

they were negligent in conducting an investigation into her activities there,

including making a determination of what policies existed and whether or not she

was informed of them, requiring her to turn in her ID and badge, changing her job

duties, and bringing administrative and criminal charges against her based upon an

alleged breach of confidentiality policies.  For these reasons, Counts 2 and 3 as

against Defendants HPD, Lima, Nishimura, Harada, the  MEO, and Wayne

Hashiro survive summary judgment and their motion is DENIED.

   Defendant HPD Officer William Axt's motion for summary judgment

on Counts 1 and 2 is GRANTED as Plaintiff pointed to no evidence that could

create a genuine issue of fact that he was involved in any of the actions described

above.  Plaintiff presented only an excerpt from his deposition that he supports

Defendant Chief Correa.  This is insufficient to create a genuine issue of fact that

Axt had any involvement in the decision to investigate, supervise, train, or bring

charges against Plaintiff.

II.   <u>NIED Claim, Count 4</u>

In her FAC, Plaintiff alleged that she suffered from ANUG.  In her opposition to a previous motion to dismiss, Plaintiff explained that ANUG, also known as trench mouth, is characterized by the physical loss of teeth and is considered to be the result of a stressful situation.  Plaintiff alleges that the emotional distress she suffered was the result of Defendants' conduct and caused her to suffer from ANUG.  Plaintiff claims that she lost a number of teeth, her doctors ruled out any other physical problems, and ANUG is the best medical explanation for her loss of teeth.

Plaintiff may recover for NIED "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." <u>Doe Parents No. 1</u>, 58 P.3d at 580 (citation and internal quotation marks omitted).  To maintain a NIED claim, the Hawaii Supreme Court, thus, has held that a person must allege "that <u>someone</u> was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else," otherwise the person may maintain a negligence claim only.  <u>Id.</u> at 580-81.

Defendants argue that Plaintiff's NIED claim fails because Plaintiff did not provide an expert report opining to a medical certainty on the cause of her

predicate physical injury.  The deadline for expert disclosures and providing

reports passed on May 19, 2008.  Defendants assert that without medical evidence,

Plaintiff cannot establish causation -- e.g. that the stress she felt caused her to lose

her teeth, and the NIED claim must fail.

Plaintiff asserts that she will be able to present testimony and evidence

at trial that she had no dental problems prior to being subjected to the stressful

environment.  Plaintiff states that her dentist, Dr. Joanne Le, her medical doctor,

Dr. Ben Tamura, and her psychiatrist, Dr. Denis Mee-Lee, will testify that they

have ruled out other causes for the loss of her teeth.  Plaintiff provided letters from

two of the doctors which were written after the deadline for expert reports had

passed.  Plaintiff does not assert that she provided any expert reports for these

doctors as required by the Rule 16 Scheduling Order in this case and Federal Rule

of Civil Procedure 26.

Federal Rule of Evidence 701 states that

[i]f the witness in not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue,  and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

16

Rule 702 provides "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise," if certain conditions are met.  Fed. R. Evid. 702.  The Advisory Committee Notes to the 2000 Amendments of Rule 701 provide that the rule was amended in order

> to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. . . . By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson. . . . The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules.

Here, there can be no dispute that an opinion as to the cause of Plaintiff's teeth falling out is an opinion based on scientific knowledge.  As Plaintiff has failed to comply with the rules and provide an expert report on this medical causation issue, she will be unable to support her NIED claim at trial.  For

17

these reasons, this Court GRANTS summary judgment in favor of all Defendants

on Plaintiff's NIED claim.

III.    Defamation Claim, Count 5

        Plaintiff has brought a claim for defamation against Defendants

Correa, Kajiyama, Watari, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue,

Suzuki, Kamahele, and Van Marter.  Defendants argue that Plaintiff cannot prove

her defamation claim because she cannot show that the alleged statements were

made maliciously as they were made for the purpose of investigation.

