IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHARON BLACK, ) | CIVIL NO. 07-00299 DAE-LEK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BOISSE CORREA; CITY AND ) | |
| COUNTY OF HONOLULU, GLEN ) | |
| KAJIYAMA; STEPHEN WATARAI;) | |
| KEVIN LIMA; CARLTON ) | |
| NISHIMURA; OWEN HARADA; ) | |
| WILLIAM AXT; KANTHI DE ) | |
| ALWIS; WILLIAM W. GOODHUE; ) | |
| GAIL SUZUKI; ALICIA ) | |
| KAMAHELE; DENISE ) | |
| TSUKAYAMA; CHRIS VAN ) | |
| MARTER; WAYNE HASHIRO; ) | |
| DOES 1-20, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

ORDER GRANTING IN PART AND DENYING IN PART
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

On June 5, 2009, the Court heard Defendants' Motion.  Mark S.

Beatty, Esq., appeared at the hearing on behalf of Plaintiff; John Moran, Deputy

Corporation Counsel, appeared at the hearing on behalf of Defendants.  After

reviewing the motion and the supporting and opposing memoranda, the Court

GRANTS IN PART AND DENIES IN PART Defendants' Motion.  (Doc. # 193.)

Defendants' motion is granted with respect to Plaintiff's defamation claims, Hawaii Revised Statute section 378-62 claim and with respect to Plaintiff's malicious prosecution claims against Defendants Kamahele, Goodhue, De Alwis, Watarai, Lima, Nishimura, and Harada.

Defendants' motion is denied with respect to Plaintiff's malicious prosecution claim against Defendants Correa and Kajiyama and with respect to Plaintiff's retaliation claim under Title VII against HPD.

## BACKGROUND

I.   Factual Background

According to previous orders by this Court in this case, the general background facts are as follows:

In 1992, Plaintiff began working for the Honolulu Police Department ("HPD") as an outreach worker to assist the department in dealing with homeless and mentally ill persons who came into contact with the police.  Plaintiff's role included, among other duties, working closely with area hospitals to get officers released from the hospital at a faster rate after taking individuals to the hospital for treatment, and acting as the patient's advocate.

In 1994, Plaintiff began researching suicide cases at the Honolulu Medical Examiner's Office ("MEO").  Plaintiff claims then Police Chief Nakamura

had given her permission to conduct such research.  Defendant HPD Officer Kevin Lima became Plaintiff's supervising coordinator in 2004.

In July 2005, approximately one-and-one-half years since she last conducted research at the MEO, Plaintiff returned to the MEO to continue her research.  Defendant Chief Medical Examiner at the MEO Dr. Kanthi De Alwis gave Plaintiff permission to continue her research into suicide cases.  Defendant Alicia Kamahele, secretary at the MEO, showed Plaintiff a new room that she could use and a different computer system.  Plaintiff was told how to get access to the information she needed and was allowed to remain in the room to conduct her research.  Defendant Kamahele ran a report for Plaintiff regarding suicides, which included the names of the decedent.  Kamahele gave Plaintiff instructions regarding printing.  Plaintiff alleges that she was only told that she should not print to a specific printer, but that she was not made aware of a prohibition on printing the reports in general.  Kamahele claims she told Plaintiff that she could not print reports.

Plaintiff printed out some reports at the MEO.  Defendant Kamahele asked Plaintiff to return the reports, which she did the following day.  When questioned about her printing, Plaintiff explained that she had understood only that she was not to use one particular workstation for copying or printing records and

3

that because she did research from two different workstations, she thought she was allowed to use the other workstation.  Plaintiff apologized.

The MEO reported to Defendant HPD Deputy Chief Glen Kajiyama that Plaintiff had printed reports without authorization.  HPD Defendants assert that they had no knowledge that Plaintiff was conducting suicide research at the MEO.  HPD Defendants assert that Plaintiff's then supervisor, Defendant Lima, had only directed her to prepare a report on the amount of time officers were made to wait at hospitals before persons they had brought there would be admitted.  HPD Defendants state that they never ordered Plaintiff to conduct suicide research. Plaintiff claims that she had authority to do research in general and that her job duties in that respect were never changed.

Approximately three weeks after Plaintiff returned the printed reports to the MEO, on August 25, 2005, Defendant Boisse Correa, Chief of Police, ordered Plaintiff to immediately surrender her HPD issued equipment, to not exercise any authority on behalf of the HPD, and that due to an ongoing criminal investigation against her, she was not allowed into restricted HPD areas.  Plaintiff was placed on leave pending the investigation.  The restriction on access to HPD was lifted on August 29, 2005.  Plaintiff was also allowed to return to work in a

limited duty capacity on that date pending the investigation.  At some point, Plaintiff complained to Defendant Equal Opportunity Officer Denise Tsukayama.

HPD Lt. Carvalho of internal affairs was put in charge of conducting an investigation into Plaintiff's printing of reports at the MEO.  There is a question as to whether Defendant Chief Correa made the final decision to bring both administrative charges against Plaintiff for violation of internal policies and criminal charges against Plaintiff.  Documents note that Correa made the final decision, but the documents were signed by Kajiyama on behalf of Correa, and Correa's counsel now argues that Correa recused himself from the decision making process.  Defendants Kajiyama, HPD Officer Steven Watarai, and Captain Carlton Nishimura were consulted either as part of Plaintiff's chain of command, or regarding the final decision to bring the charges.

The following criminal charges were brought against Plaintiff in the Circuit Court of the First Circuit of the State of Hawaii:  unauthorized computer access in the second degree for having printed information from the MEO computer (Count I), theft in the fourth degree for unauthorized control over the documents she printed (Count II), and tampering with a government record for an alleged refusal to return some of the original documents (Count III).  A jury trial took place and culminated in a hung jury in January 2007 (8 to 4 in favor of not

guilty on Counts I and II, and 7 to 5 in favor of not guilty on Count III).

Thereafter, on April 20, 2007, the State court granted Plaintiff's motion to dismiss

the indictment with prejudice.  The criminal case was prosecuted by Defendant

Chris Van Marter.  The administrative charges against Plaintiff are apparently still

pending.

Earlier, in 1997, Plaintiff had filed a sexual harassment lawsuit

involving her employment with HPD.  One of the defendants named in that lawsuit

was Defendant Correa.  The lawsuit resulted in a settlement in Plaintiff's favor in

November 2001, which included a large cash payment.  The settlement agreement

contained various three-year obligations that expired in November 2004,

approximately ten months before Defendants brought the criminal charges against

Plaintiff.

II.     Procedural History

On November 9, 2007, Plaintiff filed the First Amended Complaint

("FAC") in this case.  On November 10, 2007, Plaintiff filed her first Errata to the

FAC.  In the FAC, Plaintiff brought claims for negligence (Counts 1-3), negligent

infliction of emotional distress ("NIED") (Count 4), defamation (Count 5),

conspiracy (Count 6), retaliation in violation of public policy, Hawaii Revised

Statute Section 378-62 and Title VII, First and Fourteenth Amendment violations

6

pursuant to 42 U.S.C. § 1983 (Count 7), First Amendment right to association

violation (Count 8), Fourth Amendment right to be free from prosecution without

probable cause - tort of malicious prosecution (Count 9), and intentional infliction

of emotional distress ("IIED") (Count 10).

Defendants filed a motion to dismiss, which was granted in part and

denied in part on January 22, 2008.  (Doc. # 88.)  This Court dismissed Plaintiff's

42 U.S.C. §§ 1981, 1985 and 1986 claims that were contained within Count 7.  All

other claims upon which Defendants moved remained intact.  The trial date was

continued upon Defendants' motion and an amended Rule 16 scheduling order was

issued.

On June 18, 2008, Defendants filed a motion for summary judgment,

seeking judgment in their favor for all Defendants on all of Plaintiff's claims.

(Doc. # 106.)  On August 18, 2008, this Court granted all of the Defendants'

motion with respect to Plaintiffs' NIED claim, conspiracy claim, and First

Amendment claim ("Summary Judgment Order").  (Doc. # 128.)  This Court

granted summary judgment in favor of Defendants William Axt, Gail Suzuki, and

Van Marter as to all claims.  This Court granted summary judgment in favor of

Defendants Lima, Watarai, Nishimura, and Harada with respect to Plaintiff's claim

under Hawaii Revised Statute section 378-62.  This Court granted Defendants

De Alwis, Goodhue, Kamahele, Tsukayama, Hashiro, Harada, the MEO, and Lima's motion for summary judgment on the IIED claim.  The following claims remained:  (1) Defamation against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, De Alwis, Goodhue, and Kamahele; (2) Retaliation under Title VII against HPD based upon the adverse actions of instituting criminal and administrative charges against Plaintiff and placing her on a limited duty status; (3) Hawaii Revised Statute section 378-62 claim against HPD, Correa, and Kajiyama; (4) Fourth Amendment violation pursuant to 42 U.S.C. section 1983 against HPD, Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, De Alwis, Goodhue, and Kamahele; (5) Malicious prosecution against Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, De Alwis, Goodhue, and Kamahele; and (6) IIED against Correa, Kajiyama, Watarai, and Nishimura based upon involvement in the decision to bring possibly unfounded criminal charges against Plaintiff.

Defendants made another motion to continue trial, which at that time was set for November 18, 2008.  The motion was denied.  While the parties were preparing for trial, the remaining Defendants filed another motion to dismiss on October 31, 2008.  (Doc. # 155.)  The trial date and all related deadlines were vacated, and a trial re-setting conference was set for November 17, 2008.  An amended Rule 16 scheduling order was issued on November 18, 2008, continuing

8

the dispositive motions deadline to April 8, 2009.  (Doc. # 179.)  Per counsel's

request, the hearing on the motion to dismiss was continued.  On February 2, 2009,

this Court granted in part and denied in part without prejudice Defendants' motion

to dismiss.  (Doc. # 185.)  This Court granted Defendants' motion with respect to

Plaintiff's negligence-based claims, constitutional claims brought pursuant to 42

U.S.C. § 1983, and Plaintiff's IIED claim.  This Court denied Defendants' motion

without prejudice with respect to Plaintiff's defamation claim, malicious

prosecution claim and Hawaii Revised Statute section 378-62 claim against Correa

and Kajiyama, and Plaintiff's Title VII claim against HPD.

          On April 3, 2009, Defendants filed yet another motion for summary

judgment.  (Doc. # 193.)  Defendants seek summary judgment on all of Plaintiff's

remaining claims.  Pursuant to this Court's last order, the remaining claims are a

defamation claim, malicious prosecution and Hawaii Revised Statute section 378-

62 claim against Correa and Kajiyama, and a Title VII claim against HPD.  Despite

the fact that this Court granted summary judgment in favor of Defendants on all of

Plaintiff's constitutional claims brought pursuant to 42 U.S.C. § 1983 and

Plaintiff's IIED claim, Defendants again move for summary judgment on

Plaintiff's 42 U.S.C. § 1983 and IIED claims.  As these claims have already been

dismissed by this Court's previous order, this Court will not address them herein.

9

(See Doc. # 185.)  Plaintiff filed an opposition on May 14, 2009.  (Doc. # 203.)

Defendant filed a reply on May 15, 2009.  (Doc. # 204.)

STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to

dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett,

477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial -- usually,

but not always, the defendant -- has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

10

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

 Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  Addisu, 198 F.3d at 1134.

 When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party. <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage. <u>Id.</u>  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

<u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

## DISCUSSION

I.    <u>Defamation Claims</u>

        In Defendants' first summary judgment motion, they argued Plaintiff

could not show that the alleged defamatory statements were made maliciously as

they were made for the purpose of investigation.  Applying Hawaii law regarding a

qualified privilege for public officials, this Court found that there was a "genuine

issue of fact as to whether the . . . Defendants failed to act reasonably, with due

regard for the grounds to support their statements of unauthorized printing and the

importance of conveying the information." (<u>See</u> First Summary Judgment Order at

20.)  At that time, Plaintiff had provided evidence that those Defendants made

statements accusing her of unauthorized printing and/or were involved in the

12

decision to bring administrative and criminal charges.  In her FAC, Plaintiff

alleged that Defendant Kamahele made defamatory statements about her

observance of the information security policies at the MEO and concerning her

ability to responsibly do her job.

        After Plaintiff amended her Complaint, Defendants filed a motion to

dismiss asserting that Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, De

Alwis, Goodhue, and Kamahele were entitled to qualified immunity with respect to

Plaintiff's defamation claim because statements made by these persons were done

in the course of investigating Plaintiff's "alleged criminal violation of her use of

confidential documents."  This Court denied Defendants' motion because they

failed to make their argument clear, and they had not provided any evidence or

argument that persuaded this Court that the First Summary Judgment Order was in

error.  This Court denied the motion without prejudice, and stated that although the

allegations in Plaintiff's complaint were sufficient to withstand a motion to

dismiss, if Defendants brought a motion for summary judgment, Plaintiff would

have to provide evidence of specific defamatory statements that were made and by

whom.

        Plaintiff now alleges that the following statements were made: (1)

Defendant Kamahele made false defamatory statements regarding the printing

13

instructions given to Plaintiff; (2) Defendants Kamahele, Goodhue, and De Alwis made false defamatory statements regarding her observance of the "security policy" at the MEO not allowing the printing of medical examiner reports; (3) Defendants Kamahele, Goodhue, and De Alwis committed defamation per se by claiming Plaintiff violated the confidentiality of suicide victims; (3) Defendants Kamahele, Goodhue, De Alwis knew or should have known that the statements were false because Plaintiff was never told about the no-printing policy, she was allowed to handwrite information, and she never compromised the confidentiality of any suicide victim; and (4) Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, and Harada knew or should have known about Plaintiff's intrinsic authority and responsibility to do research on suicides at the MEO.

In the instant motion, Defendants again argue that Plaintiff's defamation claims fail because the alleged statements cannot be proven false and Plaintiff does not provide any evidence to support the assertion that Defendants lied, were deceptive, or acted maliciously.

The Hawaii Supreme Court has established the following four elements to sustain a claim for defamation:

> (1) a false and defamatory statement concerning another;
> (2) an unprivileged publication to a third party; (3) fault
> amounting at least to negligence on the part of the

14

> publisher [actual malice where the plaintiff is a public figure]; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Gonsalves v. Nissan Motor Corp. in Haw., Ltd., 58 P.3d 1196, 1218 (Haw. 2002) (citing Gold v. Harrison, 962 P.2d 353, 359 (Haw. 1998)).  "The threshold issue in defamation cases is whether, as a matter of law, the statements at issue are reasonably susceptible of a defamatory meaning."  Gold, 962 P.2d at 360 (citing Fernandes v. Tenbruggencate, 649 P.2d 1144, 1147 (Haw. 1982)).  "A communication is defamatory when it tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him."  Fernandes, 649 P.2d at 1147 (citation and internal quotation marks omitted).

If the court does not find the statements are susceptible to the plaintiff's meaning, then the case should not be sent to the jury.  See Gold, 962 P.2d at 360 (citing Fernandes, 649 P.2d at 1147 n. 1).  The alleged defamatory statement "must be communicated to some third party other than the person defamed."  Runnels v. Okamoto, 525 P.2d 1125, 1127 (Haw. 1974).

15

A.     Defendant Kamahele

With respect to alleged defamatory statements made by Defendant

Kamahele, Plaintiff emphasizes the discrepancies between Defendant Kamahele's

Grand Jury testimony and deposition statement.  Plaintiff points out that during

Defendant Kamahele's deposition she "had no idea what kind of ink the printer

takes, when it was last changed, how long the ink lasts, or why Pam Cadiente told

her for the first time ever that the printer ink was out." (Doc. # 203 at 8.)  Plaintiff

contrasts the deposition statement with Defendant Kamahele's Grand Jury

testimony that stated,

> Pamela Cadiente, came to my area and said that the
> printer . . . cartridge had to be replaced so I thought it
> was odd because we had recently replaced the print
> cartridge. So then she said, well, maybe it was because
> Sharon Black printed all these reports; and I said that she
> was not allowed to print reports.

(Doc. # 203 at 7-8.)

Plaintiff's allegation of inconsistencies between Defendant

Kamahele's Grand Jury testimony and her deposition statement regarding how and

when she discovered the unauthorized printing does not amount to a false and

defamatory statement.  Although Defendant Kamahele's two statements may

appear to be somewhat inconsistent regarding how she realized Plaintiff had

16

printed reports from the MEO's computer based upon the usage of the ink cartridge, this inconsistency is not a statement reasonably susceptible to a defamatory meaning regarding Plaintiff.  As the defamation claim based upon these alleged statements regarding printer ink fails to meet the first element, it is unnecessary to discuss the remaining elements, and summary judgment is granted in favor of Kamahele with respect to the two statements made above.

Next, Plaintiff asserts that Kamahele made a defamatory statement by claiming that the MEO had a confidentiality policy.  Regardless of whether or not the MEO's security policy is written down, or whether Kamahele was wrong in stating that the MEO had such policy, there is nothing defamatory toward Plaintiff about stating, even incorrectly, that the MEO had a security policy.  Likewise, merely stating that Plaintiff printed confidential reports is not defamatory because it is not false.  Plaintiff has not denied the fact that she printed out medical examiner reports and took them home.  For these reasons, it is also not defamatory to state that Plaintiff printed confidential material.

Plaintiff also alleges an inconsistency in Defendant Kamahele's Grand Jury testimony regarding what Plaintiff said to her when confronted by Kamahele about printing the medical reports.  (Doc. # 203 at 8.)  Plaintiff cites Defendant Kamahele's statement to the Grand Jury that, "[Plaintiff] said that because she was

17

sitting at another work station . . . she thought it was okay to print out the copies. And [Plaintiff] said she was sorry.  She wouldn't jeopardize the confidentiality of our records and just apologized."  (Doc. # 203 at 8.)  Plaintiff does not clearly state what this statement is inconsistent with.  Nevertheless, Plaintiff cannot base her defamation claim on statements made during the Grand Jury proceedings.

The Hawaii Courts have "applied an absolute litigation privilege in defamation actions for words and writings that are material and pertinent to judicial proceedings."  Matsuura v. E.I. Du Pont De Nemours and Co., 73 P.3d 687, 962 (Haw. 2003) (citing see Abastillas v. Kekona, 958 P .2d 1136, 1137 (Haw. 1998) (noting that the Intermediate Court of Appeals (ICA) affirmed the circuit court's dismissal of a libel action against an attorney based upon "absolute immunity); Ferry v. Carlsmith, 23 Haw. 589, 591 (Haw. Terr. 1917) (adopting an absolute privilege for communications made by attorneys "in the conduct of judicial proceedings); Hall v. State, 756 P.2d 1048, 1056 (Haw. Ct. App. 1988) (holding that a deputy attorney general's alleged defamatory statements made in preparation of the defense of his clients were absolutely privileged); McCarthy v. Yempuku, 678 P.2d 11, 14 (Haw. Ct. App. 1984) (noting that Hawaii Supreme Court has adopted an absolute litigation privilege)).

18

In the Ninth Circuit for claims under § 1983, the court has stated that "[g]rand jury witnesses are generally immune from suit . . . for their testimony." Kulas v. Flores, 255 F.3d 780, 783 (9th Cir. 2001) (citing see Little v. City of Seattle, 863 F.2d 681, 684 (9th Cir. 1988)).  The Ninth Circuit has also held that a witness not only has absolute immunity from liability for civil damages under § 1983 for giving perjured testimony at trial, but also has "absolute immunity for conspiring to present her own and another witness's perjured testimony at trial." Franklin v. Terr, 201 F.3d 1098, 1099 (9th Cir. 2000) (citing Briscoe v. LaHue, 460 U.S. 325, 326 (1983)).  The United States Supreme Court in a concurring opinion recognized that at common law, the "[prosecutor's] false statements as a witness in support of the warrant application would not have been an independent actionable tort (although they might have been evidence of malice or initiation in the malicious prosecution suit), because of the absolute privilege protecting such testimony from suits for defamation." Kalina v. Fletcher, 522 U.S. 118, 133 (1997) (Scalia, J., concurring).

Here, the Hawaii absolute litigation privilege immunizes Defendants for any statements made during the Grand Jury proceedings.  Accordingly, to the extent Plaintiff's defamation claims are based upon any of the Defendants' statements made during Grand Jury proceedings, it fails as a matter of law.

19

Defendants' motion for summary judgment is granted with respect to Plaintiff's defamation claims based upon any statements made during Grand Jury proceedings.

The only statement that could possibly be a basis for Plaintiff's defamation claims is a statement that she <u>knowingly or intentionally</u> violated the MEO policy, as it could be a statement made in reckless disregard of the truth which reflects poorly on her ability to perform her job and her reputation.  <u>See</u> <u>Runnels v. Okamoto</u>, 525 P.2d 1125, 1127 (Haw. 1974) ("[t]he interest which is here protected is of that reputation").  The statement must have been made to a third party outside of the Grand Jury proceedings or the instant litigation.

In Defendant Kamahele's deposition she states, "[Plaintiff] did acknowledge that she knew she could not have copies."  (Kamahele Depo. at 113:12-14.)  Additionally, Defendant Kamahele's Declaration states that when she spoke with Plaintiff "on August 4, 2005, [Plaintiff] admitted she had printed confidential MEO documents without permission."  (Kamahele Decl. ¶ 14.) Kamahele admits that she made these statements to Goodhue.  These statements are the types of statements that could be considered defamatory.[1]

---

[1] To be clear, Plaintiff cannot rely on the statements made in the deposition or the declaration themselves due to the absolute litigation privilege.  Plaintiff must
(continued...)

20

Citing to <u>Kajiya v. Department of Water Supply</u>, 629 P.2d 635 (Haw.

Ct. App. 1981) and <u>Medeiros v. Kondo</u>, 522 P.2d 1269, 1271 (Haw. 1974),

Defendants argue that Kamahele cannot be found liable for such statements

because Kamahele is a public official and Plaintiff has not provided evidence of

malice.

Where a public official is alleged to have made the defamatory

statement and that statement was made in his or her official capacity, malice must

be proven.  <u>See</u> <u>Kajiya</u>, 629 P.2d at 640; <u>Medeiros</u>, 522 P.2d at 1271-72 ("We feel

strongly that if an official, in exercising his authority is motivated by malice, and

not by an otherwise proper purpose, then he should not escape liability for the

injuries he causes.").

> [N]on-judicial governmental officials, when acting in the
> performance of their public duty, enjoy the protection of
> what has been termed a qualified or conditional privilege.
> This privilege effectively shields the official from
> liability, and not from the imposition of the suit itself, to
> the extent that the privilege is not abused and thereby
> lost. . . . in order for an action to lie against an official
> acting under a claim of privilege, it is essential that the
> injured party allege and prove, to the requisite degree,
> that the official had been motivated by malice and not by
> an otherwise proper purpose.

---

[1](...continued)
establish that these statements were published to third parties outside of this
litigation or the Grand Jury proceedings or criminal proceeding.

<u>Towse v. State</u>, 647 P.2d 696, 702 (Haw. 1982) (citations omitted).  "[T]he injured party [must] demonstrate by clear and convincing proof that those officials were stirred by malice and not by an otherwise proper purpose."  <u>Id.</u>

 The qualified privilege of imposing a higher burden of proof on the plaintiff with respect to showing malice by clear and convincing evidence extends only to those who qualify as a public official.  Indeed, the Hawaii Supreme Court has stated that "[t]his greater burden of proof requirement is applicable to lawsuits against those officials who were formerly within the parameters of <u>Barr v. Matteo</u>, 360 U.S. 564 (1959)."  <u>Runnels</u>, 525 P.2d at 1128-29.  <u>Barr</u> held that

> The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government.  The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy. . . .
>  To be sure, the occasions upon which the acts of the head of an executive department will be protected by the privilege are doubtless far broader than in the case of an officer with less sweeping functions. But that is because the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion . . . . It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted-the relation of the act complained of to 'matters committed by law to his

> control or supervision,' which must provide the guide in
> delineating the scope of the rule which clothes the
> official acts of the executive officer with immunity from
> civil defamation suits.

360 U.S. at 573-574 (citations omitted).

In <u>Runnels</u>, the Hawaii Supreme Court found that an elected councilman for the City and County of Honolulu and the city council auditor "who was charged with the overall responsibility for directing the post-audit, the fiscal, budgetary and management analyses, and the general research programs in behalf of the city council" fell into the category of a public official who could raise the qualified privilege.  525 P.2d at 1129; <u>see</u> <u>also</u> <u>Lane v. Yamamoto</u>, 628 P.2d 634 (Haw. Ct. App. 1981) (allowing prosecutor to raise the qualified privilege); <u>Kajiya</u>, 629 P.2d 635 (allowing the Director of the Department of Water Supply to raise the qualified privilege).

Here, Defendants have shown only that Kamahele is an employee of the MEO and that she is a secretary.  A secretary at the MEO does not obviously fall into the category of a public official and Defendants have not argued that her duties were such that she should be allowed to raise the qualified privilege.

Although unclear, Defendants appear to argue that Kamahele's statements to Goodhue are privileged under a "common interest" theory.

23

Defendants, however, cite only California law with respect the common interest of an employer and its employees with respect to other employees following the employer's rules and policies.  Defendants cite no Hawaii law on the issue and do not further flesh out this argument.

However, this Court is aware that Hawaii provides a qualified privilege for defamation claims "(1) when the author of a defamatory statement reasonably acts in the discharge of some public or private duty, legal, moral, or social and (2) where the publication concerns a subject matter in which the author and the recipients of the publication have a correlative interest or duty." Kainz v. Lussier, 667 P.2d 797, 801-02 (Haw. Ct. App. 1983) (citations omitted) (finding that the corporate secretary had a qualified privilege in sending a series of letters to shareholders in discharge of his private legal duty as corporate secretary and director).  "An interest which is protected by a qualified privilege is one where (1) the publisher and recipient have a common interest and (2) the communication is of a kind reasonably calculated to protect or further such interest." Id. at 802; see also Russell v. Am. Guild of Variety Artists, 497 P.2d 40, 44 (Haw. 1972).

Although a defendant must satisfy both of these requirements to find that a qualified privilege defense is available, this test "places emphasis on the

reasonable action of the author of the publication and the corresponding interest

between the author and the recipient." Russell, 497 P.2d at 44.

> [T]he qualified privilege is conditional and it must be
> exercised (1) in a reasonable manner and (2) for a proper
> purpose. The immunity is forfeited if the defendant steps
> outside the scope of or abuses the privilege.  The
> qualified privilege may be abused by (1) excessive
> publication, (2) use of the occasion for an improper
> purpose, or (3) lack of belief or grounds for belief in the
> truth of what is said.

Kainz, 667 P.2d at 802 (citations omitted).  "Whether the communication was

privileged is an issue of law to be determined by the court."  Id.

Here, this Court finds that Kamahele has a qualified privilege to report

to her supervisor Goodhue that Plaintiff had allegedly inappropriately printed

documents.  Kamahele and Goodhue, as MEO employees, certainly have a

common interest in ensuring that those allowed to conduct research on their

premises and with their permission follow MEO policies.  As the MEO was the

entity allowing Plaintiff to conduct research and Kamahele had informed Plaintiff

of at least some of the printing policies, Kamahele acted reasonably in reporting to

Goodhue that she believed Plaintiff had violated a MEO policy.  Plaintiff provided

no evidence that Kamahele published these types of statements to anyone other

than Goodhue, during the Grand Jury proceedings, or in this instant litigation.  In

25

addition, there is no evidence that could establish that Kamahele reported her belief

to Goodhue for an improper purpose.  For all of the above reasons, Plaintiff's

defamation claim against Kamahele fails and Defendants' motion is GRANTED.

B.    <u>Defendant Goodhue</u>

With respect to Defendant Goodhue, Plaintiff alleges Defendant

Goodhue lied to the HPD and the Grand Jury when stating that Plaintiff committed

a violation of office security policy when printing and removing the medical

examiner reports.  (Doc. # 203 at 8-9.)  Plaintiff alleges "deception" in Defendant

Goodhue's account of what Plaintiff stated when returning the medical reports.

According to Defendant Goodhue's Grand Jury statement, Plaintiff admitted to

wrongly making copies of material from the medical examiner department

computer.  (Doc. # 203 at 9.)  Defendant Goodhue stated that Plaintiff "knew she

was wrong in having done so, and she acknowledged that she had asked Mrs.

Kamahele prior to beginning the project whether she could print material from our

computer that she was viewing; and that Mrs. Kamahele had told her no printing."

(Doc. # 203 at 9.)

Plaintiff alleges that this statement directly contradicts Defendant

Kamahele's statement of the same incident.  Plaintiff cites to Defendant

Kamahele's statment saying, "[Plaintiff] indicated that she knew she wasn't

supposed to copy records but she thought it was only at one particular workstation .

. . she thought it was okay to print on the second workstation located in the

Medical Examiner's Investigators' room." (Doc. # 203 at 10.) Plaintiff claims

Defendant Goodhue's version of Plaintiff's admission of guilt is far different from

Defendant Kamahele's account of Plaintiff's misunderstanding of the printing

policy. (Doc. # 203 at 10.)

       Plaintiff alleges material differences between Defendant Goodhue's

account of the conversation with Plaintiff. In Defendant Goodhue's Grand Jury

testimony he recalled telling [Plaintiff] that "her action constituted a particular

unacceptable breach of security, and [she] admitted that she was wrong. She

expressed remorse. She said, 'I'm sorry. I'll never do it again.' And that ended

our meeting." (Doc. # 203 at 11.) Plaintiff's written statement of the conversation

provides,

> I had permission from Or. Khanti [sic] to get all the
> information from the confidential files. I met with both
> Alicia and Dr. Godhue [sic] and explained my
> misunderstanding and agreement that I would no longer
> print out any forms on any computer at the ME's without
> the consent of Dr. Khanti.. [sic] They also agreed that I
> could continue my research as long as it was in writing.
> Dr. Goodhue stated to me he was looking forward to
> seeing, my the completed report [sic]. Dr. Goodhue also
> requested) [sic] be a guest speaker tor [sic] the continuing
> education classes he holds weekly at the ME office. I

agreed to do so.  Again this lead me to believe the misunderstanding was resolved.

(Doc. # 203 at 11.)

Plaintiff alleges that Defendant Goodhue misstated the MEO's policy, stating that access to investigative reports was allowed only if pursuant to a court-ordered subpoena.  In Defendant Goodhue's Grand Jury testimony he recalled explaining to Plaintiff that investigative reports are confidential and only available by court-ordered subpoena.  (Doc. # 203 at 10.)  Plaintiff claims that this statement contradicts the admission of Defendants in Admissions # 09-101, which provides:

> 98. Admit that confidential information is available to select individuals for limited reasons.
> 99. Admit that alternatively, this confidential information is available if a department of the City and County of Honolulu gives an employee oral permission to get the information.
> 100. Admit that alternatively, this confidential information is available if a department of the City and County of Honolulu gives an employee written permission to get the information.
> 101. Admit that alternatively this confidential information is available only with a court order.

(Doc. # 203 at 12.)  Plaintiff claims that this demonstrates that court-ordered subpoena is only one method to obtain confidential information, therefore Defendant "Goodhue either lied, made up the security policy on the spot, or was recklessly ignorant."  (Doc. # 203 at 12.)

28

Lastly, Plaintiff alleges Defendant Goodhue "appears ignorant" about what is confidential information, and that he also gave contradictory testimony to the Grand Jury regarding this topic. (Doc. # 203 at 12-13.) Plaintiff claims that Defendant Goodhue's Grand Jury statement that an individual's name is confidential contradicts practice. (Doc. # 203 at 12-13.) As evidence, Plaintiff cites to an incident when Defendant Kamahele emailed Plaintiff a list of names and Susan Siu's testimony. (Doc. # 203 at 12-13.) The testimony of Susan Siu recalls being "instructed to print out copies of investigative reports regarding suicides." (Doc. # 203 at 13.) Susan Siu also stated that "the policy is not directed to those who are doing research."   (Doc. # 203 at 13.)

Again, the first allegation regarding Defendant Goodhue's statement that Plaintiff violated MEO's security policy by printing and removing files is not defamatory. The MEO has a security policy prohibiting printing and removing medical examiner reports and Plaintiff admits that she removed reports. Therefore, there is nothing defamatory about Defendant Goodhue's stating that removing files from the MEO's facility is a violation of office policy.

Plaintiff's second defamation claim against Defendant Goodhue regarding what Plaintiff said when returning the reports, however, creates a genuine issue of fact as to whether he stated that Plaintiff knowingly violated the

29

MEO's security policy.  First, Plaintiff alleges this statement is defamatory and false because she did not knowingly print prohibited material as Defendant Goodhue's Grand Jury testimony suggests, but as a result in misunderstanding of printing instructions.  Accordingly, as with Kamahele, a statement that Plaintiff knowingly violated an MEO policy, could be defamatory.

However, Plaintiff's defamation claim against Goodhue for these types of statements can only be based on statements made outside of litigation proceedings.  Thus, as stated above, Defendants' motion is granted with respect to any statements made by Goodhue during the Grand Jury proceedings or in the instant lawsuit.

As did Kamahele, Goodhue also raises the defense of qualified privilege, arguing he is a public official and Plaintiff cannot prove malice. Defendants, however, did not provide any information regarding Goodhue's duties and responsibilities such that this Court could determine if he qualifies for immunity.  The only evidence in the record is that Goodhue is the First Deputy Medical Examiner for the MEO.  Without more, this Court cannot determine on Defendants' motion for summary judgment that Goodhue qualifies as a public official.

Also, as with Kamahele, although unclear, it appears Defendants are arguing that Goodhue is entitled to the defense of a qualified privilege because any person to whom Goodhue made a possibly defamatory statement was an employee of the City and County of Honolulu.  At the outset, this Court notes that the mere fact that Goodhue and the officers at HPD are all ultimately City and County employees is insufficient by itself to establish a common interest with respect to the subject matter of Goodhue's comments.  However, given that Plaintiff was employed by HPD and was conducting research at the MEO, allegedly on behalf of HPD, this Court finds that Goodhue had a common interest with HPD in ensuring that their employee was following MEO policies, and that Goodhue had a duty to inform HPD of possible violations of MEO policies.  Again, there is no evidence that Goodhue made these statements to anyone other than HPD personnel or in Grand Jury proceedings.  There is also no evidence that Goodhue abused this privilege.  Therefore, Defendants' motion is GRANTED with respect to Plaintiff's defamation claim against Goodhue.

31

C.    Defendant De Alwis

Plaintiff alleges that Defendant De Alwis made misstatments to the

Grand Jury, which led to Plaintiff's criminal trial.  (Doc. # 203 at 13.)  Defendant

De Alwis's Grand Jury statement recalled mentioning to Plaintiff that the

investigative reports were "read only."  (Doc. # 203 at 14.)  Defendant De Alwis

stated that she did not authorize Plaintiff to print out any medical examiner's

records or remove any records that were printed from the MEO facility.  (Doc.

# 203 at 14.)  Plaintiff claims that Defendant De Alwis's instructions that

documents were "read only" had "nothing to do with the printing of documents."

(Doc. # 203 at 14.)  Plaintiff believes that the testimony is deceptive by implying

that the instructions prohibited Plaintiff from printing.  (Doc. # 203 at 14.)

Plaintiff also believes that the testimony is deceptive because Defendant De

Alwis's instructions "were brief and incomplete and relied on [Plaintiff's] past

experience."  (Doc. # 203 at 14.)

In a written letter Plaintiff states,

I was under the impression it was just the one
computer they had that I was not able to print out from.
After 10 years of working with the ME with no
complaints of confidential violation which include the
fact that I had printed these reports out in the past and in

32

some cases the reports were even printed out for me would I
now be accused of stealing them.

(Doc. # 203 at 15.)

As with the other MEO defendants, there is no evidence that De Alwis
made any possibly defamatory statement outside of the Grand Jury proceedings or
to anyone other than another MEO employee or HPD personnel. Therefore, this
Court finds that De Alwis is entitled to a qualified privilege in making the
statements to HPD or other MEO employees.  Defendants' motion is GRANTED
with respect to Plaintiff's defamation claim against De Alwis.

      D.    <u>Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, and
Harada</u>

For claims of defamation against HPD Defendants, Plaintiff cites
Exhibit 19 as evidence of written defamation "accusing Black of not just
administrative violations but crimes that attack the essence of her qualifications to
do her job."  (Doc. # 203 at 15.)  Plaintiff also alleges that Defendants Correa,
Kajiyama, Watarai, Lima, Nishimura, and Harada made defamatory statements
regarding her intrinsic authority and responsibility to do research on suicides at the
MEO.  This Court surmises that Plaintiff alleges that HPD Defendants knew she
was doing research on suicides at the MEO's office and the alleged false and

33

defamatory statements were made when they denied knowledge of Plaintiff's authority to conduct research at the MEO.

As with the MEO Defendants, this Court finds that even if the alleged statements were defamatory, Plaintiff has not demonstrated that these communications were unprivileged.  Plaintiff has only demonstrated that these statements were made among HPD personnel and MEO personnel, all of whom this Court has already found shared a common interest in Plaintiff following MEO policies.  In addition, these statements were made as part of an investigation into Plaintiff's alleged conduct at the MEO.  For these reasons, this Court GRANTS summary judgment in favor of  Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, and Harada on Plaintiff's defamation claims.

II.    Malicious Prosecution Claim

As set forth in this Court's previous order, the malicious prosecution claim remains against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, De Alwis, Goodhue, and Kamahele.  (Doc. # 185.)  At this point, it is important for this Court to determine which of the named Defendants could possibly be liable for a malicious prosecution claim.

In Hawaii, the Territorial Court recognized that liability for malicious prosecution was only for those persons "who instituted or aided in conducting or

34

maintaining the criminal prosecution." <u>Orth v. Basker</u>, 30 Haw. 520, No. 1821,

1928 WL 3407, at *1 (Haw. Terr. Aug. 24, 1928).  The Court stated that it is

insufficient to find liability based on "[m]ere passive acquiescence in the

institution or in the conduct of such a prosecution by another . . . ."  <u>Orth</u>, 1928 WL

3407 at *1.  The defendant must appear to have actively instigated or instituted the

alleged malicious prosecution, and the defendant's affirmative action must be the

responsible or proximate cause of maliciously putting the law in motion.  <u>See</u> <u>Orth</u>,

1928 WL 3407, at *2.  The defendant's affirmative act in connection with the

prosecution must be in the form of advice, encouragement, or other similar action.

<u>Id.</u>  "The ultimate question is whether there was evidence fairly tending to show

that the defendant's conduct in the matter in any way exerted a controlling

influence over the action of the public prosecutor."  <u>Id.</u> (internal citation and

ellipses omitted).

   The alleged actions of Defendants Kamahele, Goodhue and De Alwis

are insufficient to support a finding of liability for a malicious prosecution claim

against them.  Plaintiff's allegation of Defendants Kamahele, Goodhue and De

Alwis fabricating the existence of a security policy at the MEO does not meet the

test of an affirmative action instituting the prosecution against Plaintiff.  Even if

Plaintiff's allegation of falsifying the existence of a security policy was true,

35

Defendants' actions are not the proximate cause of the prosecution.  Therefore, Defendants Kamahele, Goodhue, and De Alwis's motion for summary judgment is GRANTED with regard to the malicious prosecution claim.[2]

Additionally, the alleged actions of Defendants Watarai, Lima, Nishimura, and Harada are insufficient to support a finding of liability for a malicious prosecution claim.  There is no evidence that these Defendants participated in the final decision to criminally prosecute Plaintiff or otherwise encouraged the bringing of such charges.  The only evidence presented pertaining to these defendants is that they were unaware that Plaintiff was conducting research at the MEO and they thought she had not been authorized to do so by the HPD.  Plaintiff has presented nothing that could link these Defendants actions with the initiation of criminal charges against her.  Therefore, the malicious prosecution claim is DISMISSED against Defendants Watarai, Lima, Nishimura, and Harada. The remaining Defendants for the malicious prosecution claim are Defendants Correa and Kajiyama.

---

[2] Indeed, Defendant De Alwis stated that it was not her intention to seek prosecution of Plaintiff for copying MEO documents without permission.  (De Alwis Decl. at 3.)

Defendants argue that Plaintiff cannot prove her malicious prosecution claim because the prior criminal proceedings did not end in her favor, but instead concluded with a hung jury, there was probable cause to bring the charges, and there is no evidence of malice.

A claim of malicious prosecution requires proof of three elements:  (1) that the prior proceedings were terminated in [Plaintiff's] favor; (2) that the prior proceedings were initiated without probable cause; and (3) that the prior proceedings were initiated with malice."  <u>Myers v. Cohen</u>, 688 P.2d 1145, 1148 (Haw. 1984).  Plaintiff must prove all three elements to succeed.  <u>See</u> <u>Smith v. Hurd</u>, 699 F. Supp. 1433, 1435 (D. Haw. 1988).

With respect to the first element, the Hawai'i Supreme Court formally adopted the "rule that a cause of action for malicious prosecution does not accrue (i.e., there is no favorable termination) until (1) the prosecution has been finally and favorably decided on appeal, or (2) it has been finally and favorably decided in the trial court and the time for appeal has passed."  <u>Wong v. Cayetano</u>, 143 P.3d 1, 18 n.11 (Haw. 2006).  In other words, the first element can be proved if the prior proceeding ended in Plaintiff's favor and "in such a manner that it cannot be revived."  <u>Wong v. Panis</u>, 772 P.2d 695, 699 (Haw. Ct. App. 1989) rev'd on other

grounds by <u>Hac v. Univ. of Hawai'i</u>, 73 P.3d 46 (Haw. 2003).  This includes an adjudication in the plaintiff's favor on the merits, and a voluntary dismissal with prejudice.  <u>Id.</u>; <u>Jaress & Leong v. Burt</u> 150 F. Supp. 2d 1058, 1062-63 (D. Haw. 2001) ("Hawaii recognizes the general rule that a dismissal with prejudice is an adjudication on the merits of all issues that were raised or could have been raised in the pleadings.") (citing <u>Land v. Highway Constr. Co., Ltd.</u>, 645 P.2d 295, 299 (1982)).  In contrast, dismissal without prejudice based on a procedural ground is insufficient to satisfy termination in the plaintiff's favor on the merits.  <u>Thomas Haw. Dept. of Pub. Safety</u>, Civil No. CV07-00382, 2008 WL 2096872, at *7 (D. Haw. May 16, 2008).

Here, Defendants argue Plaintiff's claim fails the first element because the prior proceeding did not end in Plaintiff's favor, but instead concluded with a hung jury.  Plaintiff argues that prior proceedings terminated in her favor "with a 8 to 12 ruling and a denial of retrial by Judge Perkins."  (Doc. # 203 at 19.)  This Court finds that the prior proceedings were terminated in Plaintiff's favor because after the trial ended with a hung jury, the State court granted Plaintiff's motion to dismiss the indictment with prejudice.  The State court's dismissal with prejudice represents a favorable termination because it was an adjudication on the merits.

38

With respect to the second element of a malicious prosecution claim, the Hawaiʻi Supreme Court defines probable cause for bringing criminal charges as follows:

> probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty. This standard has two components. The first sentence describes the standard for determining the presence of probable cause. The second sentence describes the quantum of proof necessary to satisfy the standard.

State v. Maganis, 123 P.3d 679, 681 (Haw. 2005) (internal citations omitted). "Probable cause does not depend on the actual state of the facts but upon the honest and reasonable belief of the party commencing the action." Brodie v. Haw. Automotive Retail Gasoline Dealers Ass'n, Inc., 631 P.2d 600, 602-03 (Haw. App. 1981) rev'd on other grounds 655 P.2d 863 (1982) (citing Phillip v. Waller, 5 Haw. 609 (1886); Kalaukoa v. Henry, 11 Haw. 430 (1908); Gaspar v. Nahale 14 Haw. 574 (1903)). The fact that a person had probable cause to bring the prior proceedings is a defense to the tort of malicious prosecution. Reed v. City and County of Honolulu, 873 P.2d 98, 109 (Haw. 1994). "When the evidence as to the facts necessary to constitute probable cause is clear, the question of probable cause

39

is for the court to determine." <u>Lopez v. Wigwam Dept. Stores No. 10, Inc.</u>, 421

P.2d 289, 293 (Haw. 1966).

              Here, Defendants Correa and Kajiyama point to no evidence to

establish whether they had probable cause to encourage or recommend initiating

the criminal proceedings.[3]  Defendants argue only that "there was probable cause

to charge the violations based on the evidence in the record" (Doc. # 204 at 9) and

that the uncontested declarations of the named Defendants fully satisfy this issue.

(<u>See</u> Doc. # 193 at 17.)  At most, the evidence in the record establishes only that

Defendants believed Plaintiff had violated an MEO policy.  Defendants do not

discuss the elements of the crimes with which Plaintiff was charged, or how the

mere violation of an MEO policy gave them an honest and reasonable belief that

Plaintiff committed the charged crimes.

---

[3] Defendants state that they are confused by the continuation of this claim because a previous decision by this Court stated that there may have been probable cause for the criminal proceedings.  That order, however, was based upon a motion to dismiss the original complaint.  After that order was issued, Plaintiff amended her complaint, providing more facts with respect to her argument of lack of probable cause.  Defendants then filed a motion to dismiss the first amended complaint.  This Court denied that motion with respect to the malicious prosecution claim because Plaintiff had added allegations in her complaint that supported her malicious prosecution claim.  (<u>See</u> Doc. # 88.)

Moreover, Defendants assert that there is no evidence of malice because it was only a misunderstanding by either Defendants or Plaintiff with respect to what she was allowed to print.  If the criminal charges were predicated only upon a mere "misunderstanding" of what the MEO policy was and what actions Plaintiff engaged in, however, then there are certainly genuine issues of material fact regarding whether Defendants had probable cause to recommend the initiation of criminal proceedings.  A material question of fact remains whether the limited information provided to Defendants Correa and Kajiyama would warrant a person of reasonable caution to believe that Plaintiff had committed the criminal offenses charged.

Although unclear, Defendants appear to argue that there cannot be genuine issues of material fact with respect to probable cause because the prosecutor ultimately decided to actually file the criminal charges and Plaintiff was indicted by a grand jury.

"Under Hawaii law, a grand jury . . . functions to determine whether probable cause exists [and][t]here is also a presumption that the grand jury acted upon sufficient and legal evidence."  McCarthy v. Mayo, 827 F.2d 1310, 1317 (9th Cir. 1987) (citation omitted).  This, however, does not absolve Defendants of

41

possible liability because it does not demonstrate the absence of genuine issues of material fact with respect to Defendants' belief that Plaintiff committed a criminal offense at the time they recommend that criminal charges be brought.  Defendants have not addressed this issue.  Instead, Defendants have focused only on a violation of the MEO policy, something which Defendants have not shown is criminal violation, or would lead them to believe that Plaintiff committed a crime. Moreover, it is possible that the grand jury based its decision on different evidence than what was relied upon by Defendants at the time they made their recommendation.  It is unclear to this Court what Defendants knew or believed at the time they recommended that criminal charges be brought.

With regard to the third element of malice, because this Court finds that there are genuine issues of material fact related to whether Defendants Correa and Kajiyama had probable cause to recommend instituting the criminal proceedings, this Court also finds that there are genuine issues of material fact related to malice.  For these reasons, Defendants' summary judgment motion is DENIED with respect to a malicious prosecution claim against Correa and Kajiyama.

III.     Hawaii Revised Statute Section 378-62 Claim

Defendants assert for the first time that this claim should be dismissed because Plaintiff has not alleged that she reported or attempted to report a violation of the law.

Hawaii Revised Statute section 378-62 provides as follows:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

(B) A contract executed by the State, a political subdivision of the State, or the United States, unless the employee knows that the report is false; or

(2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Although Plaintiff addresses this claim in her opposition, she points to no facts or allegations that could establish that she meets any of the requirements of this statute.  As Plaintiff has failed to present any evidence that she reported or

43

attempted to report a violation or suspected violation of the law, Defendants'

motion for summary judgment on this claim is GRANTED.

IV.   Retaliation Claim

        In the previous order, this Court noted that there remained a claim for

retaliation under Title VII against HPD based upon the adverse actions of

instituting criminal and administrative charges against Plaintiff and placing her on

a limited duty status.

        In order to establish a Title VII retaliation claim, the plaintiff must

produce evidence that gives rise to an inference of unlawful discrimination, either

through direct evidence of discriminatory or retaliatory intent or through the

burden shifting framework set forth in McDonnell Douglas Corp. v. Green.

Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003); see Ray v.

Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  Direct evidence is "evidence

which, if believed, proves the fact [of discriminatory animus] without inference or

presumption."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)

(internal quotation marks omitted) (alteration in original).  Direct evidence "is

defined as evidence of conduct or statements by persons involved in the

decision-making process that may be viewed as directly reflecting the alleged

discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 812 (9th Cir. 2004) (citation, internal quotation marks, and ellipses omitted).  Plaintiff has not asserted that she has any direct evidence of discriminatory or retaliatory intent.  Accordingly, Plaintiff must proceed under the McDonnell Douglas framework.

Under that framework, the plaintiff must first establish a prima facie case of retaliation to go forward on either claims.  Ray, 217 F.3d at 1240.  "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).  For a retaliation claim, the plaintiff's prima facie case consists of establishing that: "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."  Ray, 217 F.3d at 1240; Vasquez, 349 F.3d at 646; Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003).

If the plaintiff meets this burden,

> the burden of production, but not persuasion, then shifts
> to the employer to articulate some legitimate,
> nondiscriminatory, [or nonretaliatory]  reason for the
> challenged action.  If the employer does so, the plaintiff
> must show that the articulated reason is pretextual either
> directly by persuading the court that a discriminatory
> reason more likely motivated the employer or indirectly
> by showing that the employer's proffered explanation is
> unworthy of credence.

Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000)

(internal quotation marks and citation omitted).

> Summary judgment is not appropriate if a reasonable jury
> viewing the summary judgment record could find by a
> preponderance of the evidence that the plaintiff is entitled
> to a verdict in his favor. A plaintiff alleging employment
> discrimination "need produce very little evidence in order
> to overcome an employer's motion for summary
> judgment." . . . "In evaluating motions for summary
> judgment in the context of employment discrimination,
> [the Ninth Circuit] ha[s] emphasized the importance of
> zealously guarding an employee's right to a full trial,
> since discrimination claims are frequently difficult to
> prove without a full airing of the evidence and an
> opportunity to evaluate the credibility of the witnesses."

Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (citations omitted).

Defendants assert that Plaintiff cannot prove her retaliation claim

because she does not have evidence to hold CCH liable pursuant to Monell v.

46

<u>Department of Social Services of City of New York</u>, 436 U.S. 658, 690 (1978).[4]

Defendants' argument is misplaced.

The requirements to hold a municipality liable pursuant to <u>Monell</u> are

for constitutional or federal rights claims brought pursuant to 42 U.S.C. § 1983.

This is to be distinguished from a Title VII claim.  These are two distinct causes of

action.  <u>See</u>  <u>Learned v. City of Bellevue</u>, 860 F.2d 928, 933 (9th Cir. 1988)

("Violation of rights created by Title VII cannot form the basis of section 1983

claims.").  Just as Title VII does not displace section 1983 claims, section "1983

may not be used as a vehicle for direct enforcement of Title VII," because to do so

would undermine Title VII's enforcement scheme.  6 Lex K. Larson, <u>Employment</u>

<u>Discrimination</u> § 102.07 (2d ed. 2009) (1974).  The <u>Monell</u> requirements are

therefore not a defense to a retaliation claim brought pursuant to Title VII.

---

[4] <u>Monell</u> holds that a municipality cannot be held liable pursuant to section 1983 under a theory of respondeat superior liability.  <u>Monell</u>, 436 U.S. at 691. Instead, for a municipality to be found liable for a section 1983 claim, the plaintiff must prove "that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'"  <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008) (citation omitted).

Accordingly, this Court will not consider a failure to meet the <u>Monell</u> requirements as a reason to grant summary judgment on Plaintiff's Title VII retaliation claim.[5]

Defendants next assert that Plaintiff cannot establish her retaliation claim because she has merely made broad sweeping statements and has no evidence of pretext. Defendants focus their arguments on actions taken by individual employees who worked at the MEO. However, the retaliation claim against all individual Defendants has been dismissed and there is no pending retaliation claim against the MEO. The only pending retaliation claim is against the HPD.

With respect to the HPD, although unclear, Defendants appear to argue that Plaintiff does not have evidence that Correa made the decision to pursue administrative and criminal charges against Plaintiff. This argument is not sufficient to grant summary judgment because there is no Title VII retaliation claim pending against Correa individually, and it is undisputed that if not Correa, other HPD supervisors, such as Nakamatsu or Kajiyama, made the decision to institute criminal and administrative charges against Plaintiff.

---

[5] Defendants also discuss prosecutorial immunity and a prosecutor's discretion to bring criminal charges in this section of their brief. The prosecutor, however, has previously been dismissed from this case.

48

Defendants also argue that Plaintiff cannot establish pretext because HPD honestly believed that it was appropriate to follow its policies that mandate that all complaints against an HPD officer or employee be investigated.  HPD, however, did not produce evidence of this general policy.  However, even if HPD had such policy, it does not explain a decision to pursue criminal charges, or why it was reasonable to believe that Plaintiff had committed a crime.  Neither does HPD assert that anytime an employee allegedly mistakenly removes confidential information that it prosecutes such employees.  Indeed, Defendants acknowledge that Plaintiff's evidence could establish that it was merely a simple misunderstanding regarding whether Plaintiff had permission to print certain documents.  (See Reply at 8.)  If it is true that it was merely a simple misunderstanding, then there is little to support an alleged reasonable belief by HPD that Plaintiff committed a crime and that criminal charges should be brought against her.  In other words, Plaintiff has demonstrated that there are issues of material fact as to whether a retaliatory reason more likely motivated HPD in bringing the charges.  Accordingly, Plaintiff has provided sufficient evidence to create a genuine issue of fact regarding pretext and Defendants' motion with respect to her retaliation claim is DENIED.

49

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND

DENIES IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 22, 2009.



_____

David Alan Ezra
United States District Judge

Black v. Correa, CV No. 07-00299 DAE/LEK; ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT