IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI′I

| | | |
|---|---|---|
| SHARON BLACK, | ) | CV. NO. 07-00299 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW OR IN THE ALTERNATIVE
MOTION FOR NEW TRIAL

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendant's motion and the

supporting and opposing memoranda, the Court DENIES Defendant's Motion.

(Doc. # 269.)

BACKGROUND

The parties are very familiar with the facts of this case, therefore the

Court recites only those facts relevant to determination of the instant motion.

Plaintiff Sharon Black filed suit against the City and County of

Honolulu ("the County" or "Defendant") and over 15 employees working for the

County, the Honolulu Police Department ("HPD"), and the Medical Examiners

Office ("MEO") on June 1, 2007.  (Doc. # 1.)  Plaintiff subsequently amended the

complaint on November 9, 2007 ("First Amended Complaint").  (Doc. # 73.)

Plaintiff was employed by the HPD since 1992 as an Outreach Worker assisting

HPD with researching mental health issues.  In 1994, Plaintiff began researching

suicide cases at the MEO, although it was disputed whether Plaintiff had

permission to do so.

Two events were particularly relevant to the claims at trial.  First, in

2005, after HPD received a complaint that Plaintiff was removing records from the

MEO without permission, various "adverse employment actions" were allegedly

taken against Plaintiff.  Plaintiff alleged that she was subjected to an Internal

Affairs administrative investigation, placed on administrative leave with pay for

three days, was required to return her HPD-issued vehicle and equipment, had

access to HPD facilities restricted for approximately three days until August 29,

2005, and was transferred to a different division within the HPD during the

Internal Affairs investigation.  Plaintiff was also prosecuted in state court for

unauthorized computer access, theft, and tampering with government records.  The

Prosecutor in that case was Chris Van Marter.  The criminal charges were dropped

in April 2007 after a hung jury trial in January 2007.  Second, Plaintiff had

previously filed a sexual harassment lawsuit against the County and several individual defendants in 1997, which was settled in November 2001.

In the First Amended Complaint, Plaintiff brought claims for negligence, intentional and negligent infliction of emotional distress, defamation, conspiracy, right to association, retaliation, and malicious prosecution.  The majority of Plaintiff's claims were dismissed prior to trial:  On September 20, 2007 and October 30, 2007, the Court issued an Order and Amended Order, respectively, dismissing certain defendants from the case and various claims against the County and individual defendants; On January 22, 2008, the Court dismissed Plaintiff's 42 U.S.C. §§ 1981, 1985 and 1986 claims; On August 18, 2008, the Court granted Defendants' motion for summary judgment with respect to Plaintiffs' negligent infliction of emotional distress claim, conspiracy claim, right to association claim, state claims as to certain individual defendants, intentional infliction of emotional distress ("IIED") claim as to certain individual defendants, and all claims as to other individual defendants; On February 2, 2009, the Court dismissed Plaintiff's negligence-based claims, constitutional claims brought pursuant to 42 U.S.C. § 1983, and Plaintiff's remaining IIED claim; On June 22, 2009, the Court granted summary judgment to Defendants as to Plaintiff's defamation claims, state claim, and malicious prosecution claims against certain individual defendants; On August

5, 2009, the Court denied Plaintiffs' motion for reconsideration of the June 2009 order.

The claims remaining for trial were: (1) malicious prosecution under Hawaii state law against individual defendants Boisse Correa and Glen Kajiyama; and (2) Retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, against defendant County.

A jury trial was held October 6, 2009 through October 16, 2009.  On October 9, 2009, the Court granted an oral Rule 50(a) motion for judgment as a matter of law and dismissed Glen Kajiyama and Boisse Correa as defendants.  On October 14, 2009, the Court denied the County's Rule 50(a) motion for judgment as a matter of law.  On October 16, 2009, the unanimous jury awarded Plaintiff $150,000 in emotional distress damages against the County.  (Doc. # 267.)

On October 26, 2009, the County filed a Renewed Rule 50(b) Motion for Judgment as a Matter of Law and/or in the alternative Rule 59 Motion for New Trial.  (Doc. # 269.)  On November 5, 2009, Plaintiff filed an Opposition. (Doc. # 274.)  On November 16, 2009, the County filed a Reply.  (Doc. # 276.)

## STANDARD OF REVIEW

I.      Renewed Motion for Judgment as a Matter of Law

The standard of review for a motion for judgment as a matter of law brought under Rule 50 of the Federal Rules of Civil Procedure mirrors the standard of review for summary judgment motion under Rule 56.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must review all of the evidence in the record, and draw all reasonable inferences in favor of the nonmoving party.  Id.; Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006). The court must not make credibility determinations or weigh evidence, as those functions are for the jury.  Reeves, 530 U.S. 133 at 150; E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  Reeves, 530 U.S. at 150.

A Rule 50(b) motion "is not a freestanding motion.  Rather, it is a renewed Rule 50(a) motion."  Go Daddy Software, 581 F.3d at 961.  If a party makes a Rule 50(a) motion before the case is submitted to the jury, that party may renew its motion under Rule 50(b) if the jury returns a verdict against that party. Id.  Rule 50(b) provides:

5

> If the court does not grant a motion for judgment as a
> matter of law made under Rule 50(a), the court is
> considered to have submitted the action to the jury
> subject to the court's later deciding the legal questions
> raised by the motion.  No later than 10 days after the
> entry of judgment . . . the movant may file a renewed
> motion for judgment as a matter of law and may include
> an alternative or joint request for a new trial under Rule
> 59.  In ruling on the renewed motion, the court may:
> (1) allow a judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

"[A] party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion.'" Go Daddy Software, 581 F.3d at 961 (quoting Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003)).

II.   Motion for a New Trial

A court may grant a motion for a new trial on all or some of the issues after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  These historically recognized grounds are not enumerated in the federal rules, and there is no rigid formula for ruling on a motion for a new trial.  The Ninth Circuit has held that those grounds upon which a new trial may be granted include:  (1) a verdict that is

contrary to the clear weight of the evidence; (2) a verdict that is based upon false or perjurious evidence; and (3) to prevent a miscarriage of justice. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (citing Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n.15 (9th Cir. 2000)). The U.S. Supreme Court has also recognized grounds for new trial if "the verdict is against the weight of the evidence, . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the party moving." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940); Molski, 481 F.3d at 729.

Upon a party's motion for new trial, the district court must weigh the evidence and "set aside the verdict of the jury, even though supported by substantial evidence, where in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." Molski, 481 F.3d at 729 (citation omitted). In other words, there must be a reasonable basis for the jury verdict. "If there is no reasonable basis, however, the absolute absence of evidence to support the jury's verdict makes refusal to grant a new trial an error in law." Id. (citations omitted). The district court does not have to weigh the evidence in a light most favorable to the prevailing party. Landes Constr. Co. v. Royal Bank of Can., 833 F.2d 1365, 1371 (9th Cir. 1987). Instead, if, "having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm

7

conviction that a mistake has been committed," then the motion should be granted. Id. at 1371-72.

Erroneous jury instructions or a court's failure to give adequate instructions is also a basis for a new trial.  Murphy v. City of Long Beach, 914 F.2d 183, 186-87 (9th Cir. 1990).  If a party alleges that an erroneous jury instruction was given, the erroneous instruction is not grounds for granting a new trial unless the error affects the essential fairness of the trial and a new trial is necessary to achieve substantial justice.  Jazzabi v. Allstate Ins. Co., 278 F.3d 979, 985 n.24 (9th Cir. 2002); McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984); Fed. R. Civ. P. 61.

A motion for new trial should not be granted "simply because the court would have arrived at a different verdict."  Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).

<u>DISCUSSION</u>

Defendant seeks judgment as a matter of law, or, in the alternative, a new trial.

I.    <u>Renewed Motion for Judgment as a Matter of Law</u>

Defendant renews its motion for judgment as a matter of law upon the theory that there is no legally sufficient evidentiary basis:  (1) for a reasonable jury

to find for Plaintiff with respect to the decision made by Chris Van Marter to prosecute Plaintiff; (2) for a reasonable jury to find for Plaintiff with respect to the Internal Affairs investigation of the MEO's complaint; and (3) for a reasonable jury to find for Plaintiff with respect to decisions made by then-Deputy Chief Glen Kajiyama.  (Mot. at 7, 19, 21.)  Defendant raised these issues in its pre-verdict Rule 50(a) motion,[1] albeit more generally than here, and therefore the Court can consider the points raised in the renewed motion.

As this Court evaluates Defendant's arguments, the Court will review all the evidence without making credibility determinations or weighing the evidence, and will draw all reasonable inferences in favor of Plaintiff.  See Reeves, 530 U.S. at 150.

_____

[1] In the original motion for judgment as a matter of law, Defendant argued that it had shown that "placing Plaintiff on administrative leave (with pay), requiring Plaintiff to surrender her HPD-issued vehicle and equipment, and restricting her from HPD facilities was entirely consistent with how other HPD members who are investigated by [Internal Affairs] are treated."  (Oct. 14, 2009 Mot. at 5.)  Defendant further argued that it had demonstrated that Plaintiff's transfer to another division was consistent with investigation policies.  (Id.) Defendant also averred that the decision to prosecute Plaintiff was made by persons unrelated to the 1997 lawsuit and was consistent with treatment of other HPD investigations.  (Id.)

A.     "Retaliatory Prosecution"

In its renewed motion, Defendant mischaracterizes the nature of the claim that was submitted to the jury.  Defendant argues that Plaintiff did not plead and prove the absence of probable cause, resulting in "the jury finding retaliatory prosecution without a legally sufficient evidentiary basis for a retaliatory prosecution claim."  (Mot. at 11.)  Contrary to Defendant's characterization, the jury did not find "retaliatory prosecution" and did not need to find "malicious actions of any government officials" in the Title VII employment retaliation claim. The jury was instructed to find whether there had been a violation of Title VII, not to find whether there had been malicious prosecution, because the only count submitted to the jury was a Title VII claim.  The malicious prosecution claims, which had been brought solely against individual defendants and not against the County, were dismissed before the case was submitted to the jury.  The jury was also not evaluating a 42 U.S.C. § 1983 against an individual.

Defendant places great emphasis on the fact that the ultimate decision to prosecute Plaintiff for the 2005 record-removal incidents rested with prosecutor Chris Van Marter and not with HPD.  (Mot. at 7-16.)  This may be true, but this fact does not render the County immune from a Title VII claim.  Furthermore, even removing the prosecution issue entirely, Plaintiff pled five other adverse actions.

10

As discussed above, these other actions were all internal HPD actions:  an Internal Affairs administrative investigation, administrative leave with pay for three days, return of HPD-issued vehicle and equipment, HPD facilities restriction for approximately three days, and transfer to a different division within the HPD.

This Court adopted the Ninth Circuit's Model Jury Instruction 10.3 "Title VII–Retaliation" and presented it to the jury as Plaintiff's sole cause of action against Defendant.  See Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions 220 (2007 ed.).  This Court's Instruction No. 13 instructed the jury, in pertinent part, that Plaintiff must prove by a preponderance of the evidence:

1.    The Plaintiff engaged in or was engaging in an activity protected under federal law, that is the filing of a 1997 lawsuit against the City and various current and former Honolulu Police Department employees;

2.    The City subjected Plaintiff Black to an adverse employment action; and

3.    Plaintiff Black's protected activity was a motivating factor in the adverse employment action.

(Doc. # 264 at 14.)  This "adverse employment action" was in turn defined in the Court's Instruction No. 14:

11

> For purposes of Plaintiff Black's retaliation claim, an action is an "adverse employment action" if a reasonable employee would have found the action materially adverse, which means that it might have dissuaded a reasonable employee from making or supporting a charge of discrimination or otherwise engaging in a protected activity. For example, actions such as firing, demoting, imposition of a burdensome work schedule, suspension, exclusions from meetings, and cuts in salary, might constitute an adverse employment action. Other conduct, such as ostracism by co-workers, "badmouthing" an employee, and a transfer where a salary was unaffected, may not constitute adverse employment action. The action(s) at issue must produce an injury or harm.

(Doc. # 264 at 15.)  This instruction was derived from the Ninth Circuit's Model Jury Instruction 10.4A.1 "Title VII–'Adverse Employment Action' in Retaliation Cases." Manual of Model Civil Jury Instructions, at 226.  The examples given in this instruction are taken from Ninth Circuit precedent. Id. at 226-27.  The jury need not have even considered the criminal prosecution, and its verdict can be upheld on administrative actions alone.

There is absolutely no evidence to support Defendant's claim that "[t]he jury essentially found in Plaintiff's favor not based upon legally sufficient evidence presented at trial, but out of sympathy for the Plaintiff having been prosecuted by a prosecutor who may have appeared to the jury to be overzealous in his prosecution." (Mot. at 15.)  It is entirely unclear to this Court why Defendant concludes that it "was found liable for retaliatory prosecution because the jury did

not like Van Marter's decision to prosecute Plaintiff." (Id.)  Defendant was not

found liable for retaliatory prosecution.  Defendant's analysis entirely misses the

mark.

Defendant's entire theory is premised on misapplication of Supreme

Court precedent from Hartman v. Moore, 547 U.S. 250 (2006).  Hartman involved

"a Bivens action against criminal investigators for inducing prosecution in

retaliation for speech."  Id. at 252; see Bivens v. Six Unknown Fed. Narcotics

Agents, 403 U.S. 388 (1971).  The plaintiff brought a Bivens action against the

Assistant U.S. Attorney and certain postal inspectors, who allegedly initiated

criminal prosecution in retaliation for the plaintiff's criticism of the Postal Service,

in violation of the First Amendment to the U.S. Constitution.  Hartman, 547 U.S. at

254.  The Supreme Court addressed whether evidence of lack of probable cause

was required in 42 U.S.C. § 1983 claims and in Bivens retaliatory prosecution.  Id.

at 256.  The Supreme Court concluded that an absence of probable cause must be

pleaded and proven by a plaintiff in a Bivens retaliatory prosecution claim.  Id. at

266.

"Bivens established that the victims of a constitutional violation by a

federal agent have a right to recover damages against the official in federal court

despite the absence of any statute conferring such a right."  Hartman, 547 U.S. at

13

255 n.2 (quoting <u>Carlson v. Green</u>, 446 U.S. 14 (1980)).  <u>Bivens</u> can be analogized to the parallel action against state and local officers under section 1983.[2]

Plaintiff's allegation that Defendant suggested criminal charges was one of six adverse actions Plaintiff submitted as evidence in support of her Title VII employment retaliation claim.  This does not somehow turn Plaintiff's cause of action against Defendant into a malicious or retaliatory prosecution claim.  In fact, as stated above, all malicious prosecution claims were dismissed either before or during trial, and there <u>never was</u> a malicious or retaliatory prosecution claim against the County.

Moreover, as Defendant notes, the Supreme Court recognizes that retaliation claims based upon retaliatory prosecution differ from other retaliation claims.  The case at hand is, in fact, an "other" retaliation claim.  It is a Title VII employment retaliation claim, with numerous administrative retaliation actions allegedly committed by Defendant in addition to an allegation that County

---

[2]  It is true that the Title VII standard for what constitutes an "adverse action" has been applied to some retaliation cases brought under section 1983. <u>E.g.</u>, <u>Zelnik v. Fashion Institute of Technology</u>, 464 F.3d 217, 227 (2nd Cir. 2006); <u>see also</u> <u>Acosta v. Chino Unified School District</u>, 15 F.3d 1082, 1994 WL 35523, at *3 n.2 (9th Cir. Feb. 8, 1994).  But this interplay is limited to what types of acts may count as "actionable retaliation"; in other words, what "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  464 F.3d at 227.  A Title VII claim is not interchangeable with a section 1983 or <u>Bivens</u> action, they each have their own requirements.

personnel suggested criminal prosecution.  Even assuming the jury did not agree

with Plaintiff's particular evidence about suggestions for criminal prosecution,

there was evidence of five other administrative retaliation actions upon which the

jury could have based its finding.

Defendant's insistence that Plaintiff was required to prove absence of

probable cause for Plaintiff's Title VII employment claim is therefore without

merit.

B.    Internal Affairs Investigation

Plaintiff alleged that she was subjected to an Internal Affairs

administrative investigation, placed on administrative leave with pay for three

days, was required to return her HPD-issued vehicle and equipment, had access to

HPD facilities restricted for approximately three days until August 29, 2005, and

was transferred to a different division within the HPD during the Internal Affairs

investigation.

Defendant now argues that a reasonable jury could not find for

Plaintiff with respect to the investigation by Internal Affairs.  (Mot. at 19.)

Defendant argues that the investigation by Internal Affairs cannot be considered an

"adverse employment action" at all.

15

Plaintiff counters that the claim was not about the mere existence of the investigation, but that personnel made "deceitful statements" that "caused the investigation." (Opp'n at 26.) At trial, Plaintiff presented arguments and evidence to show that personnel involved with recommending the investigation essentially fabricated policies or dishonestly testified to whether Plaintiff had permission to do certain activities. The Court will not make credibility determinations or weigh evidence. The jury apparently found Plaintiff's evidence more credible than the explanation given by Defendant about initiating the investigation and resulting ancillary actions. It was not unreasonable for the jury to agree with Plaintiff that the "legitimate" reasons for the investigation were merely pre-textual.

The Court finally notes that, even assuming <u>arguendo</u> that both the suggestion to prosecute and the Internal Affairs investigation were not sufficient evidentiary grounds for the jury to find that an adverse action was taken, there were four other grounds upon which the jury would have been justified to find for Plaintiff. These other alleged adverse employment actions were: being placed on administrative leave with pay for three days, being required to return her HPD-issued vehicle and equipment, having restricted access to HPD facilities, and being transferred to a different division within the HPD. These are disciplinary actions, not merely investigations. As discussed above, these type of employment actions

16

can be considered "adverse" under Ninth Circuit precedent, and are grounds upon which a plaintiff may prevail should the plaintiff demonstrate that an improper reason was a motivating factor in that employment action. E.g., Ray v. Henderson, 217 F.3d 1234, 1241 (9th Cir. 2000) (discussing adverse employment actions including, inter alia, a lateral transfer).

For clarity, the Court reiterates that Plaintiff had one theory of liability–adverse employment action in violation of Title VII–but listed a variety of adverse actions as evidence. Defendant disputes two of these adverse actions, but does not specifically dispute the remaining four. These other four actions are evidence of "adverse employment actions," and in this sense the prosecution and investigation were cumulative. See Hill v. Rolleri, 615 F.2d 886, 890 (9th Cir. 1980) (when a district errs in admitting evidence, the error may be harmless if that evidence was merely cumulative of other admissible evidence). These other four actions alone are sufficient evidence to support the jury's verdict. Accordingly, Defendant has not met its burden to show that it is entitled to judgment as a matter of law.

C.    Decisions by Glen Kajiyama

Defendant's final argument is that a reasonable jury would not find for Plaintiff with respect to decisions made by then-Deputy Chief Glen Kajiyama.

17

(Mot. at 21.)  This argument appears to be comprised of three prongs, but the reasoning is somewhat convoluted.

First, Defendant asserts that "Plaintiff admitted that [Kajiyama] bore her no malice."  (Mot. at 21.)  Defendant's purpose in making this statement is not clear to this Court, as the malicious prosecution claim against Kajiyama was dismissed.  "Malice" is no longer at issue.

The second component to Defendant's argument seems directly related to the issue of the Internal Affairs investigation, which was discussed above.  Plaintiff's argument was that the accusations of wrongdoing and resulting investigation were not according to regular protocol but instead based on fabricated and deceitful statements.  Defendant insists that Plaintiff was treated no differently than others who are investigated, but again, the issue in this Title VII claim was whether Plaintiff's protected activity was a <u>motivating factor</u> in those employment actions, not only whether those actions were standard.

Third, Defendant argues that there was an insufficient evidentiary basis for the jury to find causation because approximately eight years passed between the filing of Plaintiff's 1997 lawsuit and the adverse employment actions.  (Mot. at 24.)  Defendant oversimplifies the sequence of events.  In 1997, Plaintiff

filed a sexual harassment lawsuit involving her employment with HPD.  The

lawsuit resulted in a settlement in November 2001, which included a cash payment

to Plaintiff.  The settlement agreement placed various three-year obligations on the

parties that expired in November 2004.  The expiration of these obligations in

November 2004 was approximately ten months before Defendant initiated the

various adverse employment actions against Plaintiff.  Plaintiff's theory of the case

was, in essence, that Defendant initiated adverse employment actions against

Plaintiff as soon as Defendant could after the settlement obligations expired.

According to Plaintiff, it is the ten month span that is significant, not the eight year

span.

Defendant cites to <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054

(9th Cir. 2002), in which the Ninth Circuit held that a "nearly 18-month lapse

between protected activity and an adverse employment action is simply too long,

by itself, to give rise to an inference of causation."  <u>Id.</u> at 1065.  In <u>Villiarimo</u>, the

Ninth Circuit found the plaintiff's Title VII claim to be without merit because the

employee's termination occurred 18 months after the sexual harassment complaint.

The Ninth Circuit did <u>not</u> hold that proximity in time is the only way a

plaintiff may show causation.  <u>See id.</u>  Plaintiff in this case did not rely solely on

the proximity of the adverse actions and the lawsuit.  The thrust of Plaintiff's

argument was that the employer's explanation for the adverse employment actions

was pre-textual, which is a separate basis upon which Plaintiff can demonstrate

causation.  See Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003).

The jury simply did not find Defendant's explanations credible.  The

jury responded on the Special Verdict Form that Plaintiff's 1997 lawsuit played a

role in Defendant's decision to take the alleged adverse employment actions.  It is

not permissible under Title VII for Defendant to take action, even in part, based on

a person's protected activities.  Drawing all reasonable inferences in favor of

Plaintiff, this Court does not conclude that judgment as a matter of law is

warranted.  Accordingly, Defendant's Renewed Motion for Judgment as a Matter

of Law is DENIED.

II.    Motion for a New Trial

Defendant argues, in the alternative, that a new trial is warranted

because:  (1) the verdict is against the weight of evidence; (2) there was clear error;

(3) the trial was not fair to Defendant; and (4) the damages are excessive.  (Mot. at

16.)  In evaluating a motion for new trial, this Court will not weigh the

evidence in a light more favorable to either party.  <u>Landes Constr. Co.</u>, 833 F.2d at 1371.

Defendant again argues that the County has been "held liable with respect to the retaliatory prosecution claim without any evidence of the absence of probable cause to prosecute."  (Mot. at 17.)  Again this Court clarifies that the County was not found liable for retaliatory prosecution.  As such, the Defendant's arguments that the verdict is against the weight of evidence, that there was clear error, and that the trial was not fair, based on "retaliatory prosecution," are meritless.

Finally, Defendant argues that a new trial is warranted because the damages are excessive.  (Mot. at 17.)  The jury awarded Plaintiff $150,000 in damages for emotional distress.[3]

---

[3] In her Opposition, Plaintiff states that Plaintiff asked for $6,000,000 and "only received $150,000."  (Opp'n at 24.)  For the record, the Court notes that damages for Title VII violations are subject to a statutory cap under 42 U.S.C. 1981a(b)(3), and $6,000,000 would have been reduced by the Court post-verdict had that amount been awarded.  It is also outrageous that Plaintiff's counsel is accusing this Court of interfering with counsel's "strategy."  (Opp'n at 25.)  Counsel had planned on forbidding Plaintiff from attending her own trial.  Plaintiff has a right to be present at her own trial.  The Court did not "cost Plaintiff about $1,000,000 in damages."  (<u>Id.</u> at 26.)

Defendant's primary reason that the damages are excessive, that

"Plaintiff herself caused the alleged actions," is entirely conclusory.  Defendant

also confuses a plaintiff's burden to prove either general or special damages.

Expert medical testimony is not necessary to award emotional distress damages.

See In re Haw. Fed. Asbestos Cases, 734 F. Supp. 1563, 1568 (D. Haw. 1990).

Special damages, including medical and hospital expenses, loss of earnings, and

diminished capacity to work, must be specifically alleged and proved.  Dunbar v.

Thompson, 79 Hawaii 306, 315 (1995).  General damages, including physical or

mental pain and suffering, do not need to be specifically proved with monetary

values.  Id.  A plaintiff is not required to offer corroborating medical evidence in

order to establish emotional distress damages.  See In re Dawson, 390 F.3d 1139,

1149-50 (9th Cir. 2004).  Medical doctor testimony may be used to establish

emotional damages, but a plaintiff can also establish emotional distress damages

through non-expert testimony or even without evidence if "the circumstances make

it obvious that a reasonable person would suffer significant emotional harm."  Id.

at 1150.  "Compensatory damages may be awarded for humiliation and emotional

distress established by testimony or inferred from the circumstances,

whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms." Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1086 (9th Cir. 2009) (citation omitted).

The Court's Instruction No.19 on emotional damages read:

> Hawaii law does not permit recovery of damages for transitory and trivial emotional distress alone.  The law recognizes that emotional distress of a trivial and transient nature is part and parcel of every day life.  Hawaii Law requires a showing by the Plaintiff of genuine and serious emotional distress.
> Serious emotional distress may be found where a reasonable person would be unable to adequately cope with the emotional stress caused by the circumstances of the case.

(Doc. # 264 at 20.)  The jury was therefore duly informed that the distress must be serious before damages may be awarded.

Testimony during trial detailed the extent of Plaintiff's emotional distress she experienced as a result of the adverse employment actions.  (Opp'n at 25.)  The Court concludes that the jury's verdict is not against the clear weight of the evidence, nor is the damage award "'grossly excessive or monstrous, clearly not supported by the evidence or based only on speculation or guesswork.'" Funai

Elec. Co. v. Daewoo Electronics Corp., 593 F. Supp. 2d 1088, 1093 (N.D. Cal. 2009) (citing DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1309 (Fed. Cir. 2006)).

Accordingly, Defendant's Motion for a New Trial is DENIED.

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Renewed Motion for Judgment as a Matter of Law and/or in the Alternative Motion for New Trial.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, _November 25, 2009.

_____
David Alan Ezra
United States District Judge

Black v. City and County of Honolulu, CV No. 07-00299; ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL

24