IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SHARON BLACK,                    )      CIVIL NO. 07-00299 DAE-LEK
                                 )
          Plaintiff,             )
                                 )
     vs.                         )
                                 )
CITY AND COUNTY OF HONOLULU,     )
                                 )
          Defendant.             )
_____  )


**REPORT OF SPECIAL MASTER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES
AND DEFENDANT'S OBJECTIONS TO PLAINTIFF'S MOTION FOR COSTS**

          Before the Court, pursuant to a designation by United

States District Judge David Alan Ezra, are Plaintiff

Sharon Black's ("Plaintiff") Motion for Attorney Fees ("Motion"),

filed on October 30, 2009, as amended by Plaintiff's supplement

("Supplement") filed on November 23, 2009, and Defendant City and

County of Honolulu's ("the City") Objections and Memorandum in

Opposition to Plaintiff's Motion for Costs ("Objections"), filed

December 22, 2009.  Plaintiff filed her Motion for Costs on

December 15, 2009.  This Court construes Plaintiff's Motion for

Costs as her Bill of Costs.  Plaintiff requests an award of

$312,630.00 in attorneys' fees, $14,731.13 in general excise tax,

and $8,395.00 in non-taxable costs.[1]  In the Bill of Costs,

Plaintiff requests $13,342.10 in taxable costs.  The City filed

_____

          [1] The Supplement amends the Motion's original request of
$319,883.00 in attorneys' fees and $23,492.00 in non-taxable
costs.

its memorandum in opposition to the Motion on December 4, 2009,
and Plaintiff filed her reply on December 19, 2009.  The Court
finds these matters suitable for disposition without a hearing
pursuant to Rule LR7.2(d) of the Local Rules of Practice of the
United States District Court for the District of Hawai`I ("Local
Rules").  After reviewing the parties' submissions and the
relevant case law, the Court FINDS AND RECOMMENDS that
Plaintiff's Motion be GRANTED IN PART AND DENIED IN PART, and
that the City's Objections to Plaintiff's Bill of Costs be
GRANTED IN PART AND DENIED IN PART.  The Court RECOMMENDS that
the district judge GRANT Plaintiff $92,827.71 in attorneys' fees
and DENY Plaintiff's request for non-taxable costs.  The Court
also RECOMMENDS that the district judge tax $7,159.32 in costs
against the City and in favor of the City and DENY the remainder
of Plaintiff's requested costs WITHOUT PREJUDICE.

## BACKGROUND

On June 1, 2007, Plaintiff filed her Complaint against
Defendants Boisse Correa, City and County of Honolulu-Honolulu
Police Department ("HPD"), Glen Kajiyama, Stephen Watarai, Kevin
Lima, Carlton Nishimura, Owen Harada, William Axt, City and
County of Honolulu-Medical Examiners Office ("MEO"), Kanthi De
Alwis, William W. Goodhue, Gayle Suzuki, Alicia Kamahele, City
and County of Honolulu-Human Resources Department ("HRD"), Denise
Tsukayama, Institute for Human Services ("IHS"), Lynn Maunakea,

2

City and County of Honolulu-Prosecuting Attorney Department ("PAD"), Chris Van Marter, Hawaii Government Employees Association ("HGEA"), Lee Matsui, and Mufi Hannemann, Mayor of the City and County of Honolulu.

Plaintiff was hired by HPD in 1992 as a project coordinator.  Her duties included researching mental health issues.  Plaintiff is a member of HGEA.  Plaintiff filed a sexual harassment lawsuit in August 1997.  Defendant Correa, the HPD Chief of Police, was one of the defendants in the sexual harassment action.  The action was settled in November 2001.  The settlement agreement provided for a $612,500.00 cash payment to Plaintiff.  The agreement included various obligations which expired in November 2004 and various other continuing obligations.  In the instant action, Plaintiff alleges that HPD began a "program of harassment" against her in October 2004 in retaliation for filing the sexual harassment action.

On or about May 2005, Defendant Harada gave Plaintiff an assignment to investigate the wait time for HPD officers at Queens Hospital.  During this assignment, Plaintiff became concerned about the number of suicidal people who, after being escorted to Queens Hospital by HPD officers, committed suicide shortly after being released from Queens Hospital.  Plaintiff, who had previously conducted authorized research at the MEO, called and asked for permission to conduct research about the

suicides.   Defendants De Alwis and Kamahele asked Plaintiff to put her request in an e-mail.   Defendant De Alwis wrote back to Plaintiff, giving her permission to conduct research and providing her with extensive confidential information about the suicides.   The e-mail was sent to both Plaintiff's work and home e-mail.   Plaintiff conducted research at MEO from June 2005 through August 2005, with the assistance, and in full view of, various MEO staff.   Plaintiff alleged that none of the MEO staff informed her of any security procedures.

On August 4, 2005, Defendant Kamahele accused Plaintiff of unauthorized printing.   Plaintiff returned the printed documents the next day.   Defendant De Alwis subsequently made an oral complaint to Defendant Kajiyama about Plaintiff's printing of documents.   The complaint led to an administrative investigation and criminal charges of unauthorized computer access and theft in the fourth degree for unauthorized copying. Plaintiff was tried and acquitted of both charges.   Plaintiff alleged that the charges were based on fraudulent statements by HPD and MEO personnel and were caused by negligent supervision within HPD and the negligent information security policies of MEO.

The Complaint alleged the following claims: negligence against the MEO and MEO agents regarding the maintenance of confidential information ("Count 1"); negligent supervision

4

against the HPD and HPD agents ("Count 2"); negligent hiring, training, and supervision against HPD, HPD agents, and Mayor Hannemann ("Count 3"); negligent hiring, training, and supervision against MEO and MEO agents ("Count 4"); breach of contract against HGEA and Defendant Matsui for failure to investigate and represent Plaintiff in the incidents at issue in this case ("Count 5"); negligent infliction of emotional distress ("NIED") against HPD, MEO, HGEA, Mayor Hannemann, and their agents ("Count 6"); defamation against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter ("Count 7"); conspiracy against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, Van Marter, HRD, and Tsukayama ("Count 8"); interference with business relationship against Defendants IHS, Maunakea, HPD, and HPD agents ("Count 9");[2] retaliatory breach of employment contract against HPD and HPD agents ("Count 10"); retaliatory breach of the 2001 settlement agreement against Defendants HPD, Correa,

---

[2] Plaintiff alleged that HPD and its agents knew that she was involved with feeding the homeless on her personal time and that HPD agents reported derogatory information about her to IHS. IHS, through Defendant Maunakea, the director of IHS, revoked her authorization to use the IHS cooking facilities. Plaintiff alleged that Defendant Maunakea knew or should have known the accusations HPD informed her of were false, pretextual, and retaliatory. Plaintiff also alleged that Defendant Maunakea treated her more harshly than other persons who used the IHS cooking facilities.

Kajiyama; Watarai; Lima; Nishimura, Harada, Axt, HRD, and
Tsukayama ("Count 11");[3] sexual harassment against HPD and agents
of HPD ("Count 12"); retaliation against Defendants HPD, Correa,
Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt ("Count 13");
a 42 U.S.C. § 1983 claim for violation of her First Amendment
right to petition the government against HRD and Tsukayama
("Count 14"); a § 1983 claim for violation of her First Amendment
and Fourteenth Amendment right to file a lawsuit against
Defendants HPD, Correa, Kajiyama, Watarai, Lima, Nishimura,
Harada, and Axt ("Count 15"); a § 1983 claim for violation of her
First Amendment right to association against Defendants MEO, De
Alwis, Goodhue, Suzuki, and Kamahele ("Count 16"); § 1983 claims
for violations of her Fourth Amendment right to be free from
arrest and from prosecution without probable cause, and
violations of her equal protection rights against Defendants HPD,
Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De
Alwis, Goodhue, Suzuki, Kamahele, and Van Marter ("Count 17",
"Count 18", and "Count 19"); intentional infliction of emotional
distress ("IIED") against all defendants ("Count 20"); a claim
for punitive damages against all defendants ("Count 21"); and a
claim for injunctive relief against Defendants Hannemann, HPD,

---

[3] Plaintiff alleged that the 2001 settlement agreement
required HPD to correct and prevent harassment.  Defendant
Tsukayama, as the representative of HRD, was responsible for
investigating any breaches of these duties.

6

MEO, and PAD ("Count 22").  Plaintiff sought: back wages and
benefits; reinstatement, "instatement", promotion, or front pay
in lieu of job changes; general damages; compensatory damages;
exemplary/punitive damages; attorney's fees and costs; injunctive
relief; declarative relief; and any other appropriate relief.

Defendants HPD, MEO, HRD, Tsukayama, PAD, and Mayor
Hannemann ("City Defendants") filed a motion to dismiss on
July 11, 2007, and Defendants De Alwis, Goodhue, Suzuki, and
Kamahele ("Joinder Parties") filed a substantive joinder thereto
on July 18, 2007.  Defendants HGEA and Matsui ("HGEA Defendants")
filed a motion to dismiss on July 23, 2007, and Defendants
Correa, Kajiyama, and Nishimura ("Correa Defendants") filed a
motion to dismiss on July 25, 2007.  On September 20, 2007, the
district judge issued an order granting the HGEA Defendants'
motion and granting in part and denying in part the City
Defendants' motion and the Correa Defendants' motion.[4]  Thus, the
HGEA Defendants and Mayor Hannemann were dismissed from the
action;[5] Counts 6, 8, 9, 10, 12, 14, 17, 18, and a portion of 13
were dismissed, and Counts 11, 14, 15, 19, and 21 were stricken
as redundant.

On October 31, 2007, the parties stipulated to dismiss

---

[4] The district judge issued an amended order on October 30,
2007.

[5] The parties also stipulated to dismiss all claims against
the HGEA Defendants with prejudice on October 31, 2007.

all claims against Defendants IHS and Maunakea with prejudice.

On November 9, 2007, pursuant to stipulation, Plaintiff filed her First Amended Complaint.[6]  The First Amended Complaint replaced HPD, MEO, HRD, and PAD with the City, and added Defendant Wayne Hashiro, in his official capacity, for purposes of injunctive relief.  The First Amended Complaint alleged the following claims: negligence against Defendants the City, De Alwis, Goodhue, Suzuki, and Kamahele for MEO's information security policy ("Count 1"); negligent acts during supervision against Defendants the City, Lima, Nishimura, Harada, and Axt ("Count 2"); negligent hiring, training, and supervision against Defendants the City and Hashiro ("Count 3"); NIED against Defendants Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, and Kamahele ("Count 4"); defamation against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, and Van Marter ("Count 5"); conspiracy against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, Van Marter, and Tsukayama ("Count 6"); retaliation in violation of various laws, including Hawai`I Revised Statutes § 378-62 and Title VII, against Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, and Axt ("Count 7");  a § 1983 claim for

---

[6] On November 10, 2007, Plaintiff filed an Errata to the First Amended Complaint to correct or clarify various matters.

violation of her First Amendment right to association against Defendants MEO, De Alwis, Goodhue, Suzuki, and Kamahele ("Count 8"); a § 1983 claim/malicious prosecution claim for violation of her right to be free from prosecution without probable cause ("Count 9"); IIED against all defendants ("Count 10"); a request for injunctive relief ("Count 11").

On November 19, 2007, Defendants Correa, Kajiyama, Watarai, Lima, Nishimura, Harada, Axt, De Alwis, Goodhue, Suzuki, Kamahele, Tsukayama, Van Marter, and Hashiro filed a Motion to Dismiss Pursuant to Rule 12(b)(6); or Alternatively, Motion for More Definite Statement Pursuant to Rule 12(e); or, Alternatively, Motion to Strike Pleadings Pursuant to Rule 12(f). On January 22, 2008, the district judge issued an order granting the motion in part and denying it in part. The district judge dismissed the portions of Count 7 alleging violations of 42 U.S.C. §§ 1981, 1985, and 1986; and the portion of Count 8 alleging a claim against the City. The district judge also noted that Plaintiff agreed to delete Count 11.

On August 18, 2008, the district judge issued his Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment ("Summary Judgment Order"). The district judge granted summary judgment in favor of all defendants as to Counts 4, 6, and 8. The district judge granted summary judgment in favor of Defendants Axt and Suzuki as to all claims against them

because Plaintiff conceded that she did not have any evidence against them.  The district judge also granted summary judgment in favor of: Defendant Van Marter as to all claims against him; Defendants Lima, Watarai, Nishimura, and Harada as to Plaintiff's § 378-62 claim; and Defendants De Alwis, Goodhue, Kamahele, Tsukayama, Hashiro, Harada, the MEO, and Lima as to Plaintiff's IIED claim.

On October 31, 2008, Defendants filed a Motion to Dismiss for Lack of Jurisdiction.  On February 2, 2009, the district judge issued and order granting the motion in part and denying it in part without prejudice.  The district judge dismissed Plaintiff's negligence based claims (Counts 1, 2, and 3), the portion of Count 7 alleging § 1983 constitutional claims, and Count 10, Plaintiff's IIED claim.  The motion was denied without prejudice as to Count 5 - Plaintiff's defamation claim, Count 9 - Plaintiff's malicious prosecution claim, and the portions of Count 7 alleging retaliation in violation of § 378-62 and Title VII.

Defendants filed another motion for summary judgment on April 3, 2009.  On June 22, 2009, the district judge issued an order granting the motion in part and denying it in part.  The district judge granted summary judgment in favor of Defendants as to Count 5 and the portion of Count 7 alleging retaliation in violation of § 378-62.  The district judge also granted summary

judgment in favor of Defendants Kamahele, Goodhue, De Alwis, Watarai, Lima, Nishimura, and Harada as to Count 9.  The district judge denied summary judgment as to Count 9 against Defendants Correa and Kajiyama and as to the portion of Count 7 alleging retaliation in violation of Title VII against the City.

A jury trial began on October 6, 2009.  On October 9, 2009, the district judge granted the defense's oral motions to dismiss Defendants Correa and Kajiyama and denied the City's motion to dismiss the Title VII claim.  Thus, only Plaintiff's Title VII claim was submitted to the jury.  On October 16, 2009, the jury returned a verdict in favor of Plaintiff and awarded Plaintiff $150,000.00 in emotional damages.  Final judgment was entered on October 27, 2009 in favor of Plaintiff and against the City with respect to her Title VII retaliation claim and in favor of Defendants as to all other counts.

On October 26, 2009, the City filed a Renewed Rule 50(b) Motion for Judgment as a Matter of Law and/or in the Alternative Rule 59 Motion for New Trial ("Rule 59 Motion").  The district judge denied the motion in a November 25, 2009 order.

In the instant Motion, Plaintiff argues that she is the prevailing party pursuant to 42 U.S.C. § 2000e-5(k) and seeks $319,883.00 in attorney's fees and $23,493.00 in non-taxable costs.  The requested fees represent 1,163.21 hours at $275 per hour.  Plaintiff contends that the requested hourly rate and the

number of hours expended are reasonable because the action was difficult to litigate due to the lack of direct evidence, the prominent positions some of the defendants have in the community, and the communication difficulties between Plaintiff and her counsel, Mark Beatty, Esq.  Further, although Mr. Beatty has only been practicing law since 2004, he has significant other experiences that contributed to the case.  Plaintiff argues that her jury verdict on the Title VII claim against the City essentially proved the claims of defamation, conspiracy, and retaliation which she alleged against the other defendants.  Plaintiff also argues that a higher award of attorney's fees is warranted because her action achieved a meaningful public benefit.  As to the request for non-taxable costs, Plaintiff argues that Mr. Beatty is entitled to $8,395.00 that he incurred to attend two conferences during which he consulted with experienced attorneys about Plaintiff's case.  He also requests $15,098.00 in general excise taxes on his attorney's fees as a non-taxable expenses.

        In her Supplement, Plaintiff clarifies that Mr. Beatty received his law degree in June 2004,[7] he worked as an intern at the River of Life legal clinic from August 2001 to June 2003 and

---

[7] The Supplement states June 2006, but this is apparently a typographical error because the Hawaii State Bar Association website states that Mr. Beatty was admitted to the bar in June 2004.

12

he filed a federal action as a pro se litigant in May 2001.  The case was decided on summary judgment and appealed to the Ninth Circuit.  Plaintiff asks the Court to consider Mr. Beatty's legal experience before he was admitted to the Hawai`I bar.  Plaintiff argues that $175 per hour is a reasonable hourly rate for Mr. Beatty, and there are other reasons which warrant increasing the rate further.  Plaintiff points to the two conferences which Mr. Beatty attended and states that experienced experts helped him come up with a trial strategy during the conference sessions. This was the trial strategy Mr. Beatty used at trial.  Plaintiff also argues that Mr. Beatty is entitled to a higher rate because he took the case on a contingency basis, which has inherent risks.

Plaintiff also supplements the attorney's fee request in the Motion to include work done by Bruce Sherman, Esq. Plaintiff also amends her request to seek a total of 1,124.71 hours for Mr. Beatty.  Mr. Beatty deducted various hours for work done on the claims against the HGEA Defendants and for hours which he could not provide supporting information.  Mr. Beatty also added time spent on post-trial motions.  Thus, Plaintiff's amended request is as follows:

Attorney Fees for Mark Beatty          $309,897.50[8]

---

[8] The Court notes that there was a mathematical error in Mr. Beatty's calculation of his total hours.  The Court has corrected
(continued...)

| | |
|---|---|
| GE taxes for Mark Beatty | $ 14,602.37 |
| Attorney Fees for Bruce Sherman | $  2,732.50 |
| GE taxes for Bruce Sherman | $    128.76 |
| Non taxable Expenses for Mark Beatty | $  8,395.00 |
| Total | $335,756.13 |

[Supplement at 10; Exh. 10 to Decl. of Mark Beatty ("Beatty Suppl. Decl.").]

In its memorandum in opposition to the Motion, the City argues that the Court should consider awarding no attorney's fees to Plaintiff because her fee request "is grossly inflated and filed in bad faith." [Mem. in Opp. at 2.]  The City argues that the claim which Plaintiff prevailed on was only a small portion of her case.  The original Complaint named twenty-two defendants, alleged twenty counts, and was ninety-one pages long.  Further, her claims against the HGEA Defendants and IHS and Maunakea ("IHS Defendants") were wholly distinct from her claims against the other defendants.  Plaintiff agreed to dismiss the claims against the HGEA Defendants and the IHS Defendants with prejudice. Plaintiff's First Amended Complaint, as amended by her errata, alleged ten claims.  Only two claims went to trial, the Title VII retaliation claim against the City, and the malicious prosecution claim against Defendants Correa and Kajiyama.  Plaintiff only prevailed on her claim against the City.  The City argues that Plaintiff inflated the fees incurred in this case by overly

---

[8](...continued)
the error and adjusted Plaintiff's request accordingly.

complicating the claims alleged.

The City also contends that Mr. Beatty unnecessarily prolonged the case with unrealistic settlement demands.  He repeatedly alleged that the case was worth millions.  At trial, he requested general damages between $200,000.00 and $300,000.00.  The jury only awarded $150,000.00.  Further, the City argues that the significant problems between Plaintiff and Mr. Beatty unnecessarily increased the fees in this case.

The City argues that the following specific time entries should be excluded in their entirety: 98.0 hours attending seminars; 31.5 hours attributable to the conflict between Plaintiff and Mr. Beatty; 15.0 hours trying to obtain a restraining order to stop Plaintiff's criminal trial; 42.0 hours spent attending her criminal trial; 34.5 hours representing Plaintiff before the HPD Administrative Review Board; 17.0 hours on an unsuccessful motion for reconsideration; and 7.5 hours or more spent waiting for the jury to return the verdict.  The City further argues that the time for the following tasks is excessive and should be reduced: 7.2 hours writing the attorney-client agreement; 136.5 hours drafting the Complaint and First Amended Complaint; 27.0 hours preparing a settlement brochure; 35.0 hours relating to the opposition to the motion to dismiss filed January 4, 2008; 103.0 hours relating to the opposition to the motion for summary judgment filed July 24, 2008; 9.0 hours

15

relating to a status conference on default judgment; 12.0 hours
preparing settlement conference statements; 103.0 hours preparing
and taking ten depositions; 8.0 hours preparing Plaintiff's
pretrial statement; 16.0 hours compiling trial exhibits; 3.0
hours writing subpoenas for trial witnesses; 19.0 hours billed
per trial day; and 61.5 hours relating to the instant Motion.

         The City argues that the Court should also reduce
Mr. Beatty's time because he did not provide adequate
documentation and because he had to perform all of the tasks that
a secretary or paralegal would normally perform because he does
not have an office staff.  The City also argues that the Court
must reduce Mr. Beatty's time for work done on unrelated,
unsuccessful claims.  Further, the City asserts that the
requested hourly rate is unreasonable.  Plaintiff provides no
support for Mr. Beatty's rate, and he advertises that his hourly
rate for litigation representing plaintiffs in similar cases is
$100 per hour.  Plaintiff has not submitted any evidence of the
prevailing market rate for comparable attorneys.  The attorneys
Plaintiff refers to have more skill and experience than
Mr. Beatty has.  The City also notes that, although Mr. Beatty
was admitted to the bar in June 2004, according to his resume, he
apparently did not begin practicing law until 2006.  Thus, when
he took Plaintiff's case, he had no real legal experience.

         If the Court is inclined to find that attorney's fees

are warranted, the City argues that Plaintiff is entitled to no more than 400 hours at $100 per hour, for a total of $40,000.00. [Mem. in Opp. at 2.]  Plaintiff is not entitled to any upward adjustment because the case should have been a simple Title VII retaliation case, there was no public benefit, the quality of Mr. Beatty's work was not exceptional, and the case did not preclude Mr. Beatty from doing other work.  Finally, the City argues that Plaintiff is not entitled to recover the costs of Mr. Beatty's general education at seminars.

In her reply, Plaintiff states that Mr. Beatty excluded time spent on the claims against the HGEA Defendants, the IHS Defendants, and Mayor Hannemann.  She reiterates that all other claims were subsumed in the Title VII claim, which she obtained significant relief on.  Thus, Mr. Beatty's fees should not be reduced for limited success.  Plaintiff also argues that the City has unclean hands because it never made a good faith settlement offer.  Plaintiff contends that the disputes she had with Mr. Beatty were prompted by the emotional distress which the City caused and that conflicts with clients under emotional distress are part of their representation.  Plaintiff argues that all of the specific entries challenged by the City are compensable and that Mr. Beatty's documentation is adequate.  Finally, Plaintiff concedes that Mr. Beatty advertises a $100 per hour rate, but this is only an entry-level rate for new customers and it is

inapplicable in this case.[9]

**Bill of Costs**

In her Bill of Costs, Plaintiff seeks $13,342.10 in
taxable costs and states that her request was timely filed within
thirty days of the district judge's order on the Rule 59 Motion,
as required by Local Rule 54.2.  Plaintiff argues that all of the
ten witnesses who she deposed played some part in the trial and
Defendants listed all ten as potential trial witnesses, which
Plaintiff argues is an admission that they had relevant
information.  As for her copying costs, Plaintiff states that
counsel made three copies of motion documents, two courtesy
copies for the court and one copy for himself.  For the
Complaint, Plaintiff included three filed copies and the copies
used to serve Defendants.

In its Objections, the City argues that Plaintiff
waived the taxation of costs because her Bill of Costs was
untimely.  The district judge denied the Rule 59 Motion on
November 25, 2009.  According to the current Local Rules, which
took effect on December 1, 2009 and apply to all actions pending
on that date, a party has fourteen days from an order denying a
Rule 59 motion to serve a bill of costs.  Plaintiff's Bill of

---

[9] Plaintiff's reply requests the same award sought in the
Motion, not the adjusted award sought in the Supplement.  This
Court, however, will hold Plaintiff to the concessions she made
in the Supplement.

18

Costs was therefore due on December 9, 2009, but she did not file it until December 15, 2009.  The City, however, acknowledges that the district court may apply the previous version of the Local Rules when justice requires.

The City also objects because the Bill of Costs does not contain a verification that the costs were necessarily incurred in this case.  As to Plaintiff's specific requests, the City objects to the request for videotaped depositions because there was no indication that any of the witnesses would be unavailable for trial.  According to the City, Mr. Beatty informed defense counsel that the reason for the videotaped depositions was so that Plaintiff, who chose not to attend the depositions, could watch them.  The City argues that the costs of videotaping depositions for a client's convenience is not taxable.  The City also argues that the costs of Goodhue's, Tsukayama's, and Axt's depositions should be disallowed in their entirety because they did not testify at trial and the Bill of Costs does not establish that those deposition transcripts are taxable.  The City states that the only reason it included those witnesses on its witness list was because Plaintiff included them in his pretrial statement.  The City contends that the inclusion was not an admission that those witnesses had relevant information for trial.  The City also objects to the additional cost of condensed and electronic deposition transcripts.

19

The City argues that the $150 cost for autopsy reports and the costs to serve the Complaint on all of the individual defendants were not necessarily incurred.  Finally, the City contends that Plaintiff's copying costs were not necessarily incurred because documents were longer than they needed to be. For example, Plaintiff had 1,337 pages of trial exhibits, but only admitted 70 pages at trial.

**DISCUSSION**

## I.   **Entitlement to Attorneys' Fees**

The jury found in favor of Plaintiff on her Title VII retaliation claim against the City and awarded her $150,000.00 in damages.  Title VII provides that, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs[.]"  42 U.S.C. § 2000e-5(k). Plaintiff is clearly the prevailing party as to her Title VII claim because the judgment based on the jury verdict constitutes a "judicially sanctioned change in the legal relationship of the parties."  See Buckhannon Bd. & Care Home, Inc. v. W. Vir. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001).  Plaintiff is therefore eligible for an award of attorneys' fees pursuant to § 2000e-5(k).

The City argues that Plaintiff should not receive any award because her request is grossly inflated, indicating bad

20

faith.  Attorneys' fee awards are not mandatory in Title VII cases.  See § 2000e-5(k) (stating that the court "may allow the prevailing party . . . a reasonable attorney's fee" (emphasis added)).  This Court agrees with the City that Mr. Beatty's requested hourly rate and number of hours expended are not reasonable.  See Section II.A. and B. *infra*.  The Court, however, does not find the requested award to be so grossly exaggerated as to indicate bad faith.  The Court therefore FINDS that Plaintiff is entitled to an award of attorneys' fees pursuant to § 2000e-5(k).

The Court, however, notes that Plaintiff is not the prevailing party as to any of the defendants besides the City, nor is she the prevailing party as to any of the other claims against the City.  Plaintiff did not achieve a judicially sanctioned change in any other legal relationship.  Final judgment was entered in Defendants' favor as to all claims except the Title VII claim against the City.  See Local Rule LR54.2(a) ("The party entitled to costs shall be the prevailing party in whose favor judgment is entered[.]").  The Court will address whether Plaintiff's requested award must be reduced to account for her limited success *infra* Section II.C.

## II.  **Calculation of Attorneys' Fees**

Courts calculate attorneys' fee awards in Title VII cases based on the traditional "lodestar" calculation set forth

in <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  <u>See</u>, <u>e.g.</u>,
<u>Bjornson v. Dave Smith Motors/Frontier Leasing & Sales</u>, 578 F.
Supp. 2d 1269, 1285 (D. Idaho 2008).  The court must determine a
reasonable fee by multiplying "the number of hours reasonably
expended on the litigation" by "a reasonable hourly rate."
<u>Hensley</u>, 461 U.S. at 433.  Second, the court must decide whether
to adjust the lodestar amount based on an evaluation of the
factors articulated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526
F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the
lodestar calculation.  <u>See</u> <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d
1115, 1119 (9th Cir. 2000) (citation omitted).

> The factors the Ninth Circuit articulated in <u>Kerr</u> are:
>
> (1) the time and labor required, (2) the novelty
> and difficulty of the questions involved, (3) the
> skill requisite to perform the legal service
> properly, (4) the preclusion of other employment
> by the attorney due to acceptance of the case, (5)
> the customary fee, (6) whether the fee is fixed or
> contingent, (7) time limitations imposed by the
> client or the circumstances, (8) the amount
> involved and the results obtained, (9) the
> experience, reputation, and ability of the
> attorneys, (10) the "undesirability" of the case,
> (11) the nature and length of the professional
> relationship with the client, and (12) awards in
> similar cases.

<u>Kerr</u>, 526 F.2d at 70.  Factors one through five have been
subsumed in the lodestar calculation.  <u>See</u> <u>Morales v. City of San
Rafael</u>, 96 F.3d 359, 364 n.9 (9th Cir. 1996).  Further, the Ninth
Circuit, extending <u>City of Burlington v. Dague</u>, 505 U.S. 557, 567
(1992), held that the sixth factor, whether the fee is fixed or

22

contingent may not be considered in the lodestar calculation.
See <u>Davis v. City & County of San Francisco</u>, 976 F.2d 1536, 1549
(9th Cir. 1992), <u>vacated in part on other grounds</u>, 984 F.2d 345
(9th Cir. 1993).  Once calculated, the "lodestar" is
presumptively reasonable.  See <u>Pennsylvania v. Delaware Valley
Citizens' Council for Clean Air</u>, 483 U.S. 711, 728 (1987); <u>see
also</u> <u>Fischer</u>, 214 F.3d at 1119 n.4 (stating that the lodestar
figure should only be adjusted in rare and exceptional cases).

    Plaintiff requests the following lodestar amount for
work counsel performed on this case:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Mark Beatty | 1126.9 | $275 | $309,897.50 |
| Bruce Sherman | 21.7 | $100 | $ 2,170.00 |
| Bruce Sherman | 4.5 | $125[10] | $ 562.50 |
| | | Subtotal | $312,630.00 |
| | State Excise Tax of 4.712% | | $ 14,731.13 |
| | TOTAL REQUESTED LODESTAR | | <u>$327,361.13</u> |

[Supplement at 10, Exhs. 8-10 to Beatty Suppl. Decl.]  Mr. Beatty
was admitted to the Hawai`I bar in 2004.  Mr. Sherman was
admitted to the Hawai`I bar in 1993, the California bar in 1990,
and the Alaska bar in 1980.  [Exh. 7 to Beatty Suppl. Decl.

---

[10] Plaintiff states that the work agreement between Mr.
Beatty and Mr. Sherman provided that Mr. Sherman's $125 hourly
rate for this case would be reduced to $100 when there was more
than ten hours of work on a particular subject.  [Supplement at
3.]

(Bruce Sherman resume).]

### A.   **Reasonable Hourly Rate**

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. See id.; see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").

In addition to their own statements, attorneys are required to submit additional evidence that the rate charged is reasonable. See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). Plaintiff submitted a 2006 list published by the Pacific Business News of twenty-five Hawai`I law firms, most of which provided the range of hourly rates charged by their partners and associates. [Motion, Exh. 2 to Decl. of Mark Beatty ("Beatty Motion Decl.").] Plaintiff also submitted a declaration from Venetia Carpenter-Asui, Esq., with her reply. The Court, however, notes that Plaintiff could have, and should have, submitted Ms. Carpenter-Asui's declaration with the Motion. This Court generally will not consider new evidence raised in a reply. Even if the Court considered Ms. Carpenter-Asui's declaration, it

would not alter this Court's finding regarding Mr. Beatty's reasonable hourly rate.

This Court is familiar with the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill, and reputation.  The Court is also familiar with the rates awarded to attorneys in other cases. Mr. Beatty was admitted to the Hawai`I bar in 2004.  This Court finds that Mr. Beatty's experiences in the legal field prior to his admission to the bar and his other professional experience, such as his military or linguistics background, are not relevant to the reasonable hourly rate for his legal services in this case.  Mr. Beatty admits that he had been licensed to practice law for less than three years when he took the instant case. This Court has awarded other attorneys with approximately the same number of years in practice $130 to $150 per hour.  <u>See</u>, <u>e.g.</u>, <u>Sakaria v. FMS Inv. Corp.</u>, CV 08-00330 SOM-LEK, Report of Special Master on Plaintiff's Motion for Attorneys' Fees and Costs, filed 5/12/09 (dkt. no. 22) at 6-7 (reasonable rate for attorney admitted in 2004 was $150, although attorney requested $175);[11] <u>Horizon Lines, LLC. v. Kamuela Dairy Inc., et al.</u>, CV NO 08-00039 JMS-LEK, Amendment to Findings and Recommendations for Entry of Default Judgment, Filed June 16, 2008, filed 9/3/08

_____

[11] A stipulation to dismiss the case was filed on May 13, 2009.  Thus, the district judge did not issue a ruling on this Court's Report of Special Master in <u>Sakaria</u>.

(dkt. no. 21) (attorney admitted in 2006 requested $160 per hour and was awarded $140 per hour, and attorney admitted in 2007 requested $145 and $150 per hour and was awarded $130 per hour);[12] Won, et al. v. England, et al., CV 07-00606 JMS-LEK, Report of Special Master On Defendant's Motion for Attorney's Fees and Costs, filed 7/15/08 (dkt. no. 84), at 7-8 (attorney admitted in 2006 requested $155 per hour and was awarded $130 per hour).[13]

Based on this Court's knowledge of the prevailing market rates in the community for similar work by attorneys of comparable skill, experience, and reputation, and based on this Court's rulings in prior cases, this Court finds that Mr. Beatty's requested hourly rate of $275 is unreasonable.  This Court FINDS that a reasonable hourly rate for Mr. Beatty's work in this case is $140.  The Court finds that the requested hourly rates of $100 and $125 for Mr. Sherman are manifestly reasonable.

**B.  Hours Reasonably Expended**

Beyond establishing a reasonable hourly rate, a party seeking attorney's fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  See Tirona

---

[12] The district judge adopted this Court's Amended Findings and Recommendation in Horizon Lines on September 29, 2008.

[13] The district judge adopted this Court's Report of Special Master in Won on August 18, 2008.

v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw.
1993) (citations omitted).  A court must guard against awarding
fees and costs which are excessive, and must determine which fees
and costs were self-imposed and avoidable.  See id. at 637
(citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404
(6th Cir. 1987)).  A court has "discretion to 'trim fat' from, or
otherwise reduce, the number of hours claimed to have been spent
on the case."  Soler v. G & U, Inc., 801 F. Supp. 1056, 1060
(S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed
"excessive, redundant, or otherwise unnecessary" shall not be
compensated.  See Gates, 987 F.2d at 1399 (quoting Hensley, 461
U.S. at 433-34).

     **1.**   **Case Development**

       **a.**   **Work Prior to Filing of Complaint**

     First, this Court notes that Mr. Beatty requests
attorneys' fees for work beginning January 28, 2006.  The
Complaint in this case was not filed until June 1, 2007.
Mr. Beatty spent a total of 98.7 hours on case development and
background investigation before the filing of the Complaint.
This included sitting in on Plaintiff's criminal trial all day
for six days.  While some time for case development and
investigation is necessary before filing a complaint, 98.7 hours
is excessive, and some of Mr. Beatty's entries would not be
compensable even if his time was not excessive.  Specifically,

Mr. Beatty's representation of Plaintiff in connection with the administrative complaint against her was not necessary to the prosecution of the instant case.   While the administrative action was relevant to the instant case and some review of the administrative case would be reasonable, Mr. Beatty could have successfully represented Plaintiff in the instant case without representing Plaintiff in the administrative proceedings. Mr. Beatty's work on his Client Agreement with Plaintiff also is not compensable.   While it was certainly necessary to Mr. Beatty's and Plaintiff's professional relationship, it did not contribute the litigation of Plaintiff's claims.   For purposes of a judicial award of attorney's fees, work on a client agreement should be subsumed in the attorney's overhead.

      Further, the descriptions of Mr. Beatty's communications with Plaintiff are insufficient.   See Local Rule LR54.3(d)(2) ("time entries for telephone conferences must include an identification of all participants and the reason for the call").   For example, several entries state only "consultation and email with SB".   [Exh. 10 to Beatty Suppl. Decl. at 1.]   Those entries are excluded because there is insufficient information for this Court to determine whether the amount of time spent was reasonable.[14]

_____

      [14] In most cases, this Court will allow the moving party to submit supplemental documentation in support of inadequately
(continued...)

In light of the foregoing, this Court finds that 20.0 hours is a reasonable amount of time for case development and background investigation prior to the filing of the Complaint. This Court will therefore deduct 78.7 hours from Mr. Beatty's time.

### b.  **Work During Litigation**

Mr. Beatty also spent 164.7 hours on case development and investigation after filing the Complaint.  This includes 98.0 hours preparing for and attending two litigation seminars.  Even though Mr. Beatty may have had the opportunity to discuss Plaintiff's case with other participants at these seminars, the seminars are essentially professional development or general education for Mr. Beatty and are not compensable in this case. See, e.g., United States ex rel. Averback v. Pastor Med. Assocs., P.C., 224 F. Supp. 2d 342, 353 (D. Mass. 2002); In re "Agent Orange" Prod. Liab. Litig., 611 F. Supp. 1296, 1322 (E.D.N.Y. 1985), aff'd in part and rev'd in part on other grounds, 818 F.2d 226 (2d Cir. 1987).  This Court will therefore deduct 98.0 hours from Mr. Beatty's time.

Mr. Beatty claims 10.0 hours associated with

---

[14](...continued)
described items.  The Court will not grant Plaintiff leave to submit supplemental documentation in support of Mr. Beatty's inadequately described time entries because this Court finds that his requested time is excessive, even without the inadequately described entries.

Plaintiff's appearance before the Administrative Review Board ("ARB").  For the reasons stated *supra* Section II.B.1.a., only some review of the ARB proceedings was necessary for the instant case.  This Court will therefore deduct 7.0 hours from Mr. Beatty's time.

Mr. Beatty claims 11.0 hours relating to the complaint that Plaintiff filed against him with the Office of Disciplinary Counsel and preparing a restraining order.  These matters are attributable to the problems between Plaintiff and Mr. Beatty. They are not related to the litigation of Plaintiff's claims and are therefore not compensable.  This Court will deduct the 11.0 hours from Mr. Beatty's time.

The Court will also deduct 7.7 from Mr. Beatty's time for inadequately described communications with Plaintiff and opposing counsel.

These deductions to Mr. Beatty's case development and investigation after the filing of the Complaint total 123.7 hours, leaving 41.0 hours.  This Court has reviewed all of the remaining time entries and finds that 41.0 hours is excessive. This Court will therefore deduct an additional 10.0 hours from Mr. Beatty's time.

### 2.  Pleadings

Mr. Beatty spent 134.5 hours on pleadings, almost exclusively on the original Complaint.  First, the Court notes

that clerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate.  See, e.g., Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003).  Mr. Beatty billed time for printing the Complaint, driving to the courthouse to check for form, turning the Complaint in at a copying center, and filing the Complaint.  These tasks are clerical or ministerial and are not compensable.  This Court will therefore deduct 4.0 hours from Mr. Beatty's time.

Further, even though the Complaint was lengthy and involved a large number of defendants and claims, the time Mr. Beatty spent on the Complaint was excessive.  This Court finds that 50.0 hours is a reasonable amount of time for the Complaint and First Amended Complaint.  The Court will therefore deduct an additional 80.5 hours from Mr. Beatty's time.

### 3.  Discovery

Mr. Beatty claims 29.2 hours for written discovery.  Of that time, 10.7 hours should have been attributable to case development and investigation instead of discovery.  This Court has already determined Mr. Beatty's case development and investigation time to be unreasonable.  The Court therefore finds that the 10.7 hours which counsel mis-categorized as discovery work is not compensable, and this Court will deduct those hours from Mr. Beatty's time.  The Court finds that the remaining 18.5

hours spent on written discovery was reasonable.

Mr. Beatty claims 114.8 hours for depositions and a discovery dispute. First, the Court will deduct 0.6 hours from Mr. Beatty's time for the filing of notices of depositions. Filing is a non-compensable clerical task. The Court will also deduct 1.0 hour for the entry stating "discuss Nishimura depo". [Exh. 10 to Beatty Suppl. Decl. at 4.] This entry is insufficient because it does not state who Mr. Beatty discussed the deposition with.

The City submitted a chart comparing the length of each deposition that Mr. Beatty took with the amount of time he spent attending and preparing for them. [Mem. in Opp., Exh. A to Decl. of Counsel.] Mr. Beatty billed 103.0 hours for the ten depositions he took, but these depositions only lasted a total of 23.5 hours. Thus, 79.5 hours is attributable to preparation. The Court finds this to be excessive and will therefore deduct 39.5 hours from Mr. Beatty's time.

### 4. Motions Practice

Mr. Beatty spent 226.5 hours on motions practice.[15] First, Mr. Beatty claims 15.5 hours for work done prior to the filing of the Complaint, which should have been categorized as case development and investigation. Most of this time was spent

---

[15] The Court notes that the actual total was higher, but Mr. Beatty deducted 63.0 hours for work attributable to claims against the HGEA Defendants.

working a motion to obtain a restraining order to stop Plaintiff's criminal trial.  For the reasons stated, *supra* Section II.B.1.a., work on the Client Agreement is not compensable and Mr. Beatty's representation of Plaintiff in proceedings other than the instant case was not necessary to the litigation of her claims.  While some review of the motion for a restraining order may have been relevant to the instant case, this Court has already found that Mr. Beatty's time for case development and investigation was excessive.  Thus, even if counsel had properly characterized this time as case development, the Court would still find that the 15.5 hours is not compensable.  This Court will therefore deduct the 15.5 hours from Mr. Beatty's time.

The Court will also deduct the 2.0 hours Mr. Beatty spent printing and collating the "MSJ and CSF answer" and the 6.0 hours Mr. Beatty spent sending the motions in limine to Mr. Sherman because these are clerical tasks.

Mr. Beatty spent 9.5 hours on work relating to his motion to withdraw as Plaintiff's counsel.  This arose from the problems between Plaintiff and Mr. Beatty and was not necessary to the litigation of Plaintiff's claims.  The Court will therefore deduct the 9.5 hours from Mr. Beatty's time.

Mr. Beatty also has two entries for "email to BS, SB" and another entry for "write and call Sherman".  These entries

are insufficient because Mr. Beatty did not state the subject of these communications.  This Court will therefore deduct 2.0 hours from Mr. Beatty's time.

After these specific deductions, there are 191.5 hours remaining.  Although there was extensive motions practice in this case, the Court finds that this is an excessive amount of time. This Court will therefore deduct an additional 50.0 hours from Mr. Beatty's time.

### 5.    **Court Proceedings**

Mr. Beatty claims 24.5 hours for the preparation for and participation in two settlement conferences, the preparation of Plaintiff's Pretrial Statement, and his attendance at the October 7, 2008 pretrial conference.  The Court notes that the pretrial conference was scheduled for 9:00 a.m., started at 9:07 a.m., and took five minutes.  Mr. Beatty, however, claimed 1.5 hours for the conference.  If he included his travel time to and from the courthouse, such time is not compensable.  This Court will therefore deduct 1.0 hour for the pretrial conference.  The Court finds that the remainder of Mr. Beatty's time is reasonable.

### 6.    **Trial**

Mr. Beatty claims 258.5 hours for trial preparation. First, this Court notes that Mr. Beatty billed 7.5 hours on October 16, 2009, and a portion of his 13.0 hours on October 15,

2009, waiting for the jury to return its verdict.  Mr. Beatty argues that this time is compensable because the district judge required him to be within fifteen minutes from the courthouse. This prevented him from returning to his office to do other work. This is unreasonable.  Mr. Beatty could have made other arrangements, such as bringing other work from his office with him or going to the district court or Hawai`I Supreme Court law library, on those days.  This Court will therefore deduct 4.0 hours for October 15 and the 7.5 hours on October 16 from Mr. Beatty's time.

This leaves 247.0 attributable to trial preparation and the trial itself.  While this Court acknowledges the tremendous amount of work involved in a trial, 247.0 hours is excessive. This Court will therefore deduct 47.0 hours from Mr. Beatty's time.

### 7.   **Post-Trial Motions**

Mr. Beatty claims a total of 75.5 hours for post-trial motions.  This includes 52.0 hours for documents relating to the instant Motion.  The Court finds the 52.0 hours to be excessive and will reduce Mr. Beatty's time by 20.0 hours.  The remaining time, which Mr. Beatty spent on the City's Rule 59 Motion and Plaintiff's Bill of Costs is reasonable.

### 8.   **Summary of Mr. Beatty's Hours**

The Court FINDS that 513.2 hours of Mr. Beatty's time

is not compensable, but the remainder of Mr. Beatty's time, 613.7 hours, was reasonable for this case.

### 9.  **Bruce Sherman's Time**

Mr. Sherman spent 21.7 hours doing various tasks to assist Mr. Beatty with motions practice during July 2008, and 4.5 hours on motions in limine on October 31 and November 3, 2008. The Court FINDS that Mr. Sherman's time is manifestly reasonable.

This, however, is not the end of the Court's inquiry. The Court must also determine whether a reduction to the lodestar amount is appropriate in light of Plaintiff's limited success in the action.

### C.  **Reduction for Limited Success**

Where a plaintiff achieves only partial or limited success, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983).  Based on Hensley, the Ninth Circuit has adopted a two-part analysis to address attorneys' fees in cases where the plaintiff prevails on some claims but not others.

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims.  If unrelated, the final fee award may not include time expended on the unsuccessful claims.  If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably

36

expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 901-02 (9th Cir. 1995) (quoting Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986) (quoting Hensley, 461 U.S. at 435, 103 S. Ct. at 1940)); see also McCown v. City of Fontana, 565 F.3d 1097, 1103-05 (9th Cir. 2009). Courts apply this analysis in Title VII cases. See, e.g., Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1499 (9th Cir. 1995).

### 1. **Related Claims**

Unrelated claims are "distinctly different claims for relief that are based on different facts and legal theories", whereas related claims "involve a common core of facts or [are] based on related legal theories." Hensley, 461 U.S. at 434-35. In the instant case, the majority of Plaintiff's claims arise from her employment with HPD and the retaliation she suffered because of her sexual harassment action. Only Plaintiff's claims against the HGEA Defendants and the IHS Defendants were wholly distinct. Mr. Beatty has already deducted his time which is attributable to the claims against the HGEA Defendants, and it does not appear that he billed any work specifically attributable to the claims against the IHS Defendants. This Court therefore finds that the claims at issue in the instant Motion are related.

37

2.   **Significance of Overall Relief**

The jury found in Plaintiff's favor on her Title VII claim against the City and awarded her $150,000.00 in damages. This is certainly a significant victory, but when compared to the number of claims Plaintiff originally alleged and the value of those claims that her counsel asserted on her behalf during settlement negotiations, her success must be deemed partial at best.  Where a plaintiff achieves only partial success "full compensation _may_ be excessive." Schwarz, 73 F.3d at 902 (emphasis added) (citation omitted).  This Court has already applied substantial reductions to Mr. Beatty's requested hourly rate and his hours.  This Court therefore finds, in the exercise of its sound discretion, that a further reduction for partial success is not necessary.

D.   **Block Billing**

The Court notes that Mr. Beatty's daily time entries are block billed.  "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted).  The Court cautions Mr. Beatty that, if he submits requests for attorneys' fees in other cases, he should not submit time records employing block billing.  If he

does, this Court may impose a percentage reduction of all entries to account for the fact that block billing prevents the Court from reviewing the reasonableness of the amount of time spent on each task.

### E.  Total Lodestar Award

Based on the foregoing, this Court FINDS that Plaintiff has established the appropriateness of an award of attorney's fees as follows:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Mark Beatty | 613.7 | $140 | $85,918.00 |
| Bruce Sherman | 21.7 | $100 | $ 2,170.00 |
| Bruce Sherman | 4.5 | $125 | $   562.50 |
| | | Subtotal | $88,650.50 |
| | State Excise Tax of 4.712% | | $ 4,177.21 |
| | | **TOTAL LODESTAR** | **$92,827.71** |

The Court declines to adjust the award based on the remaining Kerr factors.  For all the voluminous pleadings and numerous parties, the instant case was essentially a retaliation case, which could have been far less complicated than it was.  Further, while the case was time consuming, it did not preclude counsel from handling other cases.  Finally, while the ruling was certainly important to Plaintiff, and the general issue of discrimination in the workplace is of public importance, the instant case did not result in any public change.  This Court

therefore finds that no adjustment to the lodestar amount is warranted.

### III. <u>Entitlement to Non-taxable Costs</u>

As the prevailing party, Plaintiff is entitled to her reasonable expenses pursuant to 42 U.S.C. § 2000e-5(k).  The only expenses that Plaintiff seeks are Mr. Beatty's expenses for the two litigation seminars he attended.  For the reasons stated *supra* in Section II.B.1.b., the expenses for those seminars are not compensable in this case.  This Court therefore RECOMMENDS that the district judge DENY Plaintiff's Motion with respect to her request for non-taxable costs.

### IV. <u>Taxable Costs</u>

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  A district court may exercise discretion in allowing or disallowing reimbursement of the costs of litigation, but it may not tax costs beyond those enumerated in 28 U.S.C. § 1920.  <u>See</u> <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441-42 (1987), <u>superseded on other grounds</u>, 42 U.S.C. § 1988(c).

"Courts, however, are free to construe the meaning and scope of the items enumerated as taxable costs in § 1920."

Frederick v. City of Portland, 162 F.R.D. 139, 142 (D. Or. 1995)

(citing Alflex Corp. v. Underwriters Lab., Inc., 914 F.2d 175,

177 (9th Cir. 1990) (per curiam)). Section 1920 enumerates the

following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Plaintiff's Bill of Costs seeks $13,342.10 in taxable

costs consisting of the following:

| | |
|---|---|
| Fees for service of summonses and subpoenas | $ 1,316.05 |
| Fees of the court reporter | $10,155.30 |
| Fees for exemplification and copies | $ 1,490.25 |
| Fees of the Clerk | $ 380.50 |
| **TOTAL** | **$13,342.10**[16] |

[Mem. in Supp. of Bill of Costs at 2-5.]

A.   **Timeliness of Bill of Costs**

The City's first objection is that Plaintiff waived any

---

[16] There were some errors in the calculation of Plaintiff's service costs. This Court has adjusted Plaintiff's request accordingly.

right to taxable costs because she did not file her Bill of Costs within fourteen days of the district judge's denial of the City's Rule 59 Motion, as required by the current version of Local Rule 54.2(b). The district judge filed the order denying the City's Rule 59 Motion on November 25, 2009. Plaintiff filed her Bill of Costs on December 15, 2009. She asserts that she timely filed it within "the 30 day time limit of LR 54.2(b)". [Bill of Costs at 1.]

The current version of Local Rule 54.2(b), which took effect on December 1, 2009, states, in pertinent part:

> Unless otherwise ordered by the court, a Bill of Costs shall be filed and served within fourteen (14) days of the entry of judgment, the entry of an order denying a motion filed under Fed. R. Civ. P. 50(b), 52(b), or 59 . . . . Non-compliance with this time limit shall be deemed a waiver of costs.

The version of Local Rule 54.2(b) effective until November 30, 2009 contained a thirty-day filing period. Local Rule 1.2 states that the current version of the rules "govern all actions and proceedings pending on or commenced after December 1, 2009. When justice requires, a judge may order that an action or proceeding pending before the court prior to that date be governed by the prior practice of the court."

Pursuant to Local Rule 1.2, the current version of Local Rule 54.2(b) applies in this case. Plaintiff should have filed her Bill of Costs within fourteen days after the district

judge denied the City's Rule 59 Motion.  It is not clear whether Plaintiff was aware of the amendment to Local Rule 54.2(b) because she did not address it in her Bill of Costs.  Although ignorance of the law is not a defense, this Court notes that a reasonable argument can be made for the application of the prior version of Local Rule 54.2(b).  The district judge denied the City's Rule 59 Motion on November 25, 2009, when the prior version of Local Rule 54.2(b) was in effect, and that order arguably triggered the thirty-day filing period.  Further, the City has not alleged that it was prejudiced by Plaintiff's failure to file the Bill of Costs within the fourteen-day period. This Court therefore FINDS that justice requires the application of the thirty-day filing period in the version of Local Rule 54.2 effective until November 30, 2009.  The Court RECOMMENDS that the district judge DENY the City's Objections as to the timeliness of the Bill of Costs.

**B.**  **Verification**

A bill of costs "must be supported by a memorandum setting forth the grounds and authorities supporting the request and an affidavit that the costs claimed are correctly stated, were necessarily incurred, and are allowable by law."  Local Rule LR54.2(c).  The City objects to Plaintiff's Bill of Costs on the grounds that Plaintiff's counsel did not include proper verification that the requested costs were necessarily incurred.

43

Mr. Beatty states that he attempted to exclude Plaintiff's "costs related to defendants unrelated to the final trial." [Mem. in Supp. of Bill of Costs, Decl. of Mark Beatty ("Beatty BOC Decl.") at ¶ 3.] Thus, he asserts that the claimed costs were related to the trial. As to his service and subpoena costs, Mr. Beatty acknowledges that most of the individual defendants, in their individual capacities, were dismissed before trial. Mr. Beatty, however, asserts that each of these defendants, in their official capacities, "was useful in securing the final judgment." [Id. at ¶ 5.] As to the costs associated with the ten depositions that Plaintiff took and the City's deposition of Plaintiff, Mr. Beatty states that many of the deponents were called as Plaintiff's witnesses at trial and the other deponents were listed as potential defense witnesses. He asserts that the depositions of potential defense witnesses were necessary to prepare for possible cross-examination. [Id. at ¶ 6.] As to Plaintiff's copying costs, Mr. Beatty states that the copies were for the two required courtesy copies for the court and one copy for his use. [Id. at ¶ 7.] Finally, Mr. Beatty asserts that filing the Complaint and obtaining the jury cards "were needed as essential elements of the litigation process." [Id. at ¶ 8.]

Although at times inartfully stated, Mr. Beatty's declaration provided the required verification that the costs

44

requested in the Bill of Costs were necessarily incurred in the
case.  This Court therefore RECOMMENDS that the district judge
DENY the City's Objections as to the lack of verification.

C.   **Partial Success**

As stated *supra* in Section I., Plaintiff is the
prevailing party as to her Title VII claim against the City, but
she is not the prevailing party as to any of the defendants
besides the City, nor is she the prevailing party as to any of
the other claims against the City besides the Title VII claim.
The Court, however, finds that it is not necessary to apportion
Plaintiff's request for taxable costs among these claims because
there is no rule requiring courts to apportion taxable costs
based on the relative success of the parties.  See Kemin Foods,
L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d
1339, 1348 (Fed. Cir. 2006).  "In fact, apportioning costs
according to the relative success of parties is appropriate only
under limited circumstances, such as when the costs incurred are
greatly disproportionate to the relief obtained."  Id. (citing 10
James Wm. Moore et al., Moore's Federal Practice § 54.101[1][b]
(3d ed. 2006)).  Further, Mr. Beatty attempted to exclude costs
associated with defendants and claims which were unrelated to the
claims which went to trial.  Where possible this Court will
exclude requested costs that are attributable to claims that
Plaintiff did not prevail on.

45

**D.**   **Fees for Service of Summonses and Subpoenas**

"Fees for the service of process and service of subpoenas by someone other than the marshal are allowable, to the extent they are reasonably required and actually incurred." Local Rule LR54.2(f)(1); see also § 1920(1). Plaintiff seeks a total of $1,316.05 in fees for the service of the Complaint and summonses and the service of subpoenas. Plaintiff's request consists of the following:

|  |  |
|---|---|
| Service of subpoenas on Alicia Kamahele, William Goodhue, Chris Van Marter, Kanthi De Alwis, Glen Kajiyama (plus $6.05 mileage charge), Carlton Nishimura, Kevin Lima, Owen Harada, Boisse Correa, and Paul Putzulu[17] | $  256.05 |
| Subpoenas to Nishimura, Correa, Lima, Kajiyama, Kamahele, De Alwis, Goodhue, Harada, Van Marter and Paul Putzulu ($50.00 each) | $  500.00 |
| Service of Complaint and Summons and filing of the return of service for Kajiyama, Nishimura, and Correa[18] | $   90.00 |
| Service of Complaint and Summons and filing of the return of service for Van Marter (includes mileage for three attempts) | $   45.00 |
| Service of Complaint and Summons and filing of the return of service for Harada (includes mileage for two attempts) | $   40.00 |
| Service of Complaint and Summons and filing of | $  130.00 |

---

[17] The fee for the service of each subpoena was $25.00. [Exh. 13 to Beatty BOC Decl.] Based upon the dates given in the invoice, these appear to be for trial.

[18] The service fee was $25.00 each and the fee for filing the return of service was $5.00 each. The invoice includes service on Maunakea and IHS, but Plaintiff does not seek taxation of those costs. [Exh. 14 to Beatty BOC Decl.; Mem. in Supp. of Bill of Costs at 2.] The Bill of Costs states that Plaintiff seeks $115.00 for the service to Kajiyama, Correa, and Nishimura, but the invoice indicates that only $90.00 is attributable to those people.

             the return of service for Watarai and Axt
             (includes mileage for two attempts on
             Watarai, a trace to obtain Watarai's address,
             and mileage for three attempts on Axt)

    Service of Complaint and Summons and filing of     $    35.00
             the return of service for Lima (includes
             mileage)

    Service of Complaint and Summons and filing of     $    95.00
             the return of service for HRD, MEO, and PAD
             (includes mileage)

    Service of Complaint and Summons and filing of     $   125.00
             the return of service for De Alwis, Kamahele
             Goodhue, and Suzuki (includes mileage)[19]

                                           **TOTAL      $1,316.05**

[Mem. in Supp. of Bill of Costs at 2; Exhs. 13-20 to Beatty BOC
Decl.]

        The City objects to Plaintiff's costs for the service

of the Complaint and Summons on the individual defendants because

all were eventually dismissed, and the City objects to the costs

for service on the various City departments because all actions

against City departments are actions against the City.  This

Court agrees.

        The cost of serving all of the individual defendants

with the Complaint and Summons is attributable to Plaintiff's

claims against those defendants; it cannot be attributed to

Plaintiff's Title VII claim against the City.  Plaintiff was not

the prevailing party as to the individual defendants.  This Court

therefore finds that Plaintiff is not entitled to the taxation of

_____

        [19] The invoice also includes service on HGEA and Matsui, but
Plaintiff has excluded these amounts from her request.  [Exh. 20
to Beatty BOC Decl.; Mem. in Supp. of Bill of Costs at 2.]

the cost to serve the individual defendants with the Complaint
and Summons.  As to the costs to serve the City, Plaintiff should
have named the City at the outset instead of naming individual
City departments.  This Court therefore finds that Plaintiff is
only entitled to the taxation of the cost to serve one of the
City departments, *i.e.* $25.00 for service, $5.00 for the filing
of the return of service, and the $5.00 mileage fee.  Plaintiff
would have incurred those costs if she had named the City as the
defendant instead of individual City departments.

As to the service of subpoenas, Plaintiff served
Kamahele, Goodhue, Van Marter, De Alwis, Kajiyama, Nishimura,
Lima, Harada, Correa, and Putzulu to appear at trial.  Each of
these persons either testified at trial or was a potential
witness.  Plaintiff submitted an invoice establishing that it
cost $256.05 to serve these subpoenas.  [Exh. 13 to Beatty BOC
Decl.]  This Court finds that the $256.05 was reasonably incurred
in this case.  Plaintiff, however, also seeks $50.00 for a
subpoena to each of the same ten people.  Plaintiff provides no
supporting documentation for that expense except to cite a check
number for each.  Plaintiff did even not include copies of the
checks with her Bill of Costs.  This Court therefore finds that
the $50.00 subpoena charge for each of the ten witnesses is not
taxable.

The Court, however, will allow Plaintiff to file a

48

supplemental declaration and supporting documentation to address these costs.  After reviewing Plaintiff's supplemental documents and any response from the City, this Court will issue an amendment to the instant Report.  If Plaintiff fails to timely submit supporting documentation, this Court will issue an amendment to the instant Report recommending that the subpoena costs be denied with prejudice.

This Court therefore FINDS that Plaintiff is entitled to the taxation of the following service costs:

| | |
|---|---|
| Service of subpoenas on Alicia Kamahele, William Goodhue, Chris Van Marter, Kanthi De Alwis, Glen Kajiyama (plus $6.05 mileage charge), Carlton Nishimura, Kevin Lima, Owen Harada, | $256.05 |
| Service of Complaint and Summons and filing of the return of service for one City department (including mileage) | <u>$ 35.00</u> |
| **TOTAL** | **$291.05** |

This Court therefore RECOMMENDS that the City's Objections be GRANTED IN PART AND DENIED IN PART as to Plaintiff's service costs.

### E.   **Deposition Costs**

"The cost of a stenographic and/or video original and one copy of any deposition transcript necessarily obtained for use in the case is allowable."  Local Rule LR54.2(f)(2); <u>see also</u> § 1920(2).  Plaintiff seeks $10,155.30 in deposition costs consisting of the following:

| | |
|---|---|
| <u>Court reporter fees</u> | |
| Depositions of Kevin Lima, Alicia Kamahele, Christopher Van Marter, Kanthi De Alwis, | $ 3,052.72 |

and William Goodhue[20]

| | |
|---|---|
| Depositions of Carlton Nishimura, Boisse Correa, and William Axt[21] | $ 1,327.54 |
| Depositions of Owen Harada, Denise Tsukayama[22] | $ 1,068.58 |
| One copy of Plaintiff's deposition transcript | $   350.63 |
| **Subtotal** | **$ 5,799.47** |

Video services for depositions

| | |
|---|---|
| Harada deposition | $   560.21 |
| Tsukayama deposition | $   319.37 |
| Nishimura deposition | $   429.32 |
| Correa deposition | $   376.96 |
| Axt deposition | $   319.37 |
| Lima, Kamahele, Van Marter, De Alwis, and Goodhue depositions | $ 2,350.60 |
| **Subtotal** | **$ 4,355.83** |
| **TOTAL** | **$10,155.30** |

[Mem. in Supp. of Bill of Costs at 3-4; Exhs. 3-12 to Beatty BOC Decl.]  Plaintiff provided invoices for each item, establishing that the costs were actually incurred.

## 1.   **Video Recording of Depositions**

The City first objects to the taxation of all costs associated with the video recording of the depositions because, at the time of the depositions, all of the deponents were

---

[20] The cost of each of these depositions includes the court reporter's appearance fee, the cost of the original and one copy of the transcript, an exhibits fee where applicable, and a $40.00 fee for the "Condensed Transcript/ASCII".  [Exh. 3 to Beatty BOC Decl.]

[21] The cost of each of these depositions includes the court reporter's appearance fee, the cost of the original and one copy of the transcript, an exhibits fee where applicable, and a $25.00 fee for "E-Tran".  [Exh. 4 to Beatty BOC Decl.]

[22] The cost of each of these depositions includes the court reporter's appearance fee, the cost of the original and one copy of the transcript, an exhibits fee where applicable, and a $25.00 fee for "E-Tran".  [Exh. 5 to Beatty BOC Decl.]

residents of Honolulu who were employed by the City, and there was no indication of a risk that any of them would be unavailable to testify at trial.  Thus, the City argues that there was no need to preserve the deposition testimony on video.  According to defense counsel, Mr. Beatty said that the reason for videotaping the deposition was to allow Plaintiff, who chose not to attend the depositions, to watch them.  [Objections at 5-6; Decl. of Stephanie L. Marn at ¶ 5.]

The cost of both the transcript and a video original of a deposition are allowable if they were both "necessarily obtained for use in the case[.]."  See Local Rule LR54.2(f)(2).  Plaintiff's Bill of Costs states only that all ten persons she deposed "played some part in the trial" and were listed as potential defense witnesses.  [Mem. in Supp. of Bill of Costs at 3.]  Mr. Beatty's declaration adds that many of the deponents were called as Plaintiff's witnesses at trial, and the other depositions were necessary to prepare for cross-examination if the deponents testified as defense witnesses.  [Beatty BOC Decl. at ¶ 6.]  Plaintiff did not produce any evidence that the video recordings of the depositions were necessarily obtained for use in this case.  This Court therefore RECOMMENDS that the City's Objections be GRANTED as to the video recording of depositions.

The Court, however, will allow Plaintiff to file a supplemental declaration and supporting documentation to address

these costs.  After reviewing Plaintiff's supplemental documents
and any response from the City, this Court will issue an
amendment to the instant Report.  If Plaintiff fails to timely
submit supporting documentation, this Court will issue an
amendment to the instant Report recommending that the video
recording costs be denied with prejudice.

### 2.   Deposition Transcripts for Non-trial Witnesses

The City also objects to the taxation of costs for
depositions that were not used at trial.  The City argues that
Plaintiff is not entitled to the cost of the deposition
transcripts for Goodhue, Tsukayama, and Axt because they did not
testify at trial and because the Bill of Costs does not establish
that these costs are taxable.  "A deposition need not be
introduced in evidence or used at trial, so long as, at the time
it was taken, it could reasonably be expected that the deposition
would be used for trial preparation, rather than mere discovery."
Local Rule LR54.2(f)(2).  Based on the representations in
Plaintiff's Bill of Costs and this Court's knowledge of the facts
of this case, this Court finds that, at the time they were taken,
it could reasonably be expected that all eleven depositions
referenced in the Bill of Costs would be used for trial
preparation, rather than mere discovery.  This Court therefore
RECOMMENDS that the City's Objections be DENIED as to the
taxation of depositions of witnesses who did not testify at

trial.

### 3.   <u>Condensed and Electronic Transcripts</u>

The City also objects to the taxation of the costs of "Condensed Transcript/ASCII" and "E-Tran" because these costs are beyond the cost of the original and one copy of deposition transcripts allowed under Local Rule 54.2(f)(2).  Depositions are commonly printed in condensed format to conserve paper and space. A condensed transcript is the presentation form of the original and one copy of the deposition transcript; it does not constitute a second original or second copy.  This Court therefore finds that the cost to condense a deposition transcript is taxable as part of the court reporter's fees.

The cost for the "E-Tran", which this Court assumes denotes an electronic version, of the deposition transcripts for Nishimura, Correa, Axt, Harada, and Tsukayama does appear to be another version of the transcripts, in addition to the original and one copy of the transcript hard copies.  Thus, the E-Tran version exceeds the original and one copy allowed under Local Rule 54.2(f)(2).  This Court therefore finds that the E-Tran fees are not taxable and RECOMMENDS that the district judge GRANT the City's Objections as to the E-Tran versions of deposition transcripts.  This Court will deduct the $25.00 E-Tran fee from the invoices for Nishimura's, Correa's, Axt's, Harada's and Tsukayama's depositions.

The Court, however, will allow Plaintiff to file a supplemental declaration and supporting documentation to address the E-Tran costs.  After reviewing Plaintiff's supplemental documents and any response from the City, this Court will issue an amendment to the instant Report.  If Plaintiff fails to timely submit supporting documentation, this Court will issue an amendment to the instant Report recommending that the request costs be denied with prejudice.

### 4.   Summary of Taxable Deposition Costs

This Court FINDS that Plaintiff has established that the following deposition costs are taxable as fees of the court reporter:

| | |
|---|---|
| Depositions of Kevin Lima, Alicia Kamahele, Christopher Van Marter, Kanthi De Alwis, and William Goodhue | $3,052.72 |
| Depositions of Carlton Nishimura, Boisse Correa, and William Axt | $1,252.54 |
| Depositions of Owen Harada, Denise Tsukayama | $1,018.58 |
| One copy of Plaintiff's deposition transcript | $ 350.63 |
| **TOTAL** | **$5,674.47** |

This Court RECOMMENDS that the district judge tax $5,674.47 in court reporter fees against the City and in favor of Plaintiff. At this time, the Court RECOMMENDS that the district judge DENY the remaining portion of Plaintiff's request for court reporter fees.

### F.   Copying Costs

"The cost of copies necessarily obtained for use in the

case is taxable provided the party seeking recovery submits an
affidavit describing the documents copied, the number of pages
copied, the cost per page, and the use of or intended purpose for
the items copied." Local Rule LR54.2(f)(4); see also § 1920(4).
Plaintiff seeks a total of $1,490.25 for in-house and outside
copying costs.

### 1. In-house Copying

Plaintiff seeks the taxation of $1,340.25 for in-house
copying costs consisting of the following:

| Document | Pages | Copies | Total | Cost |
|---|---|---|---|---|
| Complaint | 101 | 15 | 1515 | $ 227.30 |
| Amended Complaint | 72 | 3 | 216 | $ 32.40 |
| Trial Exhibits | 1337 | 3 | 4011 | $ 601.70 |
| Opposition to MSJ | 265 | 3 | 795 | $ 119.30 |
| Motion to Dismiss | 38 | 3 | 114 | $ 17.10 |
| Opp. Motion to Dismiss | 20 | 3 | 60 | $ 9.00 |
| Judgment as a Matter of Law (Opp.) | 98 | 3 | 294 | $ 44.10 |
| Motion for Recon. | 138 | 3 | 414 | $ 62.10 |
| Motion to Dismiss | 165 | 3 | 495 | $ 74.25 |
| Opp. to MSJ | 340 | 3 | 1020 | $ 153.00 |
| | | | **TOTAL** | **$1,340.25** |

[Mem. in Supp. of Bill of Costs at 4.] Based on the numbers that
Plaintiff presented, the per page cost for each documents vary,
but all are approximately $0.15. Mr. Beatty states that two of
the copies of the motions and trial exhibits were for the
required court courtesy copies and one was for his use. [Beatty
BOC Decl. at ¶ 7.] For the Complaint and Amended Complaint,
Plaintiff seeks the costs of three filed copies, and, for the
Complaint, she also seeks twelve copies which she served on

Defendants.  [Mem. in Supp. of Bill of Costs at 4.]  The City
objects to Plaintiff's copying costs because the documents were
longer than they should have been and because, of the 1,337 pages
of trial exhibits that Plaintiff copied in three sets, Plaintiff
only admitted 70 pages into evidence.

First, the Court notes that Local Rule 54.2(f)(4)
requires that the party seeking costs provide the required
information in an affidavit.  Some of the required information
appears only in the memorandum in support of the Bill of Costs,
not in Mr. Beatty's supporting declaration.  The Court cautions
Mr. Beatty that, if he submits a bill of costs in future cases,
he must pay closer attention to the requirements of Local Rule
54.2.  The Court, however, will consider the information in the
memorandum in support of the Bill of Costs because there does not
appear to be any dispute about the accuracy of the information.
The Court finds that all of the documents referenced in the Bill
of Costs were necessarily obtained for use in this case.

As to the City's claim that this Court should review
the length of Plaintiff's documents, this Court is not in a
position to determine how long each document should have been.
The Court therefore RECOMMENDS that the City's Objections be
DENIED as to the length of documents in Plaintiff's request for
copying costs.

This Court, however, notes that "[t]he cost of copies

obtained for the use and/or convenience of the party seeking recovery and its counsel is not taxable." Local Rule LR54.2(f)(4). Thus, the copy of Plaintiff's motion papers and trial exhibits that Mr. Beatty retained for his use is not taxable. The cost of the two required courtesy copies are taxable. As to the complaints, the Clerk's Office requires plaintiffs to file the original and two copies of a complaint. This Court therefore finds that the cost of three copies each of the Complaint and Amended Complaint are taxable. The Court will also allow the cost of one copy of the Complaint for service on one of the City departments. See supra Section IV.D. The Court will not allow the cost of the other eleven copies which Plaintiff served on other defendants whom Plaintiff did not prevail against.

Finally, the Court notes that Plaintiff is entitled to no more than $0.15 per page for in-house copying. See Local Rule LR54.2(f)(4) ("As of the effective date of these rules, the practice of this court is to allow taxation of copies at $.15 per page or the actual cost charged by commercial copiers, provided such charges are reasonable.").

This Court therefore FINDS that Plaintiff is entitled to the taxation of the following copying costs:

| Document | Pages | Copies | Total | Cost |
|----------|-------|--------|-------|------|
| Complaint | 101 | 4 | 404 | $ 60.60 |
| Amended Complaint | 72 | 3 | 216 | $ 32.40 |
| Trial Exhibits | 1337 | 2 | 2674 | $401.10 |

| | | | | |
|---|---|---|---|---|
| Opposition to MSJ | 265 | 2 | 530 | $ 79.50 |
| Motion to Dismiss | 38 | 2 | 76 | $ 11.40 |
| Opp. Motion to Dismiss | 20 | 2 | 40 | $  6.00 |
| Judgment as a Matter of Law (Opp.) | 98 | 2 | 196 | $ 29.40 |
| Motion for Recon. | 138 | 2 | 276 | $ 41.40 |
| Motion to Dismiss | 165 | 2 | 330 | $ 49.50 |
| Opp. to MSJ | 340 | 2 | 680 | <u>$102.00</u> |
| | | | **TOTAL** | **$813.30** |

## 2.   <u>Outside Copying Costs</u>

Plaintiff's counsel also seeks $150.00 to obtain copies of thirty autopsy reports from the MEO.  [Exh. 21 to Beatty BOC Decl.]  The City objects to this cost because Plaintiff did not utilize the reports in the litigation, and the City argues that they are not relevant to Plaintiff's claims.  Neither the memorandum in support of Bill of Costs nor Mr. Beatty's declaration in support of the Bill of Costs address the autopsy reports.  Plaintiff has failed to establish that the autopsy reports were necessarily obtained for use in this case.  The Court therefore RECOMMENDS that the district judge GRANT the City's Objections as to the cost of the copies of the autopsy reports.

The Court, however, will allow Plaintiff to file a supplemental declaration and supporting documentation to address the copies of the autopsy reports.  After reviewing Plaintiff's supplemental documents and any response from the City, this Court will issue an amendment to the instant Report.  If Plaintiff fails to timely submit supporting documentation, this Court will

issue an amendment to the instant Report recommending that costs of the autopsy reports be denied with prejudice.

### G. **Fees of the Clerk**

The fees of the Clerk of Court are taxable pursuant to § 1920(1).  Plaintiff seeks the taxation of $380.50 in fees to the Clerk, consisting of the $350.00 filing fee for the Complaint, and $30.50 to obtain copies of the jury cards.  [Exhs. 1-2 to Beatty BOC Decl. (receipts); Mem. in Supp. of Bill of Costs at 5.]  The City did not object to these costs, and the Court FINDS that they are manifestly reasonable and allowable under § 1920(1).  The Court therefore RECOMMENDS that the district judge tax $380.50 in fees of the Clerk in favor of Plaintiff and against the City.

### H. **Summary of Taxable Costs**

The Court FINDS that the following costs are taxable in this case and RECOMMENDS that the district judge tax these costs in favor of Plaintiff and against the City:

| | |
|---|---|
| Fees for service of summons and subpoena | $  291.05 |
| Fees of the court reporter | $5,674.47 |
| Fees for exemplification and copies | $  813.30 |
| Fees of the Clerk | $  380.50 |
| **TOTAL** | **$7,159.32** |

### CONCLUSION

In accordance with the foregoing, this Court, acting as Special Master, FINDS AND RECOMMENDS that Plaintiff's Motion for Attorney Fees, filed on October 30, 2009, be GRANTED IN PART AND

DENIED IN PART.  The Court RECOMMENDS that the district judge
GRANT Plaintiff $92,827.71 in attorney's fees, and DENY
Plaintiff's request for non-taxable costs.

In addition, this Court, acting as Special Master,
FINDS AND RECOMMENDS that the City's Objections to Plaintiff's
Bill of Costs, filed on December 22, 2009, be GRANTED IN PART AND
DENIED IN PART.  The Court RECOMMENDS that the district judge TAX
$7,159.32 in costs against the City and in favor of Plaintiff.
The Court further recommends that the remainder of Plaintiff's
requests in the Bill of Costs be DENIED WITHOUT PREJUDICE.

This Court GRANTS Plaintiff leave to file a
supplemental declaration and supporting documentation to address
the cost requests identified in this Report.  Plaintiff shall
file the supplemental documents by no later than **February 19,
2010**, and the City may file a response by no later than
**February 26, 2010**.  This Court will issue an amendment to the
instant Report thereafter.  The Court cautions Plaintiff that, if
she fails to submit the supporting documentation by the deadline
or if the supporting documentation does not establish that the
specified costs are taxable, this Court will issue an amendment
to the instant Report recommending that the requests be denied
with prejudice.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, January 29, 2010.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

SHARON BLACK V. CITY & COUNTY OF HONOLULU, ET AL; CIVIL NO. 07-
00299 DAE-LEK; REPORT OF SPECIAL MASTER ON PLAINTIFF'S MOTION FOR
ATTORNEY FEES AND DEFENDANT'S OBJECTIONS TO PLAINTIFF'S MOTION
FOR COSTS