        The Hawaii Supreme Court has established the following four

elements to sustain a claim for defamation:

> (1) a false and defamatory statement concerning another;
> (2) an unprivileged publication to a third party; (3) fault
> amounting at least to negligence on the part of the
> publisher [actual malice where the plaintiff is a public
> figure]; and (4) either actionability of the statement
> irrespective of special harm or the existence of special
> harm caused by the publication.

Gonsalves v. Nissan Motor Corp. in Haw., Ltd., 58 P.3d 1196, 1218 (Haw. 2002)

(brackets in original).  Where a public official is alleged to have made the

defamatory statement and that statement was made in his or her official capacity,

malice must be proven.  See Kajiya, 629 P.2d at 640; Medeiros v. Kondo, 522 P.2d

1269, 1271-72 (Haw. 1974) ("We feel strongly that if an official, in exercising his

authority is motivated by malice, and not by an otherwise proper purpose, then he

should not escape liability for the injuries he causes.").

> non-judicial governmental officials, when acting in the
> performance of their public duty, enjoy the protection of
> what has been termed a qualified or conditional privilege.
> This privilege effectively shields the official from
> liability, and not from the imposition of the suit itself, to
> the extent that the privilege is not abused and thereby
> lost. . . . in order for an action to lie against an official
> acting under a claim of privilege, it is essential that the
> injured party allege and prove, to the requisite degree,
> that the official had been motivated by malice and not by
> an otherwise proper purpose.

Towse v. State, 647 P.2d 696, 702 (Haw. 1982) (citations omitted).  "[T]he injured

party [must] demonstrate by clear and convincing proof that those officials were

stirred by malice and not by an otherwise proper purpose."  Id.

In Towse, the court held that in order to establish malice when a

qualified privilege defense is at issue in a defamation claim, the plaintiff must

show that the defendant failed "to act as a reasonable man under the circumstances,

with due regard to the strength of his belief, the grounds that he has to support it,

and the importance of conveying the information."  Id. at 703; see Awakuni v.

Awana, 165 P.3d 1027, 1041-42 (Haw. 2007) ("the language of the test espoused

in Towse . . . clearly was intended for purposes of analyzing the qualified privilege

in a claim for defamation[.]").

19

"Unless the issue is removed from the case by uncontested affidavits and depositions, the existence or absence of malice is a question for the jury." Towse, 47 P.2d at 703.  The issue of malice is appropriate for determination by the court if the evidence surrounding a claim for malice is uncontroverted.  Id. (finding that summary judgment in favor of the public official had been properly granted since the record did not reflect that defendants had acted maliciously or for an improper purpose); see also Runnels v. Okamoto, 525 P.2d 1125, 1129 (1974).

The facts set forth above are sufficient to create a genuine issue of fact as to whether the following Defendants failed to act reasonably, with due regard for the grounds to support their statements of unauthorized printing and the importance of conveying the information: Correa, Kajiyama, Watari, Lima, Nishimura, Harada, De Alwis, Goodhue, and Kamahele.  Accordingly, summary judgment with respect to those defendants is DENIED.  Summary Judgment is DENIED with respect to those defendants because Plaintiff has provided evidence that they made statements accusing her of unauthorized printing and/or were involved in the decision to bring administrative and criminal charges.

Plaintiff has provided no evidence that possible defamatory statements were made by the following Defendants, or that they were involved in the decision to bring charges against Plaintiff, or that they had malice: Defendants Van Marter,

20

Axt, and Suzuki.  Plaintiff states that discovery is ongoing, but does not explain

more.  Accordingly, summary judgment on Plaintiff's defamation claim is

GRANTED in favor of Defendants Van Marter, Axt and Suzuki.

IV.   Conspiracy Claim, Count 6

Plaintiff has brought her conspiracy claim against all Defendants

except Defendant Wayne Hashiro.  In the FAC, Plaintiff alleged as follows:

Defendants acted in concert to violate Plaintiff's civil rights by:  fabricating false

statements about her doing research at the MEO without proper permission;

making up policies about information that were never written or told to Plaintiff,

and by making up instructions that were allegedly given to Plaintiff though they

were actually never expressed to Plaintiff; cooperating with Defendant Chris Van

Marter to adjust their accusations against Plaintiff in a manner that would fit into

criminal charges; Defendants' single plan was to harm Plaintiff by fabricating the

false policies and evidence to convict Plaintiff of criminal and/or administrative

violations; Defendants shared the objective of harming Plaintiff, MEO Defendants

were motivated to harm Plaintiff because of her friendship with Susan Siu and

HPD Defendants were motivated by retaliation for her 1997 lawsuit against them;

MEO Defendants committed overt acts by fabricating information security policies

and fabricating testimony that she was informed of the policies; HPD Defendants

committed overt acts by overlooking and distorting her past history and past

permission to conduct research about suicides at the MEO, and by pursuing an

investigation that was not motivated by probable cause and was instead motivated

by malice, and by assigning Plaintiff to the Records Department of HPD despite

the fact that they were instigating a criminal and administrative case against her for

violating information security policy of records; Defendant Van Marter committed

overt acts by assisting HPD and MEO Defendants in coordinating their testimony

during the investigative period so that the fabricated testimony conformed to

criminal statutes; and Defendant Tsukayama conducted a pretextual evaluation in

response to Plaintiff's EEO complaint according to an unwritten policy of making

EEO complaints conclude in favor of the City and County of Honolulu.  (FAC at

¶¶ 243-253.)

       This Court found in a previous order that these allegations were

sufficient to survive Defendants' motion to dismiss as they alleged that these

Defendants conspired to bring false charges against her and fabricate evidence.

(See Order Granting in Part and Denying in Part City Defendants' Mot. To

Dismiss.)  Defendants now seek summary judgment on this claim, arguing that

Plaintiff has not provided evidence of conspiracy other than her own speculation

and feelings.

As set forth in a previous order in this case, "'[t]he accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'" Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n.28 (Haw. 1999) (quoting Duplex Printing Press Co. v. Deering, 254 U.S. 443, 466 (1921)).  "A conspiracy is constituted by an agreement . . . No formal agreement between the parties is essential to the formation of the conspiracy,  for the agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose."  Marino v. United States, 91 F.2d 691, 694 (9th Cir. 1937) (citation and quotation marks omitted).

Plaintiff has not presented sufficient evidence to create a genuine issue of fact as to whether a conspiracy among the Defendants existed.  Although Correa may have had a motive to bring allegedly unfounded charges against Plaintiff, Plaintiff provided no reason for any other Defendant to conspire against her.  In addition, Plaintiff has not explained how or when the Defendants who work at MEO conspired with the HPD defendants or that they shared in an objective to bring alleged unfounded charges.

23

Furthermore, the HPD Defendants involved in the decision or investigation into bringing criminal charges were those persons in Plaintiff's chain of command.  Thus, there was a legitimate reason for them to discuss the investigation.  Plaintiff has not provided any evidence of a meeting of the minds or a general understanding between all of the Defendants that they would bring unfounded criminal charges against Plaintiff.  The only "evidence" of conspiracy that Plaintiff has are her feelings and speculation that there is no other reason for this to have happened to her.  Indeed, Plaintiff testified that she was "not really sure" what supported her conspiracy claim.  Feelings and conjecture are insufficient to create a genuine issue of fact on a summary judgment motion.  Accordingly, Defendants' motion is GRANTED with respect to Plaintiff's conspiracy claim.

## V.     Retaliation Claims, Count 7

Plaintiff has brought a retaliation claim under Title VII and Hawaii Revised Statute Section 378-62 claim against HPD, and HPD Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt.  This Court previously dismissed the Title VII claim against the individual defendants, but allowed Plaintiff's 378-62 claim to go forward against the individual defendants.

In order to establish her Title VII retaliation claim against HPD, Plaintiff must produce evidence that gives rise to an inference of unlawful retaliation, either through direct evidence of retaliatory intent or through the burden shifting framework set forth in McDonnell Douglas Corp. v. Green. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in original). Plaintiff has not asserted that he has any direct evidence of retaliatory intent. Accordingly, Plaintiff must proceed under the McDonnell Douglas framework.

Under that framework, the plaintiff must first establish a prima facie case of retaliation. Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000); Ray, 217 F.3d at 1240. If the plaintiff meets this burden,

> the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory, [or nonretaliatory] reason for the challenged action. If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Chuang, 225 F.3d at 1123-24 (internal quotation marks and citation omitted).

25

For a retaliation claim, the plaintiff's prima facie case consists of establishing that: "(1) [s]he engaged in a protected activity; (2) h[er] employer subjected h[er] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." <u>Ray</u>, 217 F.3d at 1240. "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).

Defendants argue that Plaintiff cannot prove that she suffered an adverse employment action or that there was a causal link because none of her supervisors at HPD instructed her to conduct research at the MEO.

The Ninth Circuit construes adverse employment action broadly and has found that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." <u>Ray</u>, 217 F.3d at 1240; <u>Fonseca v. Sysco Food Servs. of Ariz., Inc.</u>, 374 F.3d 840, 847 (9th Cir. 2004); <u>Lyons v. England</u>, 307 F.3d 1092, 1118 (9th Cir. 2002) ("Title VII does not limit its reach only to acts that take the form of cognizable employment actions such as discharge, transfer, or demotion.") (quotation marks and citation omitted).  However, not every employment decision amounts to an adverse employment action.  <u>Ray</u>, 217 F.3d at

26

1240.  In a retaliation case, the Ninth Circuit recognized that an "action is

cognizable as an adverse employment action if it is reasonably likely to deter

employees from engaging in protected activity."  Ray, 217 F.3d at 1243.

In Ray, the court found that the elimination of the Employee

Involvement program, and the flexible start-time policy, the institution of

lockdown procedures, reduction of workload, and reduction of pay

disproportionately to the reductions faced by other employees, qualified as adverse

employment actions.  Id. at 1243-44.  The court reasoned that since the actions

"decreased Ray's pay, decreased the amount of time that he had to complete the

same amount of work, and decreased his ability to influence workplace policy, . .

.[they] were reasonably likely to deter Ray or other employees from complaining

about discrimination in the workplace."  Id. at 1244.

In addition, the Ninth Circuit has specifically found that actions such

as transferring job duties, issuing undeserved performance ratings, or actions that

negatively affect the employee's compensation are adverse employment actions.

Fonseca, 374 F.3d at 847; Yartzoff v. Thomas, 809 F.2d 13741, 1376 (9th Cir.

1987).  The Ninth Circuit has also found that being excluded from meetings,

seminars, and positions that would have made the employee eligible for salary

increases, and being given a more burdensome work schedule, if proven, were

sufficient to establish adverse employment actions.  <u>Strother v. S. Cal. Permanente Medical Group</u>, 79 F.3d 859, 869 (9th Cir. 1996).

This Court agrees with Defendants that to the extent Plaintiff is claiming that Defendant Lima retaliated against her by instructing her to keep mileage logs on her City-issued car, keep overtime logs and make detailed reports, these actions do not qualify as adverse employment actions because Plaintiff has not shown that such conduct affected her pay or status or otherwise impacted the terms and conditions of her employment.  Moreover, Plaintiff has not produced any evidence that Lima was aware of the sexual harassment lawsuit against HPD and Correa that she had settled three years earlier.  Similarly, Plaintiff has not provided any evidence that Defendants Watarai, Nishimura, Harada, and Axt approved of or took any adverse employment actions against her or were aware of her prior lawsuit.

Plaintiff has, however, provided evidence that Defendants HPD, Correa, and Kajiyama were aware of her prior sexual harassment lawsuit against HPD and Correa, and they made the decision and/or recommended the decision to bring criminal charges against Plaintiff and put her on a limited duty status.  There can be no question that instituting criminal and administrative charges against an employee and placing them on a limited duty status are adverse employment

28

actions.  Accordingly, Defendant HPD's motion for summary judgment on Plaintiff's Title VII claim is DENIED.

Likewise, for the same reasons, Defendant HPD's motion for summary judgment on Plaintiff's claim under Hawaii Revised Statute section 378-62 is DENIED.[2]  In addition, because Defendants Correa and Kajiyama were aware of the prior lawsuit for sexual harassment and made the decision and/or recommended that possibly unfounded charges be brought against Plaintiff and that she be placed on limited duty, their motion for summary judgment on Hawaii Revised Statute 378-62 is also DENIED.

Because Plaintiff provided no evidence that Defendants Lima Watarai, Nishimura, Harada, and Axt approved of or took any adverse employment actions

---

[2] Haw. Rev. Stat. § 378-62 provides:
> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States. . . .

29

against her or were aware of her prior lawsuit, their motion for summary judgment

on this claim is GRANTED.

VI.    First Amendment Right to Association Claim, Count 8

In Count 8 Plaintiff alleges that MEO Defendants De Alwis,

Goodhue, Suzuki, and Kamahele violated her First Amendment right to free

association.  In her complaint, Plaintiff alleged that she is a friend of Susan Siu,

who is an investigator at MEO, and who has been put on administrative leave with

various accusations against her.  Plaintiff alleges that De Alwis negatively

perceived Plaintiff's association with Ms. Siu, and thus falsely accused and

retaliated against Plaintiff based on that association as retaliation directed at Siu.

When a public employee alleges retaliation in violation of the First

Amendment, the employee must prove (1) that the conduct or expression at issue is

constitutionally protected, and (2) that the conduct or expression was a substantial

or motivating factor in the retaliatory adverse action.  Brewster v. Bd of Educ., 149

F.3d 971, 978 (9th Cir. 1998).  "The burden then shifts to the employer to

demonstrate that it would have acted the same way even in the absence of the

protected conduct."  Strahan v. Kirkland, 287 F.3d 821, 825 (9th Cir. 2002)

(citations omitted).  The plaintiff is then obligated to tender additional evidence to

establish that the employer's rationale was pretextual. Id.

30

In <u>Starhan</u>, the Ninth Circuit upheld the district court's finding that the plaintiff failed to produce evidence to support an inference that retaliation for his mere association with a motorcycle club was a substantial factor motivating the disciplinary action.  <u>Id.</u>  The Ninth Circuit noted that the plaintiff had only produced evidence that the defendant knew of the plaintiff's association with the motorcycle club and found that "that alone is not enough to defeat a motion for summary judgment."  <u>Id.</u>  The Ninth Circuit instructed that the plaintiff would have to produce additional evidence.  <u>Id.</u>

Similarly, here, Plaintiff has only provided limited evidence that De Alwis was aware that she knew Siu.  Plaintiff has provided no evidence other than her "gut feelings" that De Alwis reported her conduct of printing reports to HPD based upon Plaintiff being friendly with Susan Siu.  Accordingly, Defendants motion for summary judgment on this claim is GRANTED.

VII.   <u>Section 1983 Fourth Amendment Violation and Malicious Prosecution
       Claims, Count 9</u>

Count 9 of the Complaint reads "§1983 Violation of 4th Amendment Right to Be Free Prosecution without Probable Cause-Tort of Malicious Prosecution."  Plaintiff brought these claims against HPD, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele,

31

and Van Marter.  Essentially, Plaintiff asserts that Defendants violated her Fourth

Amendment right to be free from prosecution without probable cause, and seeks a

remedy in tort for the same conduct.  Defendants argue that Plaintiff's claim here is

not proper under § 1983 because State tort law provides adequate remedy for

Plaintiff's claim.  (Mot. at 22.)

Generally, a malicious prosecution claim cannot be brought under

§ 1983 if an adequate remedy exists under State law.  Albright v. Oliver, 510 U.S.

266, 284 (1994); see also Johnson v. Barker, 799 F.2d 1396, 1400 (9th Cir. 1986);

Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) ("malicious prosecution

generally does not constitute a deprivation of liberty without due process of law

and is not a federal constitutional tort if process is available within the state judicial

systems to remedy such wrongs"); accord Cline v. Brusett, 661 F.2d 108, 112 (9th

Cir. 1981).

However, an exception to this rule is well established.  A malicious

prosecution claim may be brought under § 1983 when it is "conducted with the

intent to deprive a person of equal protection of the laws or is otherwise intended

to subject a person to a denial of constitutional rights."  Johnson, 799 F.2d at 1400;

see Bretz, 773 F.2d at 1031 (holding that malicious prosecution claims under §

1983 are proper only where the plaintiff alleges the malicious prosecution was

32

conducted with the intent to deprive a person of a constitutional right or equal

protection of the laws).

Cline demonstrates when the aforementioned exception is met.  In

Cline, the plaintiff filed a complaint under 42 U.S.C. § 1983, alleging the

defendants conspired to convict him on "groundless charges," and deny him his

right to a fair trial by bribing witnesses and presenting false evidence and perjured

testimony to the jury.  Cline, 661 F.2d at 110.  The plaintiff was eventually

convicted with the use of the false evidence and perjured testimony, and sent to

prison.  The court found that he was deprived of his liberty without due process,

and thus that the malicious prosecution was conducted with the intent to deny the

plaintiff his constitutional right to liberty.

Here, Plaintiff contends that her claim fits the aforementioned

exception because: (a) she was "criminally prosecuted (involving her

constitutionally protected liberty interest) and continues to be administratively

investigated by the Defendants"; (b) her situation is distinguishable from Flowers

v. Seki, 45 F. Supp. 2d 794, 802-03 (D. Haw. 1998); and (c) Plaintiff had to report

to the police station, she was arrested, and had to post bail.  (Pl.'s Mem. in Opp. to

the Mot. at 13-14.)

In <u>Flowers</u>, the plaintiff's claims of bad faith investigation and revocation of his medical license was not actionable under § 1983 because he had not alleged the deprivation of a constitutional right.[3] Plaintiff's case here is distinguishable from <u>Flowers</u> because she alleges malicious prosecution in order to deprive her of her fourth amendment rights.  Thus, Plaintiff's malicious prosecution claim may be brought under § 1983, in addition to her State law tort claim.

Defendants did not move to dismiss this § 1983 claim on any other basis, such as qualified immunity.  However, Plaintiff again has failed to point to any evidence explaining Defendants Axt or Suzuki's role with respect to a malicious prosecution claim.  Moreover, the evidence against Van Marter is insufficient to raise a genuine issue of fact, as discussed at the hearing. Accordingly, Defendants Van Marter, Axt, and Suzuki's motion for summary judgment on Count 9 is GRANTED.  The remaining Defendants' motion on this issue is DENIED.

---

[3]  "[M]alicious prosecution itself does not constitute a due process violation unless the plaintiff demonstrates that the malicious prosecution was done for the purpose of denying the plaintiff equal protection of the laws, or depriving the plaintiff of another constitutional right."  <u>Flowers</u>, 45 F. Supp. 2d at 802 (D. Haw. 1998).

A.    Tort of Malicious Prosecution

Count 9 also alleges a cause of action under State law for malicious prosecution.  Under Hawai'i State law a valid malicious prosecution claim requires a plaintiff establish three elements: (1) a prior proceeding terminated in the plaintiff's favor; (2) the prior proceeding was initiated without probable cause; and (3) the prior proceeding was initiated with malice.  Reed v. City and County of Honolulu, 873 P.2d 98, 109 (Haw. 1994).

With respect to the first element, termination of the prosecution must be "in such a manner that it cannot be revived."  Wong v. Cayetano, 143 P.3d 1, 18 (Haw. 2006); but cf. Wong v. Panis, 772 P.2d 695, 699 (Haw. App. 1989), rev'd on other grounds, (holding that the requirement is met when there has been an adjudication in the plaintiff's favor on the merits).

Second, probable cause requires "facts sufficient to induce belief in the guilt of the plaintiff . . . known by defendant before he commenced the prosecution."  Phillip v. Waller, 5 Haw. 609 (1886); see Reed, 873 P.2d at 109. Plaintiffs have the burden of proving the third element, malice, by clear and convincing evidence.  Cayetano, 143 P.3d at 18.  However, malice must usually be proven by inferences from other evidence.  Id.; see Gaspar v. Nahale, 14 Haw. 574

35

(1903) (holding that malice may be inferred by the jury from want of probable cause).

Defendants argue that Plaintiff's malicious prosecution claim fails as a matter of law because Plaintiff cannot prove any of the three elements of malicious prosecution.  Specifically, Defendants contend that: (a) the prior proceeding was not terminated in the plaintiff's favor, since its result was a hung jury, not acquittal; and (b) Plaintiff cannot present evidence that her prosecution was initiated with malice.

Plaintiff contends the prior criminal proceeding against her was terminated in her favor because the previous criminal trial court entered an order dismissing charges with prejudice.  While not clear, it appears Plaintiff considers the trial court's action as an adjudication on the merits, as Panis requires, because "[t]he court did this over the objections of the prosecution."  (Pl.'s Mem. in Opp. to the Mot. at 14.)  Next, Plaintiff argues that Defendant Van Marter's use of alleged fabricated evidence supplied by the other Defendants proves the Defendants lacked probable cause because they had to rely upon false evidence to indict Plaintiff.  (Id. at 15.)  Finally, Plaintiff argues malice may be inferred from Defendant Goodhue's statement that "he is willing to violate ethical rules . . . for the common good." (Id.)

36

As to the first element, the Hawai'i Supreme Court's most recent definition of terminating a prior proceeding in the plaintiff's favor is satisfied here because Plaintiff's prior proceeding cannot be revived, since the judge dismissed the charges against Plaintiff with prejudice.  Cayetano, 143 P.3d at 18.  Moreover, a majority of the jury supported an acquittal.  Therefore, Plaintiff satisfies the first element.

Plaintiff alleges Van Marter relied upon fabricated evidence supplied by other Defendants to initiate the prior criminal proceeding against her.  If true, as in Cline, this is persuasive evidence that Defendants lacked probable cause to initiate the prior criminal proceeding against Plaintiff.  Since, as noted above, malice may be inferred from a lack of probable cause, the element of malice would also be satisfied.  This Court notes that Defendants did not raise a qualified privilege defense.  Again, however, Plaintiff did not provide evidence of Axt and Suzuki's role in her prosecution, and her evidence against Van Marter is insufficient to create a genuine issue of fact.  Accordingly, Defendants Van Marter, Axt and Suzuki's motion for summary judgment on Count 9 is GRANTED.  The remaining Defendants' motion on this issue is DENIED.

VII.   IIED

Plaintiff has brought an IIED claim against all Defendants. Defendants assert that Plaintiff cannot show their actions were outrageous.

In order to establish an IIED claim, a plaintiff must show "'(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'" Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v. Univ. of Haw., 73 P.3d 46, 60-61 (Haw. 2003)).  The Hawaii Supreme Court defines the term "outrageous" as conduct "without just cause or excuse and beyond all bounds of decency."  Enoka, 128 P.3d at 872.  An IIED claim cannot be sustained by "threats, annoyances, petty oppressions, or other trivialities."  See Bragalone v. Kona Coast Resort Joint Venture, 866 F. Supp. 1285, 1294 (D. Haw. 1994).  "[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."  Restatement (Second) of Torts § 46 cmt. d; see Hac, 73 P.3d at 60 (in Hawaii, a plaintiff must establish that the defendant's alleged conduct was "outrageous," as defined by the Restatement (Second) of Torts). Hawaii's definition of outrageous conduct creates a very high standard of conduct in the employment context.  See Ross v. Stouffer Hotel Company, 879 P.2d 1037,

38

1048 (Haw. 1994); Ingle v. Liberty House, Inc., Civil No. 94-0787(3), 1995 WL 757746, at *4 (Haw. Cir. Ct. Oct. 12, 1995) (noting, "In Ross, the Hawaii Supreme Court recently has set an extremely high, standard for such a claim in the employment context[.]").  Under Hawai`i law, termination alone is not sufficient to support an IIED claim; rather, what is necessary is a showing of something outrageous about the manner or process by which the termination was accomplished.  As stated in Ingle, "[a]lthough intentional infliction claims frequently are asserted in connection with employee dismissals, recovery is rare. Imposition of liability on this tort theory is likely only in the unusual case when an employer deliberately taunts an employee, or when an employer handles an employee with outrageous insensitivity." Ingle, 1995 WL 757746, at *4 (quotation omitted; emphasis added); Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 852 (9th Cir. 1990) ("[d]ischarge, without evidence of more, does not create a case for emotional distress.").  This remains true even where an employee alleges that his termination was the result of unlawful discrimination or retaliation.  See Ross, 879 P.2d at 1048 (termination based on alleged marital status discrimination was insufficient to sustain IIED claim); Bragalone, 866 F. Supp. at 1294 ("firing an employee for what are seen as unfair reasons" was insufficient to sustain IIED claim) (citations omitted); see also Shoppe v. Gucci Am., Inc., 14

39

P.3d 1049, 1068 (Haw. 2000) (employee's complaints of termination based on age discrimination and of a "vicious" verbal attack, being yelled at, criticized for poor job performance, being singled out and told to wear more makeup because the employer was looking for a much younger look, and being chastised in front of other employees, was insufficient to create a genuine issue of fact of outrageousness).

This Court agrees with Defendants that alleged actions of being required to make detailed reports, keep a mileage log and overtime log are not sufficient to show outrageous conduct.  Likewise, reporting of alleged unauthorized printing by MEO Defendants to HPD does not rise to the level of outrageousness necessary to sustain an IIED claim.

Certainly, however, being subjected to administrative and criminal charges that were allegedly unfounded and possibly in retaliation for engaging in protected activity could rise to such a level and that issue would be for the jury to determine.  Accordingly, as Plaintiff has not shown that Defendants De Alwis, Goodhue, Suzuki, Kamahele, Tsukayama, Hashiro, Van Marter, Axt, Harada, the MEO, and/or Lima were involved in deciding to bring such charges or had knowledge that any evidence was fabricated, her IIED claim against them fails and summary judgment is GRANTED in their favor on the IIED claim.

However, Plaintiff has alleged facts sufficient to create a genuine issue of fact on her IIED claim with respect to Defendants HPD, Correa, Kajiyama, Watarai, and Nishimura, since she produced evidence that they may have been involved in the decision to bring possibly unfounded criminal charges against her. Therefore, Defendants HPD, Correa, Kajiyama, Watarai, Nishimura and Van Marter's motion with respect to the IIED claim is DENIED.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion as set forth above.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 18, 2008.



_____
David Alan Ezra
United States District Judge


<u>Black v. Correa</u>, CV No. 07-00299 DAE/LEK; ORDER GRANTING IN PART AND DENYING IN PART CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